## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN SCHOENTHAL, MARK WROBLEWSKI, JOSEPH VESEL, and DOUGLAS WINSTON, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| KWAME RAOUL, in his official capacity as Attorney General of Illinois, | ) ) ) | Case No. |
| RICK AMATO, in his official capacity as State's Attorney of DeKalb County, Illinois, | ) ) ) ) | |
| ROBERT BERLIN, in his official capacity as State's Attorney of DuPage County, Illinois; | ) ) ) ) | |
| KIMBERLY M. FOXX, in her official Capacity as State's Attorney of Cook County, Illinois, and | ) ) ) ) | |
| ERIC RINEHART, in his official capacity as State's Attorney of Lake County, Illinois, | ) ) ) | : |
| Defendants. | ) | |

## COMPLAINT IN EQUITY

COME NOW Plaintiffs Benjamin Schoenthal, Mark Wroblewski, Joseph Vesel, and Douglas Winston, by and through their attorneys, and complain of the Defendants Kwame Raoul, Rick Amato, Robert Berlin, Kimberly M. Foxx, and Eric Rinehart as follows:

<u>INTRODUCTION</u>

1.      This is an action to uphold Plaintiffs' right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution. This right "guarantee[s] the individual right to possess and carry" firearms. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

2.      In *Heller*, the U.S. Supreme Court defined "bear arms" as to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id.* at 584.

3.      In *McDonald v. City of Chicago*, 561 U.S. 742, 750, 791 (2010), the Supreme Court confirmed that the rights protected by the Second Amendment are "among those fundamental rights necessary to our system of ordered liberty" and held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment.

4.      The Supreme Court in *Bruen* further confirmed that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022).

5.      "The constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Id.* at 2156 (quoting *McDonald*, 561 U.S. at 780). Thus, to justify a regulation burdening the right to bear arms, "the government may not

simply posit that the regulation promotes an important interest." *Bruen*, 142 S. Ct. at 2126. "Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

6. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Heller*, 554 U.S. at 634-35. At the time of the Founding, there was no tradition of restricting firearm possession while in transit. To the contrary, "statutes required arms carrying when traveling or away from home." David. B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 203, 232 (2018). Plaintiffs, who possess concealed carry licenses and thus are generally authorized by the State to carry firearms in public, wish to exercise their fundamental, constitutionally guaranteed right to carry loaded, operable handguns on their person, for lawful purposes including self-defense, while traveling on public transportation systems. But they cannot because of the laws, regulations, policies, practices, and customs that Defendants have been enforcing and continue to actively enforce today.

7. Illinois generally bars the carrying of handguns by ordinary citizens in public for self-defense unless they first acquire a license to carry. 720 ILCS 5/24-1(a)(4), (a)(10). Even for those with carry licenses, 430 ILCS 66/65-(a)(8) prohibits the carrying of firearms on public transportation or in public transportation

facilities, in direct violation of the Second and Fourteenth Amendments to the United States Constitution. This statutory bar on licensees carrying firearms on public transportation, 430 ILCS 66/65-(a)(8), is referred to herein as the "Public Transportation Carry Ban."

8.      Even though the U.S. Supreme Court in *Bruen* affirmed that "the Second Amendment guarantees an 'individual right to possess and carry weapons in case of confrontation,' and confrontation can surely take place outside the home," 142 S. Ct. at 2135 (internal citation omitted) (citing *Heller*, 554 U.S. at 599), Illinois' Public Transportation Carry Ban unconstitutionally prohibits Plaintiffs from carrying a handgun while traveling on public transportation.

9.      Although states may restrict the carrying of firearms in certain "sensitive places," *Heller*, 554 U.S. at 626, the Supreme Court has rejected an expansive view of the sensitive places doctrine. *Bruen*, 142 S. Ct. at 2134. ("[E]xpanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly."). Rather, modern sensitive places restrictions are only valid when sufficiently analogous "to those historical regulations of 'sensitive places,'" which include "legislative assemblies, polling places, and courthouses." *Id.* at 2133.

