IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BENJAMIN SCHOENTHAL, MARK WROBLEWSKI, JOSEPH VESEL, and DOUGLAS WINSTON, Plaintiffs, | |
| v. | No. 22-cv-50326 |
| KWAME RAOUL, in his official capacity as Attorney General of Illinois, RICK AMATO, in his official capacity as State's Attorney of DeKalb County, Illinois, ROBERT BERLIN, in his official capacity as State's Attorney of DuPage County, Illinois, KIMBERLY M. FOXX, in her official Capacity as State's Attorney of Cook County, Illinois, and ERIC RINEHART, in his official capacity as State's Attorney of Lake County, Illinois, Defendants. | Judge Iain D. Johnston Magistrate Lisa A. Jensen |

**DEFENDANT KIMBERLY M. FOXX'S**
**<u>ANSWER TO PLAINTIFFS' COMPLAINT</u>**

NOW COMES Defendant KIMBERLY M. FOXX, State's Attorney of Cook County (the "CCSA"), through her Assistant State's Attorney Jessica M. Scheller, and for her Answer to Plaintiffs' Complaint states as follows:

<u>INTRODUCTION</u>

1.      This is an action to uphold Plaintiffs' right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution. This right "guarantee[s] the individual right to possess and carry" firearms. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

**ANSWER:**  CCSA admits that the allegations contained in the first sentence of this paragraph state, in part, the Second Amendment to the United States Constitution, which reads "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." CCSA further admits that the allegations contained in the second sentence in this paragraph quote, in part, the opinion rendered in *Heller*. CCSA refers to the entire opinion rendered in *Heller* for its full meaning and effect. CCSA denies the remaining allegations in this paragraph.

2.      In *Heller*, the U.S. Supreme Court defined "bear arms" as to "wear, bear, or carry… upon the person or in the clothing or in a pocket, for the purpose… of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id*. at 584.

**ANSWER:**   CCSA admits that the allegations contained in this paragraph quote, in part, the opinion rendered in *Heller*. CCSA refers to the entire opinion rendered in *Heller* for its full meaning and effect. CCSA denies the remaining allegations in this paragraph.

3.      In *McDonald v. City of Chicago*, 561 U.S. 742, 750, 791 (2010), the Supreme Court confirmed that the rights protected by the Second Amendment are "among those fundamental rights necessary to our system of ordered liberty" and held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment.

**ANSWER:**   CCSA admits that the allegations contained in this paragraph quote, in part, the opinion rendered in *McDonald*. CCSA refers to the entire opinion rendered in

2

*McDonald* for its full meaning and effect. CCSA denies the remaining allegations in this paragraph.

4.     The Supreme Court in *Bruen* further confirmed that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022).

**ANSWER:**     CCSA admits that the allegations contained in this paragraph quote, in part, the opinion rendered in *Bruen*. CCSA refers to the entire opinion rendered in *Bruen* for its full meaning and effect. CCSA denies the remaining allegations in this paragraph.

5.     "The constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Id*. at 2156 (quoting *McDonald*, 561 U.S. at 780). Thus, to justify a regulation burdening the right to bear arms, "the government may not simply posit that the regulation promotes an important interest." *Bruen*, 142 S. Ct. at 2126. "Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127.

**ANSWER:**  CCSA admits that the allegations contained in this paragraph quote, in part, the opinion rendered in *Bruen*. CCSA refers to the entire opinion rendered in *Bruen* for its full meaning and effect. CCSA denies the remaining allegations in this paragraph.

6.     "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Heller*, 554 U.S. at 634-35. At the time of the Founding, there was no tradition of restricting firearm possession while in transit. To the contrary, "statutes required arms carrying when traveling or away from home." David. B. Kopel & Joseph G.S. Greenlee, *The*

3

*"Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 203, 232 (2018). Plaintiffs, who possess concealed carry licenses and thus are generally authorized by the State to carry firearms in public, wish to exercise their fundamental, constitutionally guaranteed right to carry loaded, operable handguns on their person, for lawful purposes including self-defense, while traveling on public transportation systems. But they cannot because of the laws, regulations, policies, practices, and customs that Defendants have been enforcing and continue to actively enforce today.

> **ANSWER:** CCSA admits that the allegations contained in the first sentence of this paragraph quote, in part, the opinion rendered in *Heller*. CCSA refers to the entire opinion rendered in *Heller* for its full meaning and effect. CCSA denies the remaining allegations in this paragraph.

