UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BENJAMIN SCHOENTHAL, MARK WROBLEWSKI, JOSEPH VESEL, and DOUGLAS WINSTON<br><br>Plaintiffs,<br><br>v.<br><br>KWAME RAOUL, in his official capacity as Attorney General of Illinois,<br><br>RICK AMATO, in his official capacity as State's Attorney of DeKalb County, Illinois,<br><br>ROBERT BERLIN, in his official capacity as State's Attorney of DuPage County, Illinois,<br><br>KIMBERLY M. FOXX, in her official capacity as State's Attorney of Cook County, Illinois,<br><br>ERIC RINEHART, in his official capacity as State's Attorney of Lake County, Illinois,<br><br>Defendants. | Civil Action No. 3:22-cv-50326 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF ARTICLE III STANDING**


David G. Sigale
Law Firm of David G. Sigale, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
(630) 452-4547
dsigale@sigalelaw.com

# TABLE OF CONTENTS

**<u>Page</u>**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................1

FACTS ....................................................................................................................................2

ARGUMENT ..........................................................................................................................5

I.     Plaintiffs have alleged injuries in fact..........................................................................6

        a.     Plaintiffs' injuries are particularized and concrete. ...................................6

        b.     Plaintiffs' injuries are actual or imminent. ...............................................8

II.    Plaintiffs' injuries are fairly traceable to Defendants and are redressable by this Court...10

CONCLUSION.....................................................................................................................11

i

# TABLE OF AUTHORITIES

**Cases**                                               **Page**

*520 Michigan Ave. Assocs., Ltd. v. Devine*, 433 F.3d 961 (7th Cir. 2006)..................9, 10

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979).......................1, 2, 10

*Bauer v. Shepard*, 620 F.3d 704 (7th Cir. 2010)..................................................9

*Brandt v. Vill. of Winnetka, Ill.*, 612 F.3d 647 (7th Cir. 2010).........................9

*California v. Texas*, 141 S. Ct. 2104 (2021) ...........................................10, 11

*Christian v. Nigrelli*, 22-CV-695, 2022 WL 17100631 (W.D.N.Y. Nov. 22, 2022)......................2

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) ............................................7

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ........................................8

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
   149 F.3d 679 (7th Cir. 1998) ........................................................9

*District of Columbia v. Heller*, 554 U.S. 570 (2008).......................................6

*Doe v. Bolton*, 410 U.S. 179 (1973)..........................................................10

*Doster v. Kendall*, No. 22-3497, 2022 WL 17261374 (6th Cir. Nov. 29, 2022)...........................10

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ............................................2, 7, 8, 9

*Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1648 (2022) ..................................2, 7, 8

*Hardaway v. Nigrelli*, 22-CV-771, 2022 WL 16646220 (W.D.N.Y. Nov. 3, 2022) ......................2

*Lewis v. Casey*, 518 U.S. 343 (1996).........................................................8

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)........................................5, 6

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ..................................5

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)..............................8, 9

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)..........................1, 6, 7

*N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8 (1st Cir.1996) ..........................11

*People v. Buffalo Confectionary Co.*, 401 N.E.2d 546 (Ill. 1980)....................................4

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009)....................................7

*Rumsfeld v. FAIR*, 547 U.S. 47 (2006) ........................................................5

*Silha v. ACT, Inc.*, 807 F.3d 169 (7th Cir. 2015)...............................................5, 10, 11

*Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795 (7th Cir. 2016)................................11

*Spokeo, Inc. v. Robbins*, 578 U.S. 330 (2016) ..............................................6, 7

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)..........................................11

*Steffel v. Thompson*, 415 U.S. 452 (1974) ...............................................8, 9

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).......................................2, 8

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ..............................................................6, 7, 8

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) ..........................................................................5

*Warth v. Seldin*, 422 U.S. 490 (1975) ..........................................................................................6, 7

*Younger v. Harris*, 401 U.S. 37 (1971) ............................................................................................9

**Statutes**

15 ILL. COMP. STAT. 205/4 ................................................................................................................4

55 ILL. COMP. STAT. 5/3-9005 ......................................................................................................4, 5

430 ILL. COMP. STAT. 66/65(a)(8) .................................................................................................1, 3

430 ILL. COMP. STAT. 66/70(e) .........................................................................................................3

720 ILL. COMP. STAT. 5/24-1(c)(1.5) ................................................................................................2

720 ILL. COMP. STAT. 5/24-1(a)(4)(iv) .............................................................................................2

720 ILL. COMP. STAT. 5/24-1(a)(10)(iv) ...........................................................................................2

