IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BENJAMIN SCHOENTHAL, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> KWAME RAOUL, *et al.*, <br><br> Defendants. | No. 3:22-CV-50326 <br><br> Hon. Iain D. Johnston |

**DEFENDANTS' MOTION TO STAY PROCEEDINGS**

Defendant Kimberly M. Foxx, in her capacity as State's Attorney of Cook County, by and through her assistants Megan Honingford, Prathima Yeddanapudi, and Jessica M. Scheller, for her motion to stay these proceedings, state as follows:

**INTRODUCTION AND BACKGROUND**

Plaintiffs filed the instant action on September 20, 2022. (ECF No. 1.) Plaintiffs challenge the constitutionality of 430 ILCS 66/65-(a)(8), which provides that persons holding concealed carry licenses under the Illinois Firearm Concealed Carry Act, 430 ILCS 66/1 *et seq.*, "shall not knowingly carry a firearm on or onto . . . . [a]ny bus, train, or form of transportation paid for in whole or in part with public funds, and any building, real property, and parking area under the control of a public transportation facility paid for in whole or in part with public funds." 430 ILCS 66/65-(a)(8).

As the court is no doubt aware, the United States Supreme Court issued its decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct.2111 (2022) in June 2022, setting forth a new and complex framework by which courts are to evaluate claims brought under the Second Amendment. On June 30, 2023, the Court granted certiorari in *U.S. v. Rahimi*, 61 F.4th 443 (5th

1

Cir. 2023), which will present the Court with its first opportunity to review a lower court's application of *Bruen*. *Rahimi* is an appeal from a Fifth Circuit decision that vacated the plaintiff's conviction under federal law for illegally possessing a firearm in violation of a civil protective order granted to his former girlfriend. The Fifth Circuit found that the district court erred in upholding 18 U.S.C.S. § 922(g)(8), which prohibits anyone who is subject to a domestic violence restraining order from owning a firearm, because the government did not show that the domestic violence prohibitor fit within the nation's historical tradition of firearm regulation, an element of the test set forth under *Bruen*. The Supreme Court will hear argument in *Rahimi* on November 7, 2023.

This matter should be stayed with all deadlines held in abeyance pending the decision in *Rahimi*, as the Court's opinion will likely clarify or modify the analysis that will be applied here. Defendants issued initial disclosures on April 28, 2023, exchanged written discovery including third-party subpoenas, and conducted depositions according to the schedule set by the court. Defendants have disclosed expert witnesses and reports in compliance with the current deadline. (ECF No. 50.) However, to complete expert discovery, proceed with expert depositions, close discovery, and undertake extensive summary judgment briefing before the Court issues its forthcoming guidance will not be an efficient use of the parties' or the court's resources and will leave the court with a record that was prepared without the benefit of the Court's full and up-to-date analysis. A stay will allow the parties to tailor their expert discovery with the benefit of the guidance likely to be provided in *Rahimi* and to incorporate the *Rahimi* decision into their briefing, while avoiding the duplicative work that will arise if expert discovery and briefing are completed prior to the Court issuing a significant decision. Defendant has informed all parties of this motion. Plaintiffs have not agreed to this motion, and State Defendants do not oppose the

motion.

## ARGUMENT

**I.     The Court's Application of *Bruen* in *Rahimi* Will Likely Inform the Court's Analysis in This Case.**

While the facts of *Rahimi* are not similar to the facts here, the *Rahimi* decision will provide valuable guidance for how the Supreme Court intends the lower courts to apply *Bruen*. As the Seventh Circuit and a number of other Circuits have noted, *Bruen* presents courts with an analytical challenge that, at this point, has very few defined boundaries.

This challenge may be particularly apparent in cases like *Rahimi* and the instant case, where the parties will devote time and attention to the historical tradition piece of the *Bruen* test. Under this phase, the parties must engage with an in-depth accounting of historical facts and regulatory traditions and their relation to the present day. *See, e.g. Rahimi* 61 F.4th 443 at 455-461; *Bruen* at 2138-2156. This requires the court to perform a detailed analysis of present concerns and past regulations and to apply a "more nuanced approach," should it find that the issues at hand present sufficiently novel circumstances. *Bruen* 142 S. Ct. 2111 at 2132. Neither the standards by which to show an historical tradition nor the nature of the nuanced approach have been detailed by the Court. *Rahimi* will likely provide the Court with an opportunity to do so.

