IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BENJAMIN SCHOENTHAL, *et al.*, | |
| Plaintiffs, | No. 3:22-CV-50326 |
| v. | Hon. Iain D. Johnston |
| KWAME RAOUL, *et al.*, | |
| Defendants. | |

## **DEFENDANT'S REPLY IN SUPPORT OF HER MOTION TO STAY PROCEEDINGS**

Defendant Kimberly M. Foxx, in her capacity as State's Attorney of Cook County, by and through her assistants Silvia Mercado Masters, Megan Honingford, Prathima Yeddanapudi, and Jessica M. Scheller, and for her reply in support of her motion to stay these proceedings, states as follows:

## **INTRODUCTION**

All discovery is set to close on November 20, 2023, and dispositive motions are due to be filed by December 29, 2023. (ECF No. 49). Defendant seeks to stay the proceedings until the Supreme Court has issued its ruling in *U.S. v. Rahimi*, No. 22-915 (argued Nov. 7, 2023), which will likely clarify or provide further guidance to lower courts as to the analysis required under *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022)[1]. *Bruen* established a two-step inquiry: whether the Second Amendment's plain text covers an individual's conduct, and if it does, the government must justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. *Id.* at 2129-30. Because a clarification of the second step of the analysis in *Bruen* would directly impact the analysis required here, a stay is

---

[1] Defendant informed all other parties of her planned motion; State Defendants and other County Defendants did not oppose the motion.

1

warranted.

# ARGUMENT

Plaintiffs raise no compelling arguments why this action should not be stayed pending a decision in *Rahimi*, and the three factors cited by Plaintiffs in their response weigh in favor of a stay.

    **I.    A Stay Will Not Unduly Prejudice or Tactically Disadvantage Plaintiffs.**

Plaintiffs claim they are irreparably harmed every day that this law continues to be enforced (Resp. at 3) but Section 65 of the Illinois Firearm Concealed Carry Act (the "Act"), has been in effect since 2013. 430 ILCS 66/65. Plaintiffs waited nine years to file this action challenging the constitutionality of Section 65, (ECF No. 1), and notably did not seek preliminary injunctive relief to remedy the supposed irreparable harm they now claim. Indeed, Plaintiffs filed this action after *Bruen* announced a new framework for analyzing firearm regulations, and their Complaint and Memorandum in Support of Summary Judgment rely heavily on *Bruen* and argue that the government will be unable to establish a historical tradition of regulation similar to the one here. (ECF Nos. 1, 33 at 5, et seq.). It therefore stands to reason that if the Court further clarifies *Bruen's* historical tradition step, it will directly impact the analysis in this case. Rather than tactically disadvantage Plaintiffs, a stay would benefit all parties by ensuring a settled outcome. Granting a stay here would preserve the status quo, which Plaintiffs have maintained for at least the past ten years under the Act.

    **II.    A Stay Will Simplify the Issues in Question as the Necessary Analysis Will Likely be Clarified.**

Plaintiffs argue that *Rahimi* is unlikely to simplify the issues in question here because the facts of each case are so distinct. That misses the point. While the facts here and those in *Rahimi* are distinguishable, it is clear both cases will be decided under *Bruen's* framework, and more

specifically, the historical tradition test. Significantly, the Fifth Circuit panel withdrew its original opinion in *Rahimi* because it was entered pre-*Bruen* and ordered supplemental briefing. *Rahimi*, 641 F.4th at 448. The Fifth Circuit ultimately found that *Bruen* required them to "re-evaluate [their] Second Amendment jurisprudence" and reverse the district court's ruling when they found that the government failed to proffer any relevantly similar historical analogues for the statute in question. *Id.* at 460-461.

Likewise, the *Bruen* framework will be applied to the statute here, specifically, whether the regulation barring weapons on public transportation is consistent with this country's historical tradition of regulating firearms. While there is no expectation that *Bruen* will be overturned, if the Supreme Court in any way clarifies the historical tradition step in *Rahimi*, it will have a very significant impact in the analysis of the regulation in this case. As Justice Barrett has already noted, *Bruen* left unresolved at least two methodological questions – first, "the manner and circumstances in which postratification practice may bear on the original meaning of the Constitution," and, second, "whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 or when the Bill of Rights was ratified in 1791." *Bruen*, 142 S. Ct. at 2162-63 (Barrett, J., concurring) (cleaned up).

Based on the oral argument in *Rahimi*, there is a likelihood that the Supreme Court will clarify the framework announced in *Bruen*. Justice Kagan posed the following question to the Solicitor General:

> JUSTICE KAGAN: General, there seems to be a fair bit of division and a fair bit of confusion about what *Bruen* means and what *Bruen* requires in the lower courts. And I'm wondering if you think that there's any useful guidance, in addition to resolving this case, but any useful guidance we can give to lower courts about the methodology that *Bruen* requires be used and how that applies to cases even outside of this one?