10.      There is no direct corollary or even analogue between the Public Transportation Carry Ban and historical sensitive places restrictions. Thus, the Ban cannot pass constitutional muster.

4

11.     A first violation of 430 ILCS 66/65(a)(8) is a Class B misdemeanor punishable by a fine of $1,500.00 and confinement in jail for 180 days. 430 ILCS 66/70(e); 730 ILCS 5/5-4.5-60. A second or subsequent offense is a Class A misdemeanor, punishable by a fine of $2,500.00, confinement in jail for 364 days, and potential suspension or revocation of a firearm carry license. *Id*; 730 ILCS 5/5-4.5-55.

12.     "Public transportation is an essential public purpose," ILL. CONST. art. XIII, § 7, and Plaintiffs rely on public transportation to travel to work, to school, and to other places essential to their daily lives. Because the Public Transportation Carry Ban prohibits persons from carrying a firearm while accessing public transportation, the Ban severely restricts Plaintiffs from exercising their right to self-defense outside of the home. This directly violates the Second and Fourteenth Amendments to the United States Constitution as held by the U.S. Supreme Court in *Heller*, *McDonald*, and *Bruen*.

13.     Defendants' laws, regulations, policies, and enforcement practices therefore prevent law-abiding adults such as Plaintiffs Schoenthal, Wroblewski, Vesel, and Winston from exercising their fundamental, individual right to bear loaded, operable handguns outside the home, including while traveling on public transportation.

## PARTIES

14.     Plaintiff Benjamin Schoenthal is a natural person and a citizen of DeKalb County, Illinois, and the United States. Schoenthal has never been charged

with nor convicted of any misdemeanor or felony offense. It is Schoenthal's present intention and desire to be able to lawfully carry a handgun for self-defense while traveling on public transportation. As a result of Defendants' active enforcement of the Public Transportation Carry Ban, he is precluded from carrying a handgun for purposes of self-defense while traveling on public transportation.

15.     Plaintiff Mark Wroblewski is a natural person and a citizen of DuPage County, Illinois, and the United States. Wroblewski has never been charged with nor convicted of any misdemeanor or felony offense. It is Wroblewski's present intention and desire to be able to lawfully carry a handgun for self-defense while traveling on public transportation. As a result of Defendants' active enforcement of the Public Transportation Carry Ban, he is precluded from carrying a handgun for purposes of self-defense while traveling on public transportation.

16.     Plaintiff Joseph Vesel is a natural person and a citizen of Cook County, Illinois, and the United States. Vesel has never been charged with nor convicted of any misdemeanor or felony offense. It is Vesel's present intention and desire to be able to lawfully carry a handgun, including for purposes of self-defense, while traveling on public transportation. As a result of Defendants' active enforcement of the Public Transportation Carry Ban, he is precluded from carrying a handgun for purposes of self-defense while traveling on public transportation.

17.     Plaintiff Douglas Winston is a natural person and a citizen of Lake, Illinois, and the United States. Winston has never been charged with nor convicted of any misdemeanor or felony offense. It is Winston's present intention and desire to

be able to lawfully carry a handgun, including for purposes of self-defense, while traveling on public transportation. As a result of Defendants' active enforcement of the Public Transportation Carry Ban, he is precluded from carrying a handgun for purposes of self-defense while traveling on public transportation.

18.     Defendant Kwame Raoul is sued in his official capacity as the Attorney General of Illinois. As Attorney General, he is responsible for enforcing the State's laws, *see* 15 ICS 205/4 (requiring that Attorney General "institute and prosecute all actions and proceedings in favor of or for the use of the State, which may be necessary in the execution of the duties of any State officer"), which include the State's Public Transportation Carry Ban.

19.     Defendant Rick Amato is sued in his official capacity as State's Attorney for DeKalb County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the Public Transportation Carry Ban. 55 ILCS 5/3-9005. Defendant Amato's ongoing enforcement of the Ban against DeKalb County residents places Plaintiff Schoenthal under imminent threat of arrest and prosecution should he violate the Public Transportation Carry Ban, preventing him from carrying a handgun while traveling on public transportation.