7. Illinois generally bars the carrying of handguns by ordinary citizens in public for self-defense unless they first acquire a license to carry. 720 ILCS 5/241(a)(4), (a)(10). Even for those with carry licenses, 430 ILCS 66/65-(a)(8) prohibits the carrying of firearms on public transportation or in public transportation facilities, in direct violation of the Second and Fourteenth Amendments to the United States Constitution. This statutory bar on licensees carrying firearms on public transportation, 430 ILCS 66/65-(a)(8), is referred to herein as the "Public Transportation Carry Ban."

> **ANSWER:** CCSA admits that the Illinois Criminal Code, 720 ILCS 5/24-1(a)(4) and (a)(10), bars the carrying of a firearm except for those carried in accordance with the Firearm Concealed Carry Act by a person who has been issued a currently valid license under said Act. CCSA further admits that Illinois' Firearm Concealed Carry Act prohibits

a licensee under said Act to carry a firearm on public transportation or public transportation facilities. CCSA denies the remaining allegations in this paragraph.

8.     Even though the U.S. Supreme Court in *Bruen* affirmed that "the Second Amendment guarantees an 'individual right to possess and carry weapons in case of confrontation,' and confrontation can surely take place outside the home," 142 S. Ct. at 2135 (internal citation omitted) (citing *Heller*, 554 U.S. at 599), Illinois' Public Transportation Carry Ban unconstitutionally prohibits Plaintiffs from carrying a handgun while traveling on public transportation.

> **ANSWER:**     CCSA admits that the allegations contained in this paragraph quote, in part, the opinion rendered in *Bruen*. CCSA refers to the entire opinion rendered in *Bruen* for its full meaning and effect. CCSA denies the remaining allegations in this paragraph.

9.     Although states may restrict the carrying of firearms in certain "*sensitive places*," *Heller*, 554 U.S. at 626, the Supreme Court has rejected an expansive view of the sensitive places doctrine. *Bruen*, 142 S. Ct. at 2134. ("[E]xpanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly."). Rather, modern sensitive places restrictions are only valid when sufficiently analogous "to those historical regulations of 'sensitive places,'" which include "legislative assemblies, polling places, and courthouses." *Id*. at 2133.

> **ANSWER:**     CCSA admits that the allegations contained in this paragraph quote, in part, the opinions rendered in *Heller* and *Bruen*. CCSA refers to the entire opinions rendered in *Heller* and *Bruen* for their full meaning and effect. CCSA denies the remaining allegations in this paragraph.

10.     There is no direct corollary or even analogue between the Public Transportation Carry Ban and historical sensitive places restrictions. Thus, the Ban cannot pass constitutional muster.

**ANSWER:**     CCSA denies the allegations in this paragraph.

11.     A first violation of 430 ILCS 66/65(a)(8) is a Class B misdemeanor punishable by a fine of $1,500.00 and confinement in jail for 180 days. 430 ILCS 66/70(e); 730 ILCS 5/5-4.5-60. A second or subsequent offense is a Class A misdemeanor, punishable by a fine of $2,500.00, confinement in jail for 364 days, potential suspension or revocation of a firearm carry license. *Id*; 730 ILCS 5/5-4.5-55.

**ANSWER:**     CCSA admits that under 430 ILCS 66/70(e), a licensee in violation of the Firearm Concealed Carry Act shall be guilty of a Class B misdemeanor and that a second or subsequent violation is a Class A misdemeanor. CCSA further admits that for a Class B misdemeanor the minimum fine is $75.00 and the maximum fine is $1,500.00. 730 ILCS 5/504.5-60(e). CCSA admits that for a Class A misdemeanor the minimum fine is $75.00 and the maximum fine is $2,500.00; a possible sentence of imprisonment of less than one year. 730 ILCS 5/5-4.5-55. Under the Concealed Carry Act, a license may be suspended for up to 6 months for a second violation and shall be permanently revoked for 3 or more violations of Section 65 of the Act. 430 ILCS 66/70(e). CCSA denies all remaining allegations of this paragraph as conclusions of law

12.     "Public transportation is an essential public purpose," ILL. CONST. art. XIII, § 7, and Plaintiffs rely on public transportation to travel to work, to school, and to other places essential to their daily lives. Because the Public Transportation Carry Ban prohibits persons from carrying a firearm while accessing public transportation, the Ban severely restricts Plaintiffs from exercising

their right to self-defense outside of the home. This directly violates the Second and Fourteenth Amendments to the United States Constitution as held by the U.S. Supreme Court in *Heller*, *McDonald*, and *Bruen*.