## INTRODUCTION

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court held that individuals have a constitutional right under the Second Amendment to carry firearms for self-defense outside the home. Yet, under Illinois law, ordinary, law-abiding Illinoisans who are duly licensed to carry concealed firearms cannot exercise this right if they travel outside the home via public transportation. *See* 430 ILL. COMP. STAT. 66/65(a)(8) ("Public Transportation Carry Ban"). This imposes a burden on Second Amendment rights beyond being disarmed on public transportation—which itself is unconstitutional. After all, if an individual cannot have a firearm while on public transportation, that necessarily means both (1) that he cannot have his firearm *before* boarding and (2) that he is deprived of having his firearm *after* departing while he is at his destination. Illinois's ban effectively bars carrying before the journey, while on the journey, and after the journey. Under the applicable framework established by *Heller* and *Bruen*, the Public Transportation Carry Ban is unconstitutional.

On November 4, 2022, this Court issued an order "to show cause" for Plaintiffs to "identify the basis upon which they allege standing under Article III." Notification of Docket Entry, Doc. 20 (Nov. 4, 2022). As demonstrated by the allegations in the Complaint, Plaintiffs have standing. For further support, Plaintiffs have additionally attached hereto sworn declarations.[1] Each Plaintiff "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest," namely to carry outside the home by means of public transportation in Illinois. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). This is "proscribed by a

---

[1] *See* Declaration of Benjamin Schoenthal (Dec. 12, 2022) (attached hereto as Ex. A) ("Schoenthal Decl."); Declaration of Mark Wroblewski (Dec. 12, 2022) (attached hereto as Ex. B.) ("Wroblewski Decl."); Declaration of Joseph Vesel (Dec. 12, 2022) (attached hereto as Ex. C.) ("Vesel Decl."); Declaration of Doug Winston (Dec. 12, 2022) (attached hereto as Ex. D.) ("Winston Decl.").

statute, and there exists a credible threat of prosecution" for violating the Public Transportation Carry Ban. *Id*. Additionally, as the Supreme Court reaffirmed just this past Term, it is unnecessary for a plaintiff to "subject" themselves "to the very framework" of laws that he alleges "unconstitutionally burdens" his rights. *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1648 (2022). In other words, a plaintiff need not *break the law* or be arrested to challenge the unconstitutionality of a statute. Instead, "it is well-established that pre-enforcement challenges are within Article III." *Ezell v. City of Chicago*, 651 F.3d 684, 695 (7th Cir. 2011) (internal quotation marks omitted); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014); *Christian v. Nigrelli*, 22-CV-695, 2022 WL 17100631, at *3–*4 (W.D.N.Y. Nov. 22, 2022); *Hardaway v. Nigrelli*, 22-CV-771, 2022 WL 16646220, at *3–*4 (W.D.N.Y. Nov. 3, 2022). Because these injuries are traceable to Defendants and would be redressed by an order of this Court, Plaintiffs have adequately alleged standing to challenge the Public Transportation Carry Ban.

**FACTS**

Plaintiffs are four individual Illinois residents, who each has a present and ongoing intent to ride public transportation while exercising their Second Amendment rights to carry for self-defense. Each has been denied that right because of threatened enforcement of the Public Transportation Carry Ban.

In general, Illinois bans carrying of firearms "in any conveyance owned, leased, or contracted by a public transportation agency, or on any public way within 1,000 feet of the real property comprising any . . . public transportation facility." 720 ILL. COMP. STAT. 5/24-1(c)(1.5). A currently valid concealed carry license exempts a person from this general criminal ban. *See* 720 ILL. COMP. STAT. 5/24-1(a)(4)(iv), (a)(10)(iv). But the exemption is quite limited. Even an

individual who is duly licensed to carry a concealed firearm for self-defense, "shall not knowingly carry a firearm on or into . . . [a]ny bus, train, or form of transportation paid for in whole or in part with public funds, and any building, real property, and parking area under the control of a public transportation facility paid for in whole or in part with public funds." 430 ILL. COMP. STAT. 66/65(a)(8). A first violation of the Public Transportation Carry Ban is punishable as a Class B misdemeanor. 430 ILL. COMP. STAT. 66/70(e). A second is a Class A. *Id*.