Judge Wood, dissenting in *Atkinson v. Garland*, 70 F. 4th 1018 (7th Cir. 2023), stated that *Bruen* "could not have been intended to be the last word on historical analysis relevant to the Second Amendment" and instead "set the methodological stage," one that has already led different courts to reach varying outcomes on similar questions. *Atkinson*, 70 F. 4th 1018 at 1036 (Wood, J., dissenting). She noted some "examples of the fine lines courts are now being asked to draw," such as determining whether historical regulations were either too early or too late to be

analogous; too rare or common enough; applicable to a significant number of people or only in certain areas. *Atkinson*, 70 F. 4th 1018 at 1029 (Wood, J., dissenting). A Fifth Circuit concurrence, in *U.S. v. Daniels*, 77 F. 4th 337, 358-59 (5th Cir. 2023) (Higginson, J., concurring) noted that "Courts, operating in good faith, are struggling at every stage of the Bruen inquiry." Like Judge Wood, Judge Higginson noted just a few of the questions that *Bruen* leaves open: "[H]ow does the Government demonstrate a regulatory tradition? […] [W]hat is the operative time period for such regulations – 1791 or 1868? – and to what extent does post-ratification practice count? […] [H]ow are courts to differentiate between general societal problems that have persisted since the 18th century, and those that implicate unprecedented societal concerns or dramatic technological changes, and, moreover, between historical analogues as distinct from historical twins?" *Daniels* 77 F. 4th 337 at 358-59 (Higginson, J., concurring) (cleaned up). Courts in nearly every Circuit have acknowledged the difficulty in applying the historical analysis demanded by *Bruen*. *See, e.g., U.S. v. Bartucci*, 2023 U.S. Dist. LEXIS 30680, *10 (E.D. Cal. Feb. 23, 2023) (*Bruen* lacks guidance on how to analogize modern laws to historical tradition, leaving courts in disarray); *U.S. v. Charles*, 633 F.Supp. 3d 874, 875 (W.D. Tex. 2022) ("*Bruen* transformed and left uncharted much of the legal landscape."); *U.S. v. Kelly*, 2022 U.S. Dist. LEXIS 215189 *10-11 (M.D. Tenn. Nov. 16, 2022) (discussing variation in history between the legal and historical communities and difficulty in applying a court's chosen version of history to determine whether regulations are analogous).

Without the benefit of additional guidance from the Supreme Court, the parties are left to provide historical evidence and argument that may be voluminous and wide-ranging and which may ultimately not be relevant. Indeed, Judge Wood noted the pitfalls of "saddling [the district court] with a Ph.D-level historical inquiry that necessarily will be inconclusive." *Rahimi* is likely

4

to provide the parties with crucial guidance on how to perform such an analysis and could alter the parties' approach to the issues significantly, including in regard to expert discovery. Granting a stay will allow the parties to use any further guidance from the Court to best tailor their discovery and arguments to the applicable standard.

    II.    **A Stay will Simplify the Issues and Reduce the Burden of Litigation on the Court and the Parties.**

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "In determining whether to exercise its discretion to stay proceedings, the Court considers, '(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party.'" *Bell v. SDH Servs. W., LLC*, 2020 U.S. Dist. LEXIS 205772, *2 (N.D. Ill. Aug. 27, 2020), *quoting Berkeley\*IEOR v. Teradata Operations, Inc.*, 2019 U.S. Dist. LEXIS 36563, *5 (N.D. Ill. Mar. 7, 2019).

Granting the stay will reduce the burden of litigation by avoiding the possibility that the parties and the court may labor under legal concepts and analysis that will be significantly altered by *Rahimi*. Rather than proceed with this case, conclude discovery, and brief the issues, only to have to reopen discovery, re-brief, or submit additional argument based on *Rahimi*, a stay will allow the parties to re-evaluate their claims and defenses with the benefit of the Supreme Court's ruling and without expending their or the court's time and resources beforehand. In addition, the parties are currently preparing expert discovery. While Defendants have produced expert reports contemporaneously with the filing of this motion in compliance with the current schedule, a stay will benefit all parties by reducing the possibility of having to reopen discovery after its completion.

Finally, the stay will not unduly prejudice or tactically disadvantage any party, as Defendants have complied with all deadlines to date, discovery is ongoing and the status quo will be maintained.

WHEREFORE, Defendant Kimberly Foxx respectfully requests this Court grant her motion to stay and to hold all current deadlines in abeyance until such time as the U.S. Supreme Court issues its decision in *U.S. v. Rahimi*, with the parties to submit a joint status report regarding the outcome within seven days of the decision, and for any other relief the court deems just and proper.

October 23, 2023

> Respectfully submitted,
>
> KIMBERLY M. FOXX
> State's Attorney of Cook County
>
> By: */s/Megan Honingford*
>     Megan Honingford
>     Assistant State's Attorney
>     50 W. Washington, 5th Floor
>     Chicago, Illinois 60602
>     (312) 603-3630
>     megan.honingford@cookcountyil.gov
>
> */s/ Prathima Yeddanapudi*
> Prathima Yeddanapudi
> Assistant States Attorney
> 50 W. Washington, 5th Floor
> Chicago, Illinois 60602
> (312) 603-5463
> Prathima.yeddanapudi@cookcountyil.gov
>
> */s/ Jessica M. Scheller*
> Jessica M. Scheller
> Assistant States Attorney
> 50 W. Washington, 5th Floor

Chicago, Illinois 60602
(312) 603-6934
Jessica.scheller@cookcountyil.gov