Transcript of Oral Argument from November 7, 2023, at 38:4-13, attached here as Exhibit A. It is

3

clear from this passage that the Justices are aware of the confusion that various circuits have struggled under in trying to apply *Bruen*, as highlighted in Defendant's Motion. (ECF No. 52 at 3-4).

Justice Jackson also raised concerns regarding the application of *Bruen's* historical test, providing further insight into what aspects of the test may be clarified. Justice Jackson stated at various times:

> JUSTICE JACKSON: I'm trying to understand if there's a flaw in the history and traditions kind of framework to the extent that when we're looking at history and tradition, we're not considering the history and tradition of all of the people but only some of the people as per the government's articulation of the test? (Ex. A, 54:6-12).
>
> JUSTICE JACKSON: But we have a history and traditions test. I --I guess I -I'm a little troubled by having a history and traditions test that also requires some sort of culling of the history so that only certain people's history counts. So what do we do with that? Isn't that a flaw with respect to the test? (Ex. A, 84:17-24).
>
> JUSTICE JACKSON: I guess I'm just trying to get a clear answer to whether or not we're looking for historical analogues related to domestic violence or something broader. (Ex. A, 22-25).

Any clarification of the type and source of history and traditions, or of the relevant time period to look at, whether the Founding era or 1868 when the Fourteenth Amendment was ratified, would be critical to this case which will clearly hinge on the historical tradition analysis.

### III. A Stay Will Reduce the Burden of Litigation on the Parties by Avoiding Re-Opening Discovery.

Plaintiffs believe that *Bruen* provided "much guidance" to courts about how the historical tradition test operates (Resp. at 5), while Justices of the Supreme Court, the Seventh Circuit, and various other circuits have expressed their confusion. *See Infra* and Mot. At 3-4. Indeed, the Seventh Circuit recently noted the challenges in applying *Bruen's* step two, stating "[f]or all its disclaiming of balancing approaches, *Bruen* appears to call for just that[…] The 'why' question is another one that at first blush seems hard to distinguish from the discredited means/end

4

analysis. But we will do our best." *Bevis v. City of Naperville*, 2023 U.S. App. LEXIS 20332, *52-53 (7th Cir. Nov. 3, 2023). The simple fact that courts have applied *Bruen*, (Resp. at 5-6), misses the point. The problem is not that this court cannot apply *Bruen*, but rather that clarification or further elaboration on the test set forth in *Bruen* could drastically change the specific analysis conducted here. And Plaintiffs' assertion that cases have been resolved since *certiorari* was granted in *Rahimi*, (Resp. at 6) is irrelevant, especially since a stay was not requested in any of the cited cases.

Granting a stay would materially affect the burdens of litigation as it would avoid the risk that the parties undertake extensive summary judgment briefing only to have the case re-examined based on a clarified or narrowed historical tradition framework. Plaintiffs' reference to "legislative facts" (Resp. at 7) is unavailing as it only highlights that historical sources are key to determining the issues here. If the scope or source of historical tradition is expanded or even more defined by *Rahimi*, then the analysis will change in this case and require the parties to seek to re-open expert discovery. The burden of litigation on the parties would be greatly reduced if a stay is granted.

In the alternative, if a stay is not granted, Defendant moves this Court to extend the deadline for dispositive motions to the end of January, 2024. The current deadline is December 29, 2023, but due to the holidays, Defendant will be unable to run a motion through the necessary channels of review within the office. Defendant has consulted with the parties, and there are no objections to this request.

WHEREFORE, Defendant Kimberly Foxx respectfully requests this Court grant her motion to stay and to hold all current deadlines in abeyance until such time as the Supreme Court

issues its decision in *Rahimi*, with the parties to submit a joint status report regarding the outcome within seven days of the decision, and for any other relief the court deems just and proper.

November 15, 2023                                           Respectfully submitted,

                                                                                          KIMBERLY M. FOXX
                                                                                          State's Attorney of Cook County

                                           By:  */s/ Silvia Mercado Masters*
                                                                              Silvia Mercado Masters
                                                                              Jessica M. Scheller
                                                                              Prathima Yeddanapudi
                                                                              Megan Honingford
                                                                              Assistant State's Attorneys
                                                                              50 W. Washington, 5th Floor
                                                                              Chicago, Illinois 60602
                                                                              (312) 603-7795
                                                                              silvia.mercadomasters@cookcountyil.gov
                                                                              jessica.scheller@cookcountyil.gov
                                                                              prathima.yeddanapudi@cookcountyil.gov
                                                                              megan.honingford@cookcountyil.gov