20.     Defendant Robert Berlin is sued in his official capacity as State's Attorney for DuPage County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and

criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the Public Transportation Carry Ban. 55 ILCS 5/3-9005. Defendant Berlin's ongoing enforcement of the Ban against DuPage County residents places Plaintiff Wroblewski under imminent threat of arrest and prosecution should he violate the Public Transportation Carry Ban, preventing him from carrying a handgun while traveling on public transportation.

21.     Defendant Kimberly M. Foxx is sued in her official capacity as State's Attorney for Cook County, Illinois. As State's Attorney, she has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the Public Transportation Carry Ban. 55 ILCS 5/3-9005. Defendant Foxx's ongoing enforcement of the Ban against Cook County residents places Plaintiff Vesel under imminent threat of arrest and prosecution should he violate the Public Transportation Carry Ban, preventing him from carrying a handgun while traveling on public transportation.

22.     Defendant Eric Rinehart is sued in his official capacity as State's Attorney for Lake County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the Public Transportation Carry Ban. 55 ILCS 5/3-9005. Defendant Rinehart's ongoing enforcement of the Ban against Lake County residents places Plaintiff Winston under imminent threat of

arrest and prosecution should he violate the Public Transportation Carry Ban, preventing him from carrying a handgun while traveling on public transportation.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

24.     This action for violation of Plaintiffs' constitutional rights is brought under 42 U.S.C. § 1983 and seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and attorneys' fees pursuant to 42 U.S.C. § 1988.

25.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the Northern District of Illinois.

## THE LAWS AT ISSUE

26.     720 ILCS 5/24-1(a)(4) and (a)(10) generally prohibit the knowing carriage of a functioning, loaded, and immediately accessible pistol, revolver, stun gun or taser or other firearm, "in any vehicle or concealed on or about his person except when on his land in or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person, as an invitee with that person's permission," 720 ILCS 5/24-1(a)(4), or "upon any public street, alley, or other public lands within the corporate limits of a city, village, or incorporated town, except when an invitee thereon, or therein." 720 ILCS 5/24-1(a)(10). Violation of 720 ILCS 5/24-1(a)(4) and (a)(10) while "in any conveyance

owned, leased, or contracted by a public transportation agency, or on any public way within 1,000 feet of the real property comprising any . . . public transportation facility" results in a Class 3 felony. 720 ILCS 5/24-1(c)(1.5). Only "a currently valid license under the Firearm Concealed Carry Act" exempts a person from this general criminal ban. *See* 720 ILCS 5/24-1(a)(4)(iv), (a)(10)(iv).

27.    But, under the Firearm Concealed Carry Act, a licensee "shall not knowingly carry a firearm on or into . . . [a]ny bus, train, or form of transportation paid for in whole or in part with public funds, and any building, real property, and parking area under the control of a public transportation facility paid for in whole or in part with public funds." 430 ILCS 66/65(a)(8). A first violation of the Firearm Concealed Carry Act is punishable as a Class B misdemeanor, and a second or subsequent violation is punishable as a Class A misdemeanor. 430 ILCS 66/70(e).

28.    Accordingly, even though Illinois allows law-abiding adults to exercise their rights to keep and bear arms in some areas outside of the home, the State bans exercise of the right to carry a firearm while traveling on public transportation.

## STATEMENT OF FACTS RELATING TO
## Benjamin Schoenthal

29.    Plaintiff Schoenthal is a resident of DuPage County, Illinois. He works as an IT team lead for a Healthcare organization.

30.    Schoenthal occasionally uses public transportation for work but more frequently uses it for personal errands. Schoenthal would also like to be able to use public transportation more, since it is an environmentally-friendly option compared

to single occupant car driving. He would travel this way more often if he were not forced to disarm to ride on public transportation.

31.     Schoenthal has a valid Firearm Owners Identification Card (FOID card) and concealed carry license pursuant to the Illinois Firearm Concealed Carry Act.

32.     Schoenthal desires to carry a handgun on public transportation for self-defense and other lawful purposes.  Schoenthal lawfully owns a handgun and would carry a handgun for self-defense while traveling on public transportation were it not for the Public Transportation Carry Ban and Defendants' enforcement thereof.