>    **ANSWER:** CCSA admits that the allegations contained in the first sentence of this paragraph quote, in part, the Illinois Constitution, Art. XIII, § 7. CCSA refers to the entire Article XIII of the Illinois Constitution for its full meaning and effect. CCSA denies the remaining allegations in this paragraph.

13.    Defendants' laws, regulations, policies, and enforcement practices therefore prevent law-abiding adults such as Plaintiffs Schoenthal, Wroblewski, Vesel, and Winston from exercising their fundamental, individual right to bear loaded, operable handguns outside the home, including while traveling on public transportation.

>    **ANSWER:** CCSA denies the allegations contained in this paragraph.

PARTIES

14.    Plaintiff Benjamin Schoenthal is a natural person and a citizen of DeKalb County, Illinois, and the United States. Schoenthal has never been charged with nor convicted of any misdemeanor or felony offense. It is Schoenthal's present intention and desire to be able to lawfully carry a handgun for self-defense while traveling on public transportation. As a result of Defendants' active enforcement of the Public Transportation Carry Ban, he is precluded from carrying a handgun for purposes of self-defense while traveling on public transportation.

>    **ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

15.    Plaintiff Mark Wroblewski is a natural person and a citizen of DuPage County, Illinois, and the United States. Wroblewski has never been charged with nor convicted of any

7

misdemeanor or felony offense. It is Wroblewski's present intention and desire to be able to lawfully carry a handgun for self-defense while traveling on public transportation. As a result of Defendants' active enforcement of the Public Transportation Carry Ban, he is precluded from carrying a handgun for purposes of self-defense while traveling on public transportation.

> **ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

16. Plaintiff Joseph Vesel is a natural person and a citizen of Cook County, Illinois, and the United States. Vesel has never been charged with nor convicted of any misdemeanor or felony offense. It is Vesel's present intention and desire to be able to lawfully carry a handgun, including for purposes of self-defense, while traveling on public transportation. As a result of Defendants' active enforcement of the Public Transportation Carry Ban, he is precluded from carrying a handgun for purposes of self-defense while traveling on public transportation.

> **ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

17. Plaintiff Douglas Winston is a natural person and a citizen of Lake, Illinois, and the United States. Winston has never been charged with nor convicted of any misdemeanor or felony offense. It is Winston's present intention and desire to be able to lawfully carry a handgun, including for purposes of self-defense, while traveling on public transportation. As a result of Defendants' active enforcement of the Public Transportation Carry Ban, he is precluded from carrying a handgun for purposes of self-defense while traveling on public transportation.

> **ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

18. Defendant Kwame Raoul is sued in his official capacity as the Attorney General of Illinois. As Attorney General, he is responsible for enforcing the State's laws, *see* 15 ILCS 205/4 (requiring that Attorney General "institute and prosecute all actions and proceedings in favor of or for the use of the State, which may be necessary in the execution of the duties of any State officer"), which include the State's Public Transportation Carry Ban.

> **ANSWER:** CCSA admits that Defendant Kwame Raul is the Attorney General of Illinois. CCSA further admits that the allegations contained in the second sentence of this paragraph accurately quotes a portion of 15 ILCS 205/4. CCSA denies the remaining allegations in this paragraph.

19. Defendant Rick Amato is sued in his official capacity as State's Attorney for DeKalb County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the Public Transportation Carry Ban. 55 ILCS 5/3-9005. Defendant Amato's ongoing enforcement of the Ban against DeKalb County residents places Plaintiff Schoenthal under imminent threat of arrest and prosecution should he violate the Public Transportation Carry Ban, preventing him from carrying a handgun while traveling on public transportation.

> **ANSWER:** CCSA admits that Defendant Rick Amato is the State's Attorney of DeKalb County, Illinois. CCSA further admits that the allegations contained in the second sentence of this paragraph accurately quotes a portion of 55 ILCS 5/3-9005. CCSA denies the remaining allegations in this paragraph.

20. Defendant Robert Berlin is sued in his official capacity as State's Attorney for DuPage County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all

actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the Public Transportation Carry Ban. 55 ILCS 5/3-9005. Defendant Berlin's ongoing enforcement of the Ban against DuPage County residents places Plaintiff Wroblewski under imminent threat of arrest and prosecution should he violate the Public Transportation Carry Ban, preventing him from carrying a handgun while traveling on public transportation.

> **ANSWER:** CCSA admits that Defendant Robert Berlin is the State's Attorney of DuPage County, Illinois. CCSA further admits that the allegations contained in the second sentence of this paragraph accurately quotes a portion of 55 ILCS 5/3-9005. CCSA denies the remaining allegations in this paragraph.