Because of the threat of arrest and criminal penalties, Plaintiffs do not presently carry when they ride public transportation, or they have avoided riding public transportation altogether because of the inability to defend themselves. Plaintiff Benjamin Schoenthal lives in DeKalb County. Compl. in Equity ¶ 14 (Sept. 20, 2022) ("Compl."); Schoenthal Decl. ¶ 2. He rides Metra Union Pacific West line when he is "needed to work in either Winfield or Chicago, Illinois, but only every three-four months due to the firearm carry restrictions." Schoenthal Decl. ¶ 7 He also takes public transportation for "running personal errands" or going sightseeing with his family in Chicago. Compl. ¶ 30; Schoenthal Decl. ¶ 7. He would intend to ride public transportation more frequently if he were not forced to disarm to ride and "were permitted to carry for self-defense." Schoenthal Decl. ¶¶7–9. Plaintiff Wroblewski lives in DuPage County, and he uses Metra to travel from his home in the suburbs to travel into Chicago for recreational purposes. Compl. ¶37; Wroblewski Decl. ¶7. He too would ride "more frequently" if the Public Transportation Carry Ban did not force him to disarm before riding because "it is a more convenient way to visit Chicago." Wroblewski Decl. ¶7. On the other hand, Plaintiff Vesel, a Cook County resident, has declined to ride at all because he cannot carry for self-defense. Compl. ¶¶42, 44; Vesel Decl. ¶¶ 11, 14. Plaintiff Vesel previously rode public transportation when he lived in a city where he could carry, and he would do so from his current home because of its close proximity to public transportation.

Vesel Decl. ¶¶ 7–8. Specifically, he would take public transportation to take his mother-in-law to a doctor's appointment in Chicago, to go out to dinner, or visit his wife at her office. Vesel Decl. ¶¶ 9–10. But he has abstained from doing so because he has been "left without the ability to meaningfully defend [himself] in case of confrontation." Vesel ¶14. Plaintiff Winston is a resident of Lake County, but "rarely takes public transportation because he must disarm before he does so to avoid prosecution." Compl. ¶¶49, 51; Winston Decl. ¶ 8. He would intend to travel with his family into Evanston or Chicago on public transportation by using Metra and the CTA were he able to carry a concealed firearm for self-defense purposes. Compl. ¶51; Winston Decl. ¶ 8. He would also intend to carry concealed when he uses public transportation as part of his trips to St. Louis, but he does not do so because of the Public Transportation Carry Ban. Winston Decl. ¶¶ 9–10.

Defendants are the Attorney General of Illinois, and the State's Attorneys for DeKalb, DuPage, Cook, and Lake Counties, each of whom has a duty to initiate prosecutions and enforce the State's laws, including the Public Transportation Carry Ban. Compl. ¶¶18–22. Attorney General Raoul possesses "all the powers associated with that office at common law," which "include the initiation and prosecution of litigation on behalf of the People," a power that "may be exercised concurrently with the power of the State's Attorney to initiate and prosecute all actions, suits, indictments and prosecutions in his county as conferred by statute." *People v. Buffalo Confectionary Co.*, 401 N.E.2d 546, 549 (Ill. 1980). The Attorney General also is required to consult with and advise State's Attorneys in the performance of their duties and has the authority to assist State's Attorneys in criminal prosecutions. 15 ILL. COMP. STAT. 205/4. The State's Attorneys all have the obligation "[t]o commence and prosecute all actions, suits, indictments and

4

prosecutions, civil and criminal, in the circuit court for the county, in which the people of the State or county may be concerned." 55 ILL. COMP. STAT. 5/3-9005.

## ARGUMENT

"To satisfy the irreducible constitutional minimum of Article III standing," Plaintiffs must "establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct" of Defendants and "seek (3) a remedy that is likely to redress that injury." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021) (cleaned up). Plaintiffs have demonstrated standing here.

As with "any other matter on which the plaintiff bears the burden of proof," the "manner and degree of evidence required" varies based on the "stage[] of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Here, an assessment of standing turns on the pleadings. Accordingly, "in evaluating whether a complaint adequately pleads the elements of standing, courts apply the same analysis used to review whether a complaint adequately states a claim." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). In the same way a court must "accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff" when considering a motion to dismiss, the court must apply the same standard when evaluating whether a plaintiff "sufficiently alleged a basis of subject matter jurisdiction." *Id*. (internal quotation marks omitted). And, in doing so, the Supreme Court has instructed that a court is to "presume[] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). Each of the four Plaintiffs has alleged an adequate basis for standing in the Complaint as filed with the Court. Of course, this Court's jurisdiction is secure if a single plaintiff has standing, and therefore once the Court determines that is the case it need not evaluate the standing of other plaintiffs. *See Rumsfeld v. FAIR*, 547 U.S. 47, 52 n.2 (2006).