33.     As a result of the Public Transportation Carry Ban, if Schoenthal carried a handgun for self-defense while riding on public transportation, he would expose himself to arrest and criminal charges.

34.     Schoenthal therefore has abstained from carrying a handgun for self-defense while riding on public transportation, for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the Public Transportation Carry Ban, enforced by Defendants.

## STATEMENT OF FACTS RELATING TO
### Mark Wroblewski

35.     Plaintiff Wroblewski is a resident of DuPage County, Illinois.

36.     Wroblewski works as a product support specialist in the automotive industry.

37.     Wroblewski desires to carry a handgun on public transportation for self-defense and other lawful purposes. Wroblewski travels from his home in the suburbs to the city for recreational purposes *via* public transportation. He would travel this way more often if he were not forced to disarm to ride on public transportation.

38.     Wroblewski has a valid FOID card and concealed carry license pursuant to the Illinois Firearm Concealed Carry Act.

39.     Wroblewski lawfully owns a handgun and would carry a handgun for self-defense while traveling on public transportation were it not for the Public Transportation Carry Ban and Defendants' enforcement thereof.

40.     As a result of the Public Transportation Carry Ban, if Wroblewski carried a handgun for self-defense while riding on public transportation, he would expose himself to arrest and criminal charges.

41.     Wroblewski therefore has abstained from carrying a handgun for self-defense while riding on public transportation for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the Public Transportation Carry Ban, enforced by Defendants.

<u>STATEMENT OF FACTS RELATING TO<br>Joseph Vesel</u>

42.     Plaintiff Vesel is a resident of Cook County, Illinois.

43.     Vesel is a former Central Intelligence Agency Operations Officer.

44.     For self-defense and other lawful purposes, Vesel desires to carry a handgun while traveling on public transportation. Vesel has avoided using public transit because he cannot carry a firearm for self-defense while doing so.

45.     Vesel has a valid FOID card and concealed carry license pursuant to the Illinois Firearm Concealed Carry Act.

46.     Vesel lawfully possesses handgun and would carry a handgun while traveling on public transportation were it not for the Public Transportation Carry Ban and Defendants' enforcement thereof.

47.     As a result of the Public Transportation Carry Ban, if Vesel carried a handgun for self-defense while riding on public transportation, he would expose himself to arrest and criminal charges.

48.     Vesel therefore has abstained from carrying a handgun self-defense while on public transportation, for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the Public Transportation Carry Ban, enforced by Defendants.

## STATEMENT OF FACTS RELATING TO
### Douglas Winston

49.     Plaintiff Winston is a resident of Lake County, Illinois.

50.     Winston is a full-time paramedic and firefighter. He is a certified Basic Arson Investigator, the training for which included the same 40-hour Mandatory Firearms Training (MFT) course required of police/peace officers, deputy sheriffs and probation/parole officers in the State of Illinois. Until his retirement from his previous position in 2019, Winston was classified as a Peace Officer under Illinois law, and completed the same regular use of force and firearms qualifications as

police officers for his municipal employer, and routinely carried a sidearm while investigating the cause, origin and circumstances of fires or explosions. He also works part-time as a CCW instructor.

51.     For self-defense and other lawful purposes, Winston desires to carry a handgun while traveling on public transportation. Winston rarely takes public transportation because he must disarm before he does so to avoid prosecution. Specifically, Winston with his family would take public transportation to cities like Evanston and Chicago, and even as far as St. Louis, were he able to carry a concealed firearm for self-defense purposes during such travels. He would take public transportation more often if he were not required to disarm.

52.     Winston possesses a valid FOID card and concealed carry license pursuant to the Illinois Firearm Concealed Carry Act.

53.     Winston lawfully owns a handgun and would carry a handgun for while traveling on public transportation were it not for the Public Transportation Carry Ban and Defendants' enforcement thereof.

54.     As a result of the Public Transportation Carry Ban, if Winston carried a handgun on public transportation for self-defense while riding on public transportation, he would expose himself to arrest and criminal charges.