21. Defendant Kimberly M. Foxx is sued in her official capacity as State's Attorney for Cook County, Illinois. As State's Attorney, she has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the Public Transportation Carry Ban. 55 ILCS 5/3-9005. Defendant Foxx's ongoing enforcement of the Ban against Cook County residents places Plaintiff Vesel under imminent threat of arrest and prosecution should he violate the Public Transportation Carry Ban, preventing him from carrying a handgun while traveling on public transportation.

> **ANSWER:** CCSA admits that she is the State's Attorney for Cook County, Illinois. CCSA further admits that the allegations contained in the second sentence of this paragraph accurately quotes a portion of 55 Ill. Comp. Stat. Ann. 5/3-9005. CCSA denies the remaining allegations in this paragraph.

22.     Defendant Eric Rinehart is sued in his official capacity as State's Attorney for Lake County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the Public Transportation Carry Ban. 55 ILCS 5/3-9005. Defendant Rinehart's ongoing enforcement of the Ban against Lake County residents places Plaintiff Winston under imminent threat of arrest and prosecution should he violate the Public Transportation Carry Ban, preventing him from carrying a handgun while traveling on public transportation.

   **ANSWER:**  CCSA admits that Defendant Eric Rinehart is the State's Attorney of Lake County, Illinois. CCSA further admits that the allegations contained in the second sentence of this paragraph accurately quotes a portion of 55 ILCS 5/3-9005. CCSA denies the remaining allegations in this paragraph.

<u>JURISDICTION AND VENUE</u>

23.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

   **ANSWER:**   CCSA denies this Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1331 or 28 U.S.C. §1343.

24.     This action for violation of Plaintiffs' constitutional rights is brought under 42 U.S.C. § 1983 and seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and attorneys' fees pursuant to 42 U.S.C. § 1988.

   **ANSWER:**   CCSA admits Plaintiffs seek remedies under these provisions, but denies Plaintiffs are entitled to the requested relief.

25.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the Northern District of Illinois.

**ANSWER:**     CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

<u>THE LAWS AT ISSUE</u>

26.     720 ILCS 5/24-1(a)(4) and (a)(10) generally prohibit the knowing carriage of a functioning, loaded, and immediately accessible pistol, revolver, stun gun or taser or other firearm, "in any vehicle or concealed on or about his person except when on his land in or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person, as an invitee with that person's permission," 720 ILCS 5/24-1(a)(4), or "upon any public street, alley, or other public lands within the corporate limits of a city, village, or incorporated town, except when an invitee thereon, or therein." 720 ILCS 5/241(a)(10). Violation of 720 ILCS 5/24-1(a)(4) and (a)(10) while "in any conveyance owned, leased, or contracted by a public transportation agency, or on any public way within 1,000 feet of the real property comprising any... public transportation facility" results in a Class 3 felony. 720 ILCS 5/24-1(c)(1.5). Only "a currently valid license under the Firearm Concealed Carry Act" exempts a person from this general criminal ban. *See* 720 ILCS 5/24-1(a)(4)(iv), (a)(10)(iv).

**ANSWER:**     CCSA admits that the allegations contained in this paragraph accurately quote certain portions of 720 Ill. Comp. Stat. Ann. 5/24-1 and denies all remaining allegations of this paragraph as conclusions of law.

27.     But, under the Firearm Concealed Carry Act, a licensee "shall not knowingly carry a firearm on or into . . . [a]ny bus, train, or form of transportation paid for in whole or in part with

public funds, and any building, real property, and parking area under the control of a public transportation facility paid for in whole or in part with public funds." 430 ILCS 66/65(a)(8). A first violation of the Firearm Concealed Carry Act is punishable as a Class B misdemeanor, and a second or subsequent violation is punishable as a Class A misdemeanor. 430 ILCS 66/70(e).

>    **ANSWER:** CCSA admits that the allegations contained in this paragraph accurately quote certain portions of Sections 65 and 70 of the Illinois Firearm Concealed Carry Act and denies all remaining allegations of this paragraph as conclusions of law.

28.    Accordingly, even though Illinois allows law-abiding adults to exercise their rights to keep and bear arms in some areas outside of the home, the State bans exercise of the right to carry a firearm while traveling on public transportation.

>    **ANSWER:** CCSA admits that Illinois law prohibits the carrying of firearms on any form of transportation paid for in whole or in part with public funds. CCSA denies the remaining allegations in this paragraph.

STATEMENT OF FACTS RELATING TO
Benjamin Schoenthal

29.    Plaintiff Schoenthal is a resident of DuPage County, Illinois. He works as an IT team lead for a Healthcare organization.