Additionally, recognizing that it is "within the trial court's power to allow" litigants "by affidavits" to provide "further particularized allegations of fact deemed supportive of plaintiffs' standing," Plaintiffs have also submitted sworn declarations in support of their standing. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). The Declarations further demonstrate Plaintiffs have a sufficient "personal stake" in the case for standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

## I. Plaintiffs have alleged injuries in fact.

An injury in fact must be "concrete, particularized, and actual or imminent." *TransUnion*, 141 S. Ct. at 2203. The denial of Plaintiffs' Second Amendment right to carry for self-defense "outside the home" is one such injury in fact. *Bruen*, 142 S. Ct. at 2122.

### a. Plaintiffs' injuries are particularized and concrete.

"For an injury to be 'particularized,'" it "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1). Here, the alleged injury is the denial of Plaintiffs' Second Amendment rights, and it is beyond dispute that this Amendment "guarantee[s] the *individual* right to possess and carry weapons in case of confrontation." *Bruen*, 142 S. Ct. at 2127 (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008)) (emphasis added). Here, the individual plaintiffs have been denied the individual right to carry a firearm for self-defense each time they ride on public transportation or decline to ride on public transportation because they cannot carry. It makes no difference that the Public Transportation Carry Ban applies to every individual who rides on public transit; "[t]he fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance." *Spokeo*, 578 U.S. at 339 n.7.

6

"Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id*. at 339. The alleged denial of an individual constitutional right is one such concrete injury. By "concrete," the Supreme Court has explained that the alleged injury must be "'real, and not abstract.'" *Id*. at 340; *accord TransUnion*, 141 S. Ct. at 2204. "Various intangible harms can . . . be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. Traditional harms include those "specified by the Constitution itself." *Id*.; *see also Spokeo*, 578 U.S. at 340 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise)). An alleged violation of the Second Amendment is no less concrete than the violation of any other individual constitutional right. *Ezell*, 651 F.3d at 695 ("[T]he City's ban on firing ranges inflicts continuous harm to their claimed right to engage in range training and interferes with their right to possess firearms for self-defense. These injuries easily support Article III standing."); *cf. Bruen*, 142 S. Ct. at 2130 (analogizing the standard applicable to the Second Amendment to "how we protect other constitutional rights" including the First Amendment).

Moreover, for purposes of evaluating standing, it is no argument that the Public Transportation Carry Ban may turn out to be constitutional (it is not). That is because "[f]or standing purposes," the Court "must accept as valid the merits of [Plaintiffs'] claims." *Cruz*, 142 S. Ct. at 1648; *see also Warth*, 422 U.S. at 500 (explaining that "standing in no way depends on the merits of [Plaintiffs'] contention that particular conduct is illegal"). The Court "must assume" that the Public Transportation Carry Ban "unconstitutionally burdens" the Second Amendment rights of Plaintiffs. *Id*.

7

### b. Plaintiffs' injuries are actual or imminent.

The unconstitutional deprivation of Plaintiffs' Second Amendment rights has created injuries that are both actual and imminent for purposes of standing. For one, Plaintiffs have suffered the loss of their Second Amendment rights when, by virtue of the threatened enforcement of the Public Transportation Carry Ban, they disarmed before riding in the past. *See Ezell*, 651 F.3d at 695; *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996) (explaining "actual harm" stems from "official interference" with a claimed constitutional right). For another, there is the ongoing, "continuous harm to [Plaintiffs'] claimed right to" carry firearms for self-defense on modes of public transportation going forward as they continue to disarm each time they ride (or decline to ride altogether so as to *not* give up their Second Amendment rights). *Ezell*, 651 F. 3d at 695. "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief"—as Plaintiffs do here—"to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 141 S. Ct. at 2210 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)).

For purposes of standing, it is irrelevant that Plaintiffs are law-abiding and have not promised to *break* the law, *i.e.*, actually violate the Public Transportation Carry Ban. As the Supreme Court reaffirmed this year, a break-the-law threshold for standing "finds no support in our standing jurisprudence." *Cruz*, 142 S. Ct. at 1648. Instead, "[w]hen an individual is subject to" "threatened enforcement of a law," then "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List*, 573 U.S. at 158. Indeed, it is not even necessary for an individual to "first *expose* himself to actual arrest or prosecution to be entitled to challenge a statute that he claims *deters* the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (emphases added); *see also MedImmune, Inc. v.*

8

*Genentech, Inc.*, 549 U.S. 118, 128–129 (2007). Thus, in *Steffel*, the plaintiff had standing to challenge a criminal trespass statute that had caused him to *refrain* from engaging in certain handbilling activities: he "alleged . . . that . . . he had not done so because of his concern that he . . . would be arrested for violation of" the challenged law. 415 U.S. at 456.