55.     Winston, therefore has abstained from carrying a handgun for self-defense while on public transportation, for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the Public Transportation Carry Ban, enforced by Defendants.

## HISTORY AND EFFECTS OF SENSITIVE PLACES RESTRICTIONS

56.     St. George Tucker, the editor of an early-American edition of *Blackstone's Commentaries*, wrote: "In many parts of the United States, a man no more thinks, of going out of his house on any occasion, without his rifle or musket in his hand, than a European fine gentleman without his sword by his side." 5 St. George Tucker, *Blackstone's Commentaries*, app., at 19 (Phila., William Young Birch & Abraham Small) (1803).

57.     Indeed, America has a longstanding tradition of encouraging and even mandating the carrying of arms while in public. For example, a 1623 Virginia statute required "[t]hat no man go or send abroad without a sufficient partie will armed." 1 William Waller Hening, *The Statutes At Large: Being A Collection of All The Laws Of Virginia, From The First Session Of The Legislature* 127 (1808). Another Virginia law, from 1632, provided that "ALL men that are fittinge to beare armes, shall bringe their pieces to the church." *Id.* at 173. A Rhode Island statute stated that "noe man shall go two miles from the Towne unarmed, eyther with Gunn or Sword; and that none shall come to any public Meeting without his weapon." 1 *Records of The Colony Of Rhode Island And Providence Plantations, In New England* 94 (John Russell Bartlett ed., 1856). And Isaac Weld remarked of those he encountered in transit in 1796: "[T]he people all travel on horseback, with pistols and swords." 1 Isaac Weld, *Travels Through The States of North America* 233-34 (2d ed. 1799).

58.     The Founding generation admitted only very limited regulations on the right to bear arms, including restrictions on carrying firearms in certain "sensitive places." *Heller*, 544 U.S. at 626. However, the relatively few historical statutes of this type identify a very small number of "sensitive places"—including legislative assemblies, polling places, and courthouses. *Bruen*, 142 S. Ct. at 2133. "The list is rather short." David. B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 203, 234 (2018).

59.     After the Civil War, states continued to impose relatively narrow "sensitive place" restrictions on the right to carry firearms. For instance, some continued to impose restrictions on carrying firearms in polling places or on election day. *See, e.g.,* 1870 La. Acts 159–60; Public Local Laws of Maryland, Articles 11-24, at 1457 (King Bros. ed. 1888). State courts also upheld restrictions on carrying firearms into courts. *See, e.g.*, *Hill v. State*, 53 Ga. 472, 477-78 (1874).

60.     The Second Amendment was ratified in 1791 and the Fourteenth Amendment was ratified in 1868. The Supreme Court has held the period immediately surrounding the ratification of the Bill of Rights is the key time to examine for historical evidence that can inform our understanding of its protections. *See, e.g.*, *Crawford v. Washington*, 541 U.S. 36, 42–50 (2004); *Lynch v. Donnelly*, 465 U.S. 668, 674 (1984). And the Second Amendment right has the same meaning against the states through the Fourteenth Amendment as it does against the federal government through the Second. *McDonald*, 561 U.S. at 765. Therefore,

historical evidence of similar restrictions is of the most value for determining the scope of the right when it dates to the period around 1791. The more recent it is, the less it informs about the scope of the right.

61.     Plaintiffs are not aware of any historical evidence that carrying firearms was restricted on public transportation conveyances (*e.g.*, ferries, riverboats, and stagecoaches) at or around the time of the adoption of either the Second or Fourteenth Amendments.

62.     The aforementioned survey of firearm restrictions reveals that sensitive places restrictions were extremely limited during all potentially relevant historical time periods. No such sensitive place restriction directly or analogously supports the Public Transportation Carry Ban.