>    **ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

30.    Schoenthal occasionally uses public transportation for work but more frequently uses it for personal errands. Schoenthal would also like to be able to use public transportation more, since it is an environmentally-friendly option compared to single occupant car driving. He would travel this way more often if he were not forced to disarm to ride on public transportation.

**ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

31. Schoenthal has a valid Firearm Owners Identification Card (FOID card) and concealed carry license pursuant to the Illinois Firearm Concealed Carry Act.

**ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

32. Schoenthal desires to carry a handgun on public transportation for self-defense and other lawful purposes. Schoenthal lawfully owns a handgun and would carry a handgun for self-defense while traveling on public transportation were it not for the Public Transportation Carry Ban and Defendants' enforcement thereof.

**ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

33. As a result of the Public Transportation Carry Ban, if Schoenthal carried a handgun for self-defense while riding on public transportation, he would expose himself to arrest and criminal charges.

**ANSWER:** CCSA admits that violating the Illinois Criminal Code and the Firearm Concealed Carry Act may expose a person to arrest and criminal charges. CCSA denies the remaining allegations in this paragraph.

34. Schoenthal therefore has abstained from carrying a handgun for self-defense while riding on public transportation, for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the Public Transportation Carry Ban, enforced by Defendants.

**ANSWER:** CCSA denies that she enforces, or would enforce, the so-called Public Transportation Carry Ban outside of Cook County, Illinois. CCSA lacks knowledge or

14

information sufficient to form a belief about the truth of the allegations in the remainder of this paragraph, and therefore denies the same.

STATEMENT OF FACTS RELATING TO
Mark Wroblewski

35.    Plaintiff Wroblewski is a resident of DuPage County, Illinois.

**ANSWER:**    CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

36.    Wroblewski works as a product support specialist in the automotive industry.

**ANSWER:**    CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

37.    Wroblewski desires to carry a handgun on public transportation for self-defense and other lawful purposes. Wroblewski travels from his home in the suburbs to the city for recreational purposes via public transportation. He would travel this way more often if he were not forced to disarm to ride on public transportation.

**ANSWER:**    CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

38.    Wroblewski has a valid FOID card and concealed carry license pursuant to the Illinois Firearm Concealed Carry Act.

**ANSWER:**    CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

39.    Wroblewski lawfully owns a handgun and would carry a handgun for self-defense while traveling on public transportation were it not for the Public Transportation Carry Ban and Defendants' enforcement thereof.

15

**ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

40.     As a result of the Public Transportation Carry Ban, if Wroblewski carried a handgun for self-defense while riding on public transportation, he would expose himself to arrest and criminal charges.

**ANSWER:**   CCSA admits that violating the Illinois Criminal Code and the Firearm Concealed Carry Act may expose a person to arrest and criminal charges. CCSA denies the remaining allegations in this paragraph.

41.     Wroblewski therefore has abstained from carrying a handgun for self-defense while riding on public transportation for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the Public Transportation Carry Ban, enforced by Defendants.

**ANSWER:**   CCSA denies that she enforces, or would enforce, the so-called Public Transportation Carry Ban outside of Cook County, Illinois. CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of this paragraph, and therefore denies the same.

STATEMENT OF FACTS RELATING TO<br>Joseph Vesel

42.     Plaintiff Vesel is a resident of Cook County, Illinois.

**ANSWER:**   CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

43.     Vesel is a former Central Intelligence Agency Operations Officer.

**ANSWER:**   CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

44.     For self-defense and other lawful purposes, Vesel desires to carry a handgun while traveling on public transportation. Vesel has avoided using public transit because he cannot carry a firearm for self-defense while doing so.

**ANSWER:**   CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

45.     Vesel has a valid FOID card and concealed carry license pursuant to the Illinois Firearm Concealed Carry Act.

**ANSWER:**    CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

46.     Vesel lawfully possesses handgun and would carry a handgun while traveling on public transportation were it not for the Public Transportation Carry Ban and Defendants' enforcement thereof.

**ANSWER:**    CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

47.     As a result of the Public Transportation Carry Ban, if Vesel carried a handgun for self-defense while riding on public transportation, he would expose himself to arrest and criminal charges.

**ANSWER:**   CCSA admits that violating the Illinois Criminal Code and the Firearm Concealed Carry Act may expose a person to arrest and criminal charges. CCSA denies the remaining allegations in this paragraph.

48.     Vesel therefore has abstained from carrying a handgun self-defense while on public transportation, for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the Public Transportation Carry Ban, enforced by Defendants.

**ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

STATEMENT OF FACTS RELATING TO<br>Douglas Winston

49.   Plaintiff Winston is a resident of Lake County, Illinois.

**ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

50.   Winston is a full-time paramedic and firefighter. He is a certified Basic Arson Investigator, the training for which included the same 40-hour Mandatory Firearms Training (MFT) course required of police/peace officers, deputy sheriffs and probation/parole officers in the State of Illinois. Until his retirement from his previous position in 2019, Winston was classified as a Peace Officer under Illinois law, and completed the same regular use of force and firearms qualifications as police officers for his municipal employer, and routinely carried a sidearm while investigating the cause, origin and circumstances of fires or explosions. He also works part-time as a CCW instructor.

**ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

51.   For self-defense and other lawful purposes, Winston desires to carry a handgun while traveling on public transportation. Winston rarely takes public transportation because he must disarm before he does so to avoid prosecution. Specifically, Winston with his family would take public transportation to cities like Evanston and Chicago, and even as far as St. Louis, were he able to carry a concealed firearm for self-defense purposes during such travels. He would take public transportation more often if he were not required to disarm.

**ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

52. Winston possesses a valid FOID card and concealed carry license pursuant to the Illinois Firearm Concealed Carry Act.

**ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

53. Winston lawfully owns a handgun and would carry a handgun for while traveling on public transportation were it not for the Public Transportation Carry Ban and Defendants' enforcement thereof.

**ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

54. As a result of the Public Transportation Carry Ban, if Winston carried a handgun on public transportation for self-defense while riding on public transportation, he would expose himself to arrest and criminal charges.

**ANSWER:** CCSA admits that violating the Illinois Criminal Code and the Firearm Concealed Carry Act may expose a person to arrest and criminal charges. CCSA denies the remaining allegations in this paragraph.

55. Winston, therefore has abstained from carrying a handgun for self-defense while on public transportation, for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the Public Transportation Carry Ban, enforced by Defendants.

**ANSWER:** CCSA denies that she enforces, or would enforce, the so-called Public Transportation Carry Ban outside of Cook County, Illinois. CCSA lacks knowledge or

19

information sufficient to form a belief about the truth of the allegations in the remainder of this paragraph, and therefore denies the same.

HISTORY AND EFFECTS OF SENSITIVE PLACES RESTRICTIONS

56.     St. George Tucker, the editor of an early-American edition of *Blackstone's Commentaries*, wrote: "In many parts of the United States, a man no more thinks, of going out of his house on any occasion, without his rifle or musket in his hand, than a European fine gentleman without his sword by his side." 5 St. George Tucker, *Blackstone's Commentaries*, app., at 19 (Phila., William Young Birch & Abraham Small) (1803).

**ANSWER:**   CCSA denies the allegations in this paragraph.

57.     Indeed, America has a longstanding tradition of encouraging and even mandating the carrying of arms while in public. For example, a 1623 Virginia statute required "[t]hat no man go or send abroad without a sufficient partie will armed." 1 William Waller Hening, *The Statutes At Large: Being A Collection of All The Laws Of Virginia, From The First Session Of The Legislature* 127 (1808). Another Virginia law, from 1632, provided that "ALL men that are fittinge to beare armes, shall bringe their pieces to the church." Id. at 173. A Rhode Island statute stated that "noe man shall go two miles from the Towne unarmed, eyther with Gunn or Sword; and that none shall come to any public Meeting without his weapon.'' 1 *Records of The Colony Of Rhode Island And Providence Plantations*, In *New England* 94 (John Russell Bartlett ed., 1856). And Isaac Weld remarked of those he encountered in transit in 1796: "[T]he people all travel on horseback, with pistols and swords." 1 Isaac Weld, *Travels Through The States of North America* 233-34 (2d ed. 1799).

**ANSWER:**   CCSA denies the allegations in this paragraph.

58.     The Founding generation admitted only very limited regulations on the right to bear arms, including restrictions on carrying firearms in certain "sensitive places." *Heller*, 544 U.S. at 626. However, the relatively few historical statutes of this type identify a very small number of "sensitive places"—including legislative assemblies, polling places, and courthouses. *Bruen*, 142 S. Ct. at 2133. "The list is rather short." David. B. Kopel & Joseph G.S. Greenlee, The "*Sensitive Places*" *Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 203, 234 (2018).

> **ANSWER:**     CCSA admits that the allegations in the first and second sentence in this paragraph quote, in part, the opinions rendered in *Heller* and *Bruen*. CCSA refers to the entire opinions rendered in *Heller* and *Bruen* for their full meaning and effect. CCSA denies the remaining allegations in this paragraph.