As the Seventh Circuit has previously explained, "[i]t is well-established that 'pre-enforcement challenges are within Article III.'" *Ezell*, 651 F.3d at 695 (citing *Brandt v. Vill. of Winnetka, Ill.*, 612 F.3d 647, 649 (7th Cir. 2010) (cleaned up)). This makes sense because the promulgation of a criminal statute is itself a credible threat of prosecution that is sufficient to chill constitutionally protected conduct. *See Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 (7th Cir. 1998) ("The Supreme Court has instructed us that a threat of prosecution is credible when a plaintiff's intended conduct runs afoul of a criminal statute and the Government fails to indicate affirmatively that it will not enforce the statute."). "The existence of a statute implies a threat to prosecute, so pre-enforcement challenges are proper, because a probability of future injury counts as 'injury' for purpose of standing." *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010). While it is true there is "some element of chance" in any pre-enforcement challenge—for instance because there is no guarantee a police officer would actually catch Plaintiffs were they to violate the Public Transportation Carry Ban—nevertheless, "[i]njury" stemming from actual prosecution "need not be *certain*." *Brandt*, 612 F.3d at 649 (emphasis added).[2] Instead, "[c]ourts frequently engage in pre-enforcement review based on the potential cost that compliance (or bearing a penalty) creates." *520 Michigan Ave. Assocs., Ltd. v. Devine*,

---

[2] In fact, if state prosecution *were* truly temporally imminent, "a federal court might well abstain on comity grounds." *520 Michigan Ave*, 433 F.3d at 963 (citing *Younger v. Harris*, 401 U.S. 37, 91 (1971). The Supreme Court explicitly provided that courts avoid *Younger* abstention by engaging in pre-enforcement review of state statutes imposing criminal penalties. *See Steffel*, 415 U.S. at 461.

9

433 F.3d 961, 963 (7th Cir. 2006). Here the cost of compliance (disarmament on public transportation) in the face of a criminal penalty is sufficient for standing. *Id.*; *see also Doster v. Kendall*, No. 22-3497, 2022 WL 17261374, at *10 (6th Cir. Nov. 29, 2022) ("Parties often allege that they plan to engage in an activity (for example, speech protected by the First Amendment), but that a law bars that activity. In that situation, parties need not first undertake the activity and risk punishment for violating the law before seeking review over whether they have a right to do so." (citations omitted)).

"When [a] plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" *Babbitt*, 442 U.S. at 298 (quoting *Doe v. Bolton*, 410 U.S. 179, 188 (1973)). Plaintiffs' allegations demonstrate that this is the case here. Each would ride on public transportation while carrying for self-defense. *See supra*, Facts. This is conduct protected by the Second Amendment. It is proscribed by statute. And there exists no dispute Defendants would enforce it.

**II. Plaintiffs' injuries are fairly traceable to Defendants and are redressable by this Court.**

The last two factors are easily met for purposes of the standing inquiry. The second factor is met because Defendants are principal enforcement officers that can seek criminal penalties for the violation of state law. *See* Compl. ¶¶ 18–22. With both a still-in-effect penalty and enforcement officials with the duty to seek that penalty, Plaintiffs' injuries are "fairly traceable" to Defendants. *California v. Texas*, 141 S. Ct. 2104, 2114 (2021). And, under Seventh Circuit precedent, this Court must presume that the Public Transportation Carry Ban *will be* enforced notwithstanding any hypothetical possibility of prosecutorial discretion, particularly at the pleadings stage, when

"all reasonable inferences must be made in favor of [Plaintiffs]." *Silha*, 807 F.3d at 173; *see also Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016) (citing *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir.1996) ("courts will assume a credible threat of prosecution in the absence of compelling contrary evidence")).

Finally, this Court can redress Plaintiffs' injuries in fact with a declaration that the Public Transportation Carry Ban is unconstitutional and an injunction barring Defendants and their subordinates from enforcing it prospectively. Enjoining specific parties from specific action is "an acceptable Article III remedy" that redresses Plaintiffs' "cognizable Article III injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998); *accord California*, 141 S. Ct. at 2115 ("Remedies, however, ordinarily operate with respect to specific parties" (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, the Court should find that Plaintiffs have standing to challenge the Public Transportation Carry Ban.


Dated: December 13, 2022                    Respectfully Submitted,


                                                s/ David G. Sigale
                                                David G. Sigale
                                                Law Firm of David G. Sigale, P.C.
                                                430 West Roosevelt Road
                                                Wheaton, IL 60187
                                                (630) 452-4547
                                                dsigale@sigalelaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ David G. Sigale
*Attorney for Plaintiffs*