63.     The unifying feature of the historically accepted sensitive places where individuals were deprived of the right to bear arms was security. In compensation for an individual's lessened right to protect himself, the government provided security measures to ensure the physical protection of anyone in a legislative assembly or courthouse. *See* David B. Kopel, *The sensitive places issue in New York Rifle*, REASON.COM (Nov. 8, 2021), https://bit.ly/3dpKD3e. In a modern context, this would mean measures such as requiring individuals to pass though magnetometers when entering the location in question. *See* Tr. of Oral Arg., No. 20-843, at 32:18–22 ("If it's a . . . place like a courthouse, for example, a government building, where everybody has to go through a magnetometer and there are security officials there,

that would qualify as a sensitive place."). The Public Transportation Carry Ban is not accompanied by security measures of this type.

64.    Few jurisdictions today impose similar restrictions on carriage on public transportation and they are not longstanding. The oldest such restriction of which Plaintiffs are aware comes from New Mexico and dates only to 1979. N.M. Stat. Ann. § 30-7-13.

## COUNT I: ILLINOIS' PUBLIC TRANSPORTATION CARRY BAN IS UNCONSTITUTIONAL PURSUANT TO THE SECOND AND FOURTEENTH AMENDMENTS – 42 U.S.C. § 1983; U.S. CONST. AMENDS. II, XIV

### (*All Plaintiffs v. Defendants*)

65.    The foregoing paragraphs are hereby incorporated herein as if set forth in full.

66.    The Second Amendment of the United States Constitution provides that "the right of the people to keep and bear arms, shall not be infringed."

67.    The Supreme Court has held that the right to keep and bear arms, for self-defense and other lawful purposes, is a fundamental right. *Heller*, 554 U.S. at 581.

68.    In *Heller*, the U.S. Supreme Court defined "bear arms" as to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." 554 U.S. at 584. The right to armed self-defense applies both inside the home and in public. *Bruen*, 2022 WL 2251305 at *5.

69. In *McDonald*, the Supreme Court held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment. 561 U.S. at 791; *id.* at 806 (Thomas, J., concurring in the judgment).

70. In *Bruen*, the Supreme Court confirmed that "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 2022 WL 2251305 at \*9.

71. The Public Transportation Carry Ban infringes on Plaintiffs' Second Amendment right to carry weapons for self-defense while Plaintiffs are traveling on public transportation.

72. Because the Ban is inconsistent with the history of firearm regulation in this Nation as demonstrated by restrictions in place during potentially relevant time periods, the Ban is not "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms" and is therefore unconstitutional under the Second and Fourteenth Amendments.

73. 42 U.S.C. § 1983 prohibits state actors from depriving a person of a federal constitutional rights under color of state law.

74. Plaintiffs Schoenthal, Wroblewski, Vesel, and Winston are law-abiding, peaceable citizens of Illinois and the United States who lawfully own firearms and who wish to be able to carry handguns on public transportation without being subjected to criminal prosecution.

75.     Defendants have violated Plaintiffs' right to keep and bear arms by precluding them from being able to carry a handgun on public transportation—even for purposes of self-defense—because Defendants enforce the Public Transportation Carry Ban.

76.     Defendants' enforcement of 430 ILCS 66/65(a)(8), and any regulations, customs, practices, and policies related thereto, forces Plaintiffs to either comply with the unconstitutional mandate—thereby being prevented from defending themselves and their loved ones in public places—or be subjected to criminal prosecution.

77.     Therefore, as a direct and proximate result of the above infringement and impermissible burden on Plaintiffs' Second and Fourteenth Amendment rights, Plaintiffs have suffered—and continue to suffer—from an unlawful deprivation of their fundamental constitutional right to keep and bear arms.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, as follows:

a.     Declare that the Public Transportation Carry Ban consisting of 430 ILCS 66/65(a)(8), and all related laws, regulations, policies, and procedures, violates the right of Plaintiffs to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution;

b.     Enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing the Public

Transportation Carry Ban, consisting of 430 ILCS 66/65(a)(8), and all related laws, regulations, policies, and procedures;

c.     Pursuant to 42 U.S.C. § 1988, award costs and attorney fees and expenses to the extent permitted; and

d.     Grant any and all other equitable and/or legal remedies this Court may see fit.

Dated: September 20, 2022

Respectfully Submitted,

/s/David G. Sigale
   Attorney for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com

*Attorney for Plaintiffs*