59.     After the Civil War, states continued to impose relatively narrow "sensitive place" restrictions on the right to carry firearms. For instance, some continued to impose restrictions on carrying firearms in polling places or on election day. *See, e.g.*, 1870 La. Acts 159–60; Public Local Laws of Maryland, Articles 11-24, at 1457 (King Bros, ed. 1888). State courts also upheld restrictions on carrying firearms into courts. *See, e.g., Hill v. State*, 53 Ga. 472, 477-78 (1874).

> **ANSWER:**     CCSA denies the allegations in this paragraph.

60.     The Second Amendment was ratified in 1791 and the Fourteenth Amendment was ratified in 1868. The Supreme Court has held the period immediately surrounding the ratification of the Bill of Rights is the key time to examine for historical evidence that can inform our understanding of its protections. *See, e.g., Crawford v. Washington*, 541 U.S. 36, 42–50 (2004); *Lynch v. Donnelly*, 465 U.S. 668, 674 (1984). And the Second Amendment right has the same meaning against the states through the Fourteenth Amendment as it does against the federal

government through the Second. *McDonald*, 561 U.S. at 765. Therefore, historical evidence of similar restrictions is of the most value for determining the scope of the right when it dates to the period around 1791. The more recent it is, the less it informs about the scope of the right.

> **ANSWER:** CCSA admits the ratification years of the Second and Fourteenth Amendments. CCSA further admits that the Second Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment. CCSA denies the remaining allegations in this paragraph.

61. Plaintiffs are not aware of any historical evidence that carrying firearms was restricted on public transportation conveyances (*e.g.*, ferries, riverboats, and stagecoaches) at or around the time of the adoption of either the Second or Fourteenth Amendments.

> **ANSWER:** CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

62. The aforementioned survey of firearm restrictions reveals that sensitive places restrictions were extremely limited during all potentially relevant historical time periods. No such sensitive place restriction directly or analogously supports the Public Transportation Carry Ban.

> **ANSWER:** CCSA denies the allegations in this paragraph.

63. The unifying feature of the historically accepted sensitive places where individuals were deprived of the right to bear arms was security. In compensation for an individual's lessened right to protect himself, the government provided security measures to ensure the physical protection of anyone in a legislative assembly or courthouse. *See* David B. Kopel, *The sensitive places issue in New York Rifle*, REASON.COM (Nov. 8, 2021), https://bit.ly/3dpKD3e. In a modern context, this would mean measures such as requiring individuals to pass though magnetometers when entering the location in question. *See* Tr. of Oral Arg., No. 20-843, at 32:18–

22 ("If it's a... place like a courthouse, for example, a government building, where everybody has to go through a magnetometer and there are security officials there, that would qualify as a sensitive place."). The Public Transportation Carry Ban is not accompanied by security measures of this type.

**ANSWER:** CCSA denies the allegations in this paragraph.

64. Few jurisdictions today impose similar restrictions on carriage on public transportation and they are not longstanding. The oldest such restriction of which Plaintiffs are aware comes from New Mexico and dates only to 1979. N.M. Stat. Ann. § 30-7-13.

**ANSWER:** CCSA denies the allegations in this paragraph.

<u>COUNT I: ILLINOIS' PUBLIC TRANSPORTATION CARRY BAN IS UNCONSTITUTIONAL PURSUANT TO THE SECOND AND FOURTEENTH AMENDMENTS – 42 U.S.C. § 1983; U.S. CONST. AMENDS. II, XIV</u>
(*All Plaintiffs v. Defendants*)

65. The foregoing paragraphs are hereby incorporated herein as if set forth in full.

**ANSWER:** CCSA incorporates by reference her responses to the foregoing paragraphs as if fully set forth herein.

66. The Second Amendment of the United States Constitution provides that "the right of the people to keep and bear arms, shall not be infringed."

**ANSWER:** CCSA admits that the Second Amendment to the United States Constitution reads "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

67. The Supreme Court has held that the right to keep and bear arms, for self-defense and other lawful purposes, is a fundamental right. *Heller*, 554 U.S. at 581.

**ANSWER:** CCSA admits that this paragraph purports to quote, in part, the opinion rendered in *Heller*. CCSA refers to the entire opinion rendered in *Heller* for its full meaning and effect.

68.     In *Heller*, the U.S. Supreme Court defined "bear arms" as to "wear, bear, or carry... upon the person or in the clothing or in a pocket, for the purpose... of being armed and ready for offensive or defensive action in a case of conflict with another person." 554 U.S. at 584. The right to armed self-defense applies both inside the home and in public. *Bruen*, 2022 WL 2251305 at *5.

**ANSWER:** CCSA admits that the first sentence in this paragraph quotes, in part, the opinion rendered in *Heller*. CCSA further admits the second sentence in this paragraph cites to the opinion rendered in *Bruen*. CCSA refers to the entire opinions rendered in *Heller* and *Bruen* for their full meaning and effect.

69.     In *McDonald*, the Supreme Court held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment. 561 U.S. at 791; id. at 806 (Thomas, J., concurring in the judgment).

**ANSWER:** CCSA admits that this paragraph cites, in part, the opinion rendered in *McDonald*. CCSA refers to the entire opinion rendered in *McDonald* for its full meaning and effect.

70.     In *Bruen*, the Supreme Court confirmed that "*Heller and McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 2022 WL 2251305 at *9.

**ANSWER:** CCSA admits that this paragraph cites, in part, the opinion rendered in *Bruen*. CCSA refers to the entire opinion rendered in *Bruen* for its full meaning and effect.

71.     The Public Transportation Carry Ban infringes on Plaintiffs' Second Amendment right to carry weapons for self-defense while Plaintiffs are traveling on public transportation.

**ANSWER:**     CCSA denies the allegations in this paragraph.

72.     Because the Ban is inconsistent with the history of firearm regulation in this Nation as demonstrated by restrictions in place during potentially relevant time periods, the Ban is not "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms" and is therefore unconstitutional under the Second and Fourteenth Amendments.

**ANSWER:**     CCSA denies the allegations in this paragraph.

73.     42 U.S.C. § 1983 prohibits state actors from depriving a person of a federal constitutional rights under color of state law.

**ANSWER:**     CCSA admits that 42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law, but denies that CCSA deprived individuals of their federal constitutional rights.

74.     Plaintiffs Schoenthal, Wroblewski, Vesel, and Winston are law-abiding, peaceable citizens of Illinois and the United States who lawfully own firearms and who wish to be able to carry handguns on public transportation without being subjected to criminal prosecution.

**ANSWER:**     CCSA lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

75.     Defendants have violated Plaintiffs' right to keep and bear arms by precluding them from being able to carry a handgun on public transportation—even for purposes of self-defense—because Defendants enforce the Public Transportation Carry Ban.

**ANSWER:**     CCSA denies the allegations in this paragraph.

76.     Defendants' enforcement of 430 ILCS 66/65(a)(8), and any regulations, customs, practices, and policies related thereto, forces Plaintiffs to either comply with the unconstitutional mandate—thereby being prevented from defending themselves and their loved ones in public places—or be subjected to criminal prosecution.

**ANSWER:**     CCSA denies the allegations in this paragraph.

77.     Therefore, as a direct and proximate result of the above infringement and impermissible burden on Plaintiffs' Second and Fourteenth Amendment rights, Plaintiffs have suffered—and continue to suffer—from an unlawful deprivation of their fundamental constitutional right to keep and bear arms.

**ANSWER:**     CCSA denies the allegations in this paragraph.

## GENERAL DENIAL

All allegations that have not been specifically admitted are hereby denied. Furthermore, the CCSA denies that Plaintiffs are entitled to the relief sought.

## FIRST AFFIRMATIVE DEFENSE

For its first affirmative defense, CCSA alleges Plaintiffs lack standing to bring this cause of action against this defendant.

## SECOND AFFIRMATIVE DEFENSE

For its second affirmative defense, CCSA alleges that the Complaint fails to state a cause of action upon which relief may be granted.

**WHEREFORE**, CCSA respectfully requests that judgment be entered in favor of Defendant CCSA and against Plaintiffs, Plaintiffs' requests for injunctive and declaratory relief and award of damages, fees, and costs by denied, costs be assessed against Plaintiffs, and any other and further relief this Honorable Court deems necessary and appropriate be granted.

Respectfully submitted,

KIMBERLY M. FOXX
State's Attorney of Cook County

By:     */s/ Jessica M. Scheller*
Jessica M. Scheller
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
jessica.scheller@cookcountyil.gov
(312) 603-5397

Jessica Scheller
Prathima Yeddanapudi
Silvia Mercado Masters
Assistant State's Attorneys
Cook County State's Attorney's Office
Civil Actions Bureau
500 Richard J. Daley Center
Chicago, Illinois 60602

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on December 13, 2022, she caused to be filed through the Court's CM/ECF system the foregoing document, a copy of which will be electronically mailed to the parties of record.

s/ Silvia Mercado Masters