# Exhibit 6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

BENJAMIN SCHOENTHAL, *et al.*,

      Plaintiffs,

    v.

KWAME RAOUL, *et al.*,

      Defendants.

Case No. 3:22 cv 50326

Hon. Iain D. Johnston
Presiding Judge

Hon. Lisa A. Jensen
Magistrate Judge

## DEFENDANTS' ANSWER
## AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

Defendant Kwame Raoul, in his official capacity as Illinois Attorney General, Defendant Rick Amato, in his official capacity as State's Attorney of DeKalb County, Illinois, Defendant Robert Berlin, in his official capacity as State's Attorney of DuPage County, Illinois, and Defendant Eric Rinehart, in his official capacity as State's Attorney of Lake County, Illinois, for their answer to Plaintiffs' Complaint, state:

## INTRODUCTION

1.      This is an action to uphold Plaintiffs' right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution. This right "guarantee[s] the individual right to possess and carry" firearms. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

**ANSWER:** Defendants admit that Plaintiffs purport to bring this action in relation to the Second Amendment to the United States Constitution. Defendants deny all remaining factual allegations contained in paragraph 1.

2.      In *Heller*, the U.S. Supreme Court defined "bear arms" as to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed

and ready for offensive or defensive action in a case of conflict with another person." *Id*. at 584.

**ANSWER:** Defendants admit that Plaintiffs have quoted a portion of the United States Supreme Court's decision in *District of Columbia v. Heller,* 554 U.S. 570 (2008). Defendants deny all remaining factual allegations contained in paragraph 2.

3.    In *McDonald v. City of Chicago*, 561 U.S. 742, 750, 791 (2010), the Supreme Court confirmed that the rights protected by the Second Amendment are "among those fundamental rights necessary to our system of ordered liberty" and held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment.

**ANSWER:** Defendants admit that the United States Supreme Court has held that the Second Amendment to the United States Constitution is incorporated as applicable to the states through the Fourteenth Amendment. Defendants deny all remaining factual allegations contained in Paragraph 3.

4.    The Supreme Court in *Bruen* further confirmed that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022).

**ANSWER:** Defendants admit that Plaintiffs have quoted a portion of the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Defendants deny all remaining factual allegations contained in paragraph 4.

5.    "The constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Id*. at 2156 (quoting *McDonald*, 561 U.S. at 780). Thus, to justify a regulation burdening the right to bear arms, "the government may not simply posit that the regulation promotes an important interest." *Bruen*, 142 S. Ct. at 2126. "Instead, the government must

affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127.

**ANSWER:** Defendants admit that Plaintiffs have quoted a portion of the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Defendants deny all remaining factual allegations contained in paragraph 5.

6. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Heller*, 554 U.S. at 634-35. At the time of the Founding, there was no tradition of restricting firearm possession while in transit. To the contrary, "statutes required arms carrying when traveling or away from home." David. B. Kopel & Joseph G.S. Greenlee, The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms, 13 Charleston L. Rev. 203, 232 (2018). Plaintiffs, who possess concealed carry licenses and thus are generally authorized by the State to carry firearms in public, wish to exercise their fundamental, constitutionally guaranteed right to carry loaded, operable handguns on their person, for lawful purposes including self-defense, while traveling on public transportation systems. But they cannot because of the laws, regulations, policies, practices, and customs that Defendants have been enforcing and continue to actively enforce today.

**ANSWER:** Defendants admit that Plaintiffs have quoted a portion of the United States Supreme Court's decision in *District of Columbia v. Heller,* 554 U.S. 570 (2008). Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegation that Plaintiffs possess concealed carry licenses, and therefore deny the same. Defendants deny all remaining factual allegations contained in paragraph 6.

7. Illinois generally bars the carrying of handguns by ordinary citizens in public for

self-defense unless they first acquire a license to carry. 720 ILCS 5/24-1(a)(4), (a)(10). Even for

those with carry licenses, 430 ILCS 66/65(a)(8) prohibits the carrying of firearms on public

transportation or in public transportation facilities, in direct violation of the Second and

Fourteenth Amendments to the United States Constitution. This statutory bar on licensees

carrying firearms on public transportation, 430 ILCS 66/65(a)(8), is referred to herein as the

"Public Transportation Carry Ban."

**ANSWER:** Defendants admit that the State of Illinois has enacted criminal penalties for

persons who commit the offenses identified in 720 ILCS 5/24-1(a)(4), (a)(10), and that 430 ILCS

66/65(a)(8) prohibits licensees from knowingly carrying a firearm on or into "[a]ny bus, train, or

form of transportation paid for in whole or in part with public funds, and any building, real

property, and parking area under the control of a public transportation facility paid for in whole

or in part with public funds."  Defendants deny all remaining factual allegations contained in

Paragraph 7.

8.      Even though the U.S. Supreme Court in Bruen affirmed that "the Second

Amendment guarantees an 'individual right to possess and carry weapons in case of

confrontation,' and confrontation can surely take place outside the home," 142 S. Ct. at 2135

(internal citation omitted) (citing *Heller*, 554 U.S. at 599), Illinois' Public Transportation Carry

Ban unconstitutionally prohibits Plaintiffs from carrying a handgun while traveling on public

transportation.

**ANSWER:** Defendants admit that Plaintiffs have quoted a portion of the United States

Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111

(2022). Defendants deny all remaining factual allegations contained in paragraph 8.

9.      Although states may restrict the carrying of firearms in certain "sensitive places,"

*Heller*, 554 U.S. at 626, the Supreme Court has rejected an expansive view of the sensitive

places doctrine. *Bruen*, 142 S. Ct. at 2134. ("[E]xpanding the category of 'sensitive places'

simply to all places of public congregation that are not isolated from law enforcement defines the

category of 'sensitive places' far too broadly."). Rather, modern sensitive places restrictions are

only valid when sufficiently analogous "to those historical regulations of 'sensitive places,'"

which include "legislative assemblies, polling places, and courthouses." *Id*. at 2133.

**ANSWER:** Defendants admit that Plaintiffs have cited a portion of the United States

Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111

(2022). Defendants deny all remaining factual allegations contained in paragraph 9.

10.     There is no direct corollary or even analogue between the Public Transportation

Carry Ban and historical sensitive places restrictions. Thus, the Ban cannot pass constitutional

muster.

**ANSWER:** Defendants deny the allegations contained in Paragraph 10.

11.     A first violation of 430 ILCS 66/65(a)(8) is a Class B misdemeanor punishable by

a fine of $1,500.00 and confinement in jail for 180 days. 430 ILCS 66/70(e); 730 ILCS 5/5-4.5-

60. A second or subsequent offense is a Class A misdemeanor, punishable by a fine of $2,500.00,

confinement in jail for 364 days, and potential suspension or revocation of a firearm carry

license. Id; 730 ILCS 5/5-4.5-55.

**ANSWER:** Defendants admit that the State of Illinois has enacted certain criminal

penalties for persons who are found guilty of one or more violations of the Firearm Concealed

Carry Act, 430 ILCS 66/*et seq*. Defendants deny all remaining factual allegations contained in

Paragraph 11.

12.     "Public transportation is an essential public purpose," ILL. CONST. art. XIII, § 7,

and Plaintiffs rely on public transportation to travel to work, to school, and to other places essential to their daily lives. Because the Public Transportation Carry Ban prohibits persons from carrying a firearm while accessing public transportation, the Ban severely restricts Plaintiffs from exercising their right to self-defense outside of the home. This directly violates the Second and Fourteenth Amendments to the United States Constitution as held by the U.S. Supreme Court in *Heller*, *McDonald*, and *Bruen*.

**ANSWER:** Defendants admit that Plaintiffs have quoted the first half of the first sentence of Section 7 of Article XIII of the Constitution of the State of Illinois. Defendants deny all remaining factual allegations contained in paragraph 12.

13. Defendants' laws, regulations, policies, and enforcement practices therefore prevent law-abiding adults such as Plaintiffs Schoenthal, Wroblewski, Vesel, and Winston from exercising their fundamental, individual right to bear loaded, operable handguns outside the home, including while traveling on public transportation.

**ANSWER:** Defendants deny the allegations contained in Paragraph 13.

**PARTIES**

14. Plaintiff Benjamin Schoenthal is a natural person and a citizen of DeKalb County, Illinois, and the United States. Schoenthal has never been charged with nor convicted of any misdemeanor or felony offense. It is Schoenthal's present intention and desire to be able to lawfully carry a handgun for self-defense while traveling on public transportation. As a result of Defendants' active enforcement of the Public Transportation Carry Ban, he is precluded from carrying a handgun for purposes of self-defense while traveling on public transportation.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 14, and therefore deny the same.

15.     Plaintiff Mark Wroblewski is a natural person and a citizen of DuPage County, Illinois, and the United States. Wroblewski has never been charged with nor convicted of any misdemeanor or felony offense. It is Wroblewski's present intention and desire to be able to lawfully carry a handgun for self-defense while traveling on public transportation. As a result of Defendants' active enforcement of the Public Transportation Carry Ban, he is precluded from carrying a handgun for purposes of self-defense while traveling on public transportation.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 15, and therefore deny the same.

16.     Plaintiff Joseph Vesel is a natural person and a citizen of Cook County, Illinois, and the United States. Vesel has never been charged with nor convicted of any misdemeanor or felony offense. It is Vesel's present intention and desire to be able to lawfully carry a handgun, including for purposes of self-defense, while traveling on public transportation. As a result of Defendants' active enforcement of the Public Transportation Carry Ban, he is precluded from carrying a handgun for purposes of self-defense while traveling on public transportation.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 16, and therefore deny the same.

17.     Plaintiff Douglas Winston is a natural person and a citizen of Lake, Illinois, and the United States. Winston has never been charged with nor convicted of any misdemeanor or felony offense. It is Winston's present intention and desire to be able to lawfully carry a handgun, including for purposes of self-defense, while traveling on public transportation. As a result of Defendants' active enforcement of the Public Transportation Carry Ban, he is precluded from carrying a handgun for purposes of self-defense while traveling on public transportation.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief

as to the truthfulness of the allegations contained in paragraph 17, and therefore deny the same.

18.     Defendant Kwame Raoul is sued in his official capacity as the Attorney General of Illinois. As Attorney General, he is responsible for enforcing the State's laws, see 15 ILCS 205/4 (requiring that Attorney General "institute and prosecute all actions and proceedings in favor of or for the use of the State, which may be necessary in the execution of the duties of any State officer"), which include the State's Public Transportation Carry Ban.

**ANSWER:** Defendants admit that Defendant Raoul is the Attorney General of the State of Illinois and that Plaintiffs purport to sue Defendant Raoul in his official capacity. Defendants admit that Defendant Raoul has statutory duties defined in 15 ILCS 205/4. Defendants deny all remaining factual allegations contained in Paragraph 18.

19.     Defendant Rick Amato is sued in his official capacity as State's Attorney for DeKalb County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the Public Transportation Carry Ban. 55 ILCS 5/3-9005. Defendant Amato's ongoing enforcement of the Ban against DeKalb County residents places Plaintiff Schoenthal under imminent threat of arrest and prosecution should he violate the Public Transportation Carry Ban, preventing him from carrying a handgun while traveling on public transportation.

**ANSWER:** Defendants admit that Defendant Amato is the State's Attorney for DeKalb County, Illinois, and that Plaintiffs purport to sue Defendant Amato in his official capacity. Defendants admit that Defendant Amato has statutory duties defined in 55 Ill. Comp. Stat. 5/3-9005. Defendants deny all remaining factual allegations contained in Paragraph 19.

20.     Defendant Robert Berlin is sued in his official capacity as State's Attorney for

DuPage County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the Public Transportation Carry Ban. 55 ILCS 5/3-9005. Defendant Berlin's ongoing enforcement of the Ban against DuPage County residents places Plaintiff Wroblewski under imminent threat of arrest and prosecution should he violate the Public Transportation Carry Ban, preventing him from carrying a handgun while traveling on public transportation.

**ANSWER:** Defendants admit that Defendant Berlin is the State's Attorney for DuPage County, Illinois, and that Plaintiffs purport to sue Defendant Berlin in his official capacity. Defendants admit that Defendant Berlin has statutory duties defined in 55 Ill. Comp. Stat. 5/3-9005. Defendants deny all remaining factual allegations contained in Paragraph 20.

21.      Defendant Kimberly M. Foxx is sued in her official capacity as State's Attorney for Cook County, Illinois. As State's Attorney, she has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the Public Transportation Carry Ban. 55 ILCS 5/3-9005. Defendant Foxx's ongoing enforcement of the Ban against Cook County residents places Plaintiff Vesel under imminent threat of arrest and prosecution should he violate the Public Transportation Carry Ban, preventing him from carrying a handgun while traveling on public transportation.

**ANSWER:** Defendants admit that Defendant Foxx is the State's Attorney for Cook County, Illinois, and that Plaintiffs purport to sue Defendant Foxx in her official capacity. Defendants admit that Defendant Foxx has statutory duties defined in 55 Ill. Comp. Stat. 5/3-9005. Defendants deny all remaining factual allegations contained in Paragraph 21.

22.     Defendant Eric Rinehart is sued in his official capacity as State's Attorney for Lake County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the Public Transportation Carry Ban. 55 ILCS 5/3-9005. Defendant Rinehart's ongoing enforcement of the Ban against Lake County residents places Plaintiff Winston under imminent threat of arrest and prosecution should he violate the Public Transportation Carry Ban, preventing him from carrying a handgun while traveling on public transportation.

**ANSWER:** Defendants admit that Defendant Rinehart is the State's Attorney for Lake County, Illinois, and that Plaintiffs purport to sue Defendant Rinehart in his official capacity. Defendants admit that Defendant Rinehart has statutory duties defined in 55 Ill. Comp. Stat. 5/3-9005. Defendants deny all remaining factual allegations contained in Paragraph 22.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

**ANSWER:** Defendants deny that the Court has jurisdiction pursuant to 28 U.S.C. § 1343. Defendants also deny that the Court has jurisdiction pursuant to 20 U.S.C. § 1331 because Plaintiffs lack standing under Article III of the United States Constitution.

24.     This action for violation of Plaintiffs' constitutional rights is brought under 42 U.S.C. § 1983 and seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and attorneys' fees pursuant to 42 U.S.C. § 1988.

**ANSWER:** Paragraph 24 states the legal basis by which Plaintiffs purport to sue and their

requested relief to which no answer is required. To the extent a response is deemed necessary, Defendants deny the allegations purporting to provide Plaintiffs a cause of action under 42 U.S.C. § 1983 and also deny that Plaintiffs are entitled to the relief requested.

25. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the Northern District of Illinois.

 **ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 25, and therefore deny the same.

## THE LAWS AT ISSUE

26. 720 ILCS 5/24-1(a)(4) and (a)(10) generally prohibit the knowing carriage of a functioning, loaded, and immediately accessible pistol, revolver, stun gun or taser or other firearm, "in any vehicle or concealed on or about his person except when on his land in or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person, as an invitee with that person's permission," 720 ILCS 5/24-1(a)(4), or "upon any public street, alley, or other public lands within the corporate limits of a city, village, or incorporated town, except when an invitee thereon, or therein." 720 ILCS 5/24-1(a)(10). Violation of 720 ILCS 5/24-1(a)(4) and (a)(10) while "in any conveyance owned, leased, or contracted by a public transportation agency, or on any public way within 1,000 feet of the real property comprising any . . . public transportation facility" results in a Class 3 felony. 720 ILCS 5/24-1(c)(1.5). Only "a currently valid license under the Firearm Concealed Carry Act" exempts a person from this general criminal ban. See 720 ILCS 5/24-1(a)(4)(iv), (a)(10)(iv).

 **ANSWER:** Defendants admit that 720 ILCS 5/24-1(a)(4) and (a)(10) prohibit the unlawful use of weapons identified therein, and that there are enumerated exceptions to those

prohibitions, including for any pistol, revolver, stun gun or taser or other firearm that "are carried or possessed in accordance with the Firearm Concealed Carry Act by a person who has been issued a currently valid license under the Firearm Concealed Carry Act." Defendants deny all remaining factual allegations contained in paragraph 26.

27.     But, under the Firearm Concealed Carry Act, a licensee "shall not knowingly carry a firearm on or into . . . [a]ny bus, train, or form of transportation paid for in whole or in part with public funds, and any building, real property, and parking area under the control of a public transportation facility paid for in whole or in part with public funds." 430 ILCS 66/65(a)(8). A first violation of the Firearm Concealed Carry Act is punishable as a Class B misdemeanor, and a second or subsequent violation is punishable as a Class A misdemeanor. 430 ILCS 66/70(e).

**ANSWER:** Defendants admit the allegations contained in paragraph 27.

28.     Accordingly, even though Illinois allows law-abiding adults to exercise their rights to keep and bear arms in some areas outside of the home, the State bans exercise of the right to carry a firearm while traveling on public transportation.

**ANSWER:** Defendants deny the allegations contained in paragraph 28.

## STATEMENT OF FACTS RELATING TO
### Benjamin Schoenthal

29.     Plaintiff Schoenthal is a resident of DuPage County, Illinois. He works as an IT team lead for a Healthcare organization.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 29, and therefore deny the same.

30.     Schoenthal occasionally uses public transportation for work but more frequently uses it for personal errands. Schoenthal would also like to be able to use public transportation

more, since it is an environmentally-friendly option compared to single occupant car driving. He would travel this way more often if he were not forced to disarm to ride on public transportation.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 30, and therefore deny the same.

31.     Schoenthal has a valid Firearm Owners Identification Card (FOID card) and concealed carry license pursuant to the Illinois Firearm Concealed Carry Act.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 31, and therefore deny the same.

32.     Schoenthal desires to carry a handgun on public transportation for self-defense and other lawful purposes. Schoenthal lawfully owns a handgun and would carry a handgun for self-defense while traveling on public transportation were it not for the Public Transportation Carry Ban and Defendants' enforcement thereof.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 32, and therefore deny the same.

33.     As a result of the Public Transportation Carry Ban, if Schoenthal carried a handgun for self-defense while riding on public transportation, he would expose himself to arrest and criminal charges.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 33, and therefore deny the same.

34.     Schoenthal therefore has abstained from carrying a handgun for self-defense while riding on public transportation, for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the Public Transportation Carry Ban, enforced by Defendants.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief

as to the truthfulness of the allegations contained in paragraph 34, and therefore deny the same.

## STATEMENT OF FACTS RELATING TO
## Mark Wroblewski

35.     Plaintiff Wroblewski is a resident of DuPage County, Illinois.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 35, and therefore deny the same.

36.     Wroblewski works as a product support specialist in the automotive industry.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 36, and therefore deny the same.

37.     Wroblewski desires to carry a handgun on public transportation for self-defense and other lawful purposes. Wroblewski travels from his home in the suburbs to the city for recreational purposes via public transportation. He would travel this way more often if he were not forced to disarm to ride on public transportation.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 37, and therefore deny the same.

38.     Wroblewski has a valid FOID card and concealed carry license pursuant to the Illinois Firearm Concealed Carry Act.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 38, and therefore deny the same.

39.     Wroblewski lawfully owns a handgun and would carry a handgun for self-defense while traveling on public transportation were it not for the Public Transportation Carry Ban and Defendants' enforcement thereof.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 39, and therefore deny the same.

40. As a result of the Public Transportation Carry Ban, if Wroblewski carried a handgun for self-defense while riding on public transportation, he would expose himself to arrest and criminal charges.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 40, and therefore deny the same.

41. Wroblewski therefore has abstained from carrying a handgun for self-defense while riding on public transportation for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the Public Transportation Carry Ban, enforced by Defendants.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 41, and therefore deny the same.

**STATEMENT OF FACTS RELATING TO**
**Joseph Vesel**

42. Plaintiff Vesel is a resident of Cook County, Illinois.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 42, and therefore deny the same.

43. Vesel is a former Central Intelligence Agency Operations Officer.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 43, and therefore deny the same.

44. For self-defense and other lawful purposes, Vesel desires to carry a handgun while traveling on public transportation. Vesel has avoided using public transit because he cannot carry a firearm for self-defense while doing so.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 44, and therefore deny the same.

45. Vesel has a valid FOID card and concealed carry license pursuant to the Illinois Firearm Concealed Carry Act.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 45, and therefore deny the same.

46. Vesel lawfully possesses handgun and would carry a handgun while traveling on public transportation were it not for the Public Transportation Carry Ban and Defendants' enforcement thereof.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 46, and therefore deny the same.

47. As a result of the Public Transportation Carry Ban, if Vesel carried a handgun for self-defense while riding on public transportation, he would expose himself to arrest and criminal charges.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 47, and therefore deny the same.

48. Vesel therefore has abstained from carrying a handgun self-defense while on public transportation, for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the Public Transportation Carry Ban, enforced by Defendants.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 48, and therefore deny the same.

## STATEMENT OF FACTS RELATING TO
## Douglas Winston

49. Plaintiff Winston is a resident of Lake County, Illinois.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 49, and therefore deny the same.

50.     Winston is a full-time paramedic and firefighter. He is a certified Basic Arson Investigator, the training for which included the same 40-hour Mandatory Firearms Training (MFT) course required of police/peace officers, deputy sheriffs and probation/parole officers in the State of Illinois. Until his retirement from his previous position in 2019, Winston was classified as a Peace Officer under Illinois law, and completed the same regular use of force and firearms qualifications as police officers for his municipal employer, and routinely carried a sidearm while investigating the cause, origin and circumstances of fires or explosions. He also works part-time as a CCW instructor.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 50, and therefore deny the same.

51.     For self-defense and other lawful purposes, Winston desires to carry a handgun while traveling on public transportation. Winston rarely takes public transportation because he must disarm before he does so to avoid prosecution. Specifically, Winston with his family would take public transportation to cities like Evanston and Chicago, and even as far as St. Louis, were he able to carry a concealed firearm for self-defense purposes during such travels. He would take public transportation more often if he were not required to disarm.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 51, and therefore deny the same.

52.     Winston possesses a valid FOID card and concealed carr1y license pursuant to the Illinois Firearm Concealed Carry Act.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 52, and therefore deny the same.

17

53.     Winston lawfully owns a handgun and would carry a handgun for while traveling on public transportation were it not for the Public Transportation Carry Ban and Defendants' enforcement thereof.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 53, and therefore deny the same.

54.     As a result of the Public Transportation Carry Ban, if Winston carried a handgun on public transportation for self-defense while riding on public transportation, he would expose himself to arrest and criminal charges.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 54, and therefore deny the same.

55.     Winston, therefore has abstained from carrying a handgun for self-defense while on public transportation, for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the Public Transportation Carry Ban, enforced by Defendants.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 55, and therefore deny the same.

### HISTORY AND EFFECTS OF SENSITIVE PLACES RESTRICTIONS

56.     St. George Tucker, the editor of an early-American edition of Blackstone's Commentaries, wrote: "In many parts of the United States, a man no more thinks, of going out of his house on any occasion, without his rifle or musket in his hand, than a European fine gentleman without his sword by his side." 5 St. George Tucker, Blackstone's Commentaries, app., at 19 (Phila., William Young Birch & Abraham Small) (1803).

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 56, and therefore deny the same.

57.     Indeed, America has a longstanding tradition of encouraging and even mandating the carrying of arms while in public. For example, a 1623 Virginia statute required "[t]hat no man go or send abroad without a sufficient partie will armed." 1 William Waller Hening, The Statutes At Large: Being A Collection of All The Laws Of Virginia, From The First Session Of The Legislature 127 (1808). Another Virginia law, from 1632, provided that "ALL men that are fitting to beare armes, shall bringe their pieces to the church." *Id.* at 173. A Rhode Island statute stated that "noe man shall go two miles from the Towne unarmed, eyther with Gunn or Sword; and that none shall come to any public Meeting without his weapon." 1 Records of The Colony Of Rhode Island And Providence Plantations, In New England 94 (John Russell Bartlett ed., 1856). And Isaac Weld remarked of those he encountered in transit in 1796: "[T]he people all travel on horseback, with pistols and swords." 1 Isaac Weld, Travels Through The States of North America 233-34 (2d ed. 1799).

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 57, and therefore deny the same.

58.     The Founding generation admitted only very limited regulations on the right to bear arms, including restrictions on carrying firearms in certain "sensitive places." *Heller*, 544 U.S. at 626. However, the relatively few historical statutes of this type identify a very small number of "sensitive places"—including legislative assemblies, polling places, and courthouses. Bruen, 142 S. Ct. at 2133. "The list is rather short." David. B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 203, 234 (2018).

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 58, and therefore deny the same.

59. After the Civil War, states continued to impose relatively narrow "sensitive place" restrictions on the right to carry firearms. For instance, some continued to impose restrictions on carrying firearms in polling places or on election day. *See, e.g.*, 1870 La. Acts 159–60; Public Local Laws of Maryland, Articles 11-24, at 1457 (King Bros, ed. 1888). State courts also upheld restrictions on carrying firearms into courts. *See, e.g., Hill v. State*, 53 Ga. 472, 477-78 (1874).

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 59, and therefore deny the same.

60. The Second Amendment was ratified in 1791 and the Fourteenth Amendment was ratified in 1868. The Supreme Court has held the period immediately surrounding the ratification of the Bill of Rights is the key time to examine for historical evidence that can inform our understanding of its protections. *See, e.g., Crawford v. Washington*, 541 U.S. 36, 42–50 (2004); *Lynch v. Donnelly*, 465 U.S. 668, 674 (1984). And the Second Amendment right has the same meaning against the states through the Fourteenth Amendment as it does against the federal government through the Second. *McDonald*, 561 U.S. at 765. Therefore, historical evidence of similar restrictions is of the most value for determining the scope of the right when it dates to the period around 1791. The more recent it is, the less it informs about the scope of the right.

**ANSWER:** Defendants admit that the Second Amendment was ratified in 1791 and the Fourteenth Amendment was ratified in 1868. Defendants deny the remaining allegations contained in paragraph 60.

61. Plaintiffs are not aware of any historical evidence that carrying firearms was restricted on public transportation conveyances (e.g., ferries, riverboats, and stagecoaches) at or around the time of the adoption of either the Second or Fourteenth Amendments.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief

as to the truthfulness of the allegations contained in paragraph 61, and therefore deny the same.

62.     The aforementioned survey of firearm restrictions reveals that sensitive places restrictions were extremely limited during all potentially relevant historical time periods. No such sensitive place restriction directly or analogously supports the Public Transportation Carry Ban.

**ANSWER:** Defendants deny the allegations contained in paragraph 62.

63.     The unifying feature of the historically accepted sensitive places where individuals were deprived of the right to bear arms was security. In compensation for an individual's lessened right to protect himself, the government provided security measures to ensure the physical protection of anyone in a legislative assembly or courthouse. See David B. Kopel, The sensitive places issue in New York Rifle, REASON.COM (Nov. 8, 2021), https://bit.ly/3dpKD3e. In a modern context, this would mean measures such as requiring individuals to pass though magnetometers when entering the location in question. See Tr. of Oral Arg., No. 20-843, at 32:18–22 ("If it's a . . . place like a courthouse, for example, a government building, where everybody has to go through a magnetometer and there are security officials there, that would qualify as a sensitive place."). The Public Transportation Carry Ban is not accompanied by security measures of this type.

**ANSWER:** Defendants deny the allegations contained in paragraph 63.

64.     Few jurisdictions today impose similar restrictions on carriage on public transportation and they are not longstanding. The oldest such restriction of which Plaintiffs are aware comes from New Mexico and dates only to 1979. N.M. Stat. Ann. § 30-7-13.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 64, and therefore deny the same.

**COUNT I: ILLINOIS' PUBLIC TRANSPORTATION CARRY BAN IS UNCONSTITUTIONAL PURSUANT TO THE SECOND AND FOURTEENTH AMENDMENTS – 42 U.S.C. § 1983; U.S. CONST. AMENDS. II, XIV (All Plaintiffs v. Defendants)**

65.     The foregoing paragraphs are hereby incorporated herein as if set forth in full.

**ANSWER:** The Defendants' answers to paragraphs 1–64 are hereby incorporated by reference as their answers to paragraph 65 as if fully set forth herein.

66.     The Second Amendment of the United States Constitution provides that "the right of the people to keep and bear arms, shall not be infringed."

**ANSWER:** Defendants deny that this is the complete and accurate quotation of the text of the Second Amendment to the United States Constitution.

67.     The Supreme Court has held that the right to keep and bear arms, for self-defense and other lawful purposes, is a fundamental right. *Heller*, 554 U.S. at 581.

**ANSWER:** Defendants admit that the United States Supreme Court held in *Heller* that law-abiding, responsible individuals have a right to keep and bear arms for self-defense in the home, though this right is "not unlimited." Defendants deny all remaining allegations contained in Paragraph 67.

68.     In *Heller*, the U.S. Supreme Court defined "bear arms" as to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." 554 U.S. at 584. The right to armed self-defense applies both inside the home and in public. *Bruen*, 2022 WL 2251305 at *5.

**ANSWER:** Defendants admit that Plaintiffs have quoted a portion of the United States Supreme Court's decision in *District of Columbia v. Heller,* 554 U.S. 570 (2008) and that

Plaintiffs have cited *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Defendants deny all remaining factual allegations contained in paragraph 68.

69.     In *McDonald*, the Supreme Court held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment. 561 U.S. at 791; *id.* at 806 (Thomas, J., concurring in the judgment).

**ANSWER:** Defendants admit the allegations contained in paragraph 69.

70.     In *Bruen*, the Supreme Court confirmed that "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 2022 WL 2251305 at *9.

**ANSWER:** Defendants admit that Plaintiffs have quoted the United States Supreme Court's decision in *Bruen*. Defendants deny all remaining factual allegations contained in paragraph 70.

71.     The Public Transportation Carry Ban infringes on Plaintiffs' Second Amendment right to carry weapons for self-defense while Plaintiffs are traveling on public transportation.

**ANSWER:** Defendants deny the allegations contained in paragraph 71.

72.     Because the Ban is inconsistent with the history of firearm regulation in this Nation as demonstrated by restrictions in place during potentially relevant time periods, the Ban is not "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms" and is therefore unconstitutional under the Second and Fourteenth Amendments.

**ANSWER:** Defendants deny the allegations contained in paragraph 72.

73.     42 U.S.C. § 1983 prohibits state actors from depriving a person of a federal constitutional rights under color of state law.

**ANSWER:** Defendant admits that 42 U.S.C. § 1983 creates a civil cause of action against state actors who deprive another person of a constitutional right and are not otherwise immune from suit. Defendant denies all remaining factual allegations contained in paragraph 73.

74.     Plaintiffs Schoenthal, Wroblewski, Vesel, and Winston are law-abiding, peaceable citizens of Illinois and the United States who lawfully own firearms and who wish to be able to carry handguns on public transportation without being subjected to criminal prosecution.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in paragraph 74, and therefore deny the same.

75.     Defendants have violated Plaintiffs' right to keep and bear arms by precluding them from being able to carry a handgun on public transportation—even for purposes of self-defense—because Defendants enforce the Public Transportation Carry Ban.

**ANSWER:** Defendants deny the allegations contained in paragraph 75.

76.     Defendants' enforcement of 430 ILCS 66/65(a)(8), and any regulations, customs, practices, and policies related thereto, forces Plaintiffs to either comply with the unconstitutional mandate—thereby being prevented from defending themselves and their loved ones in public places—or be subjected to criminal prosecution.

**ANSWER:** Defendants deny the allegations contained in paragraph 76.

77.     Therefore, as a direct and proximate result of the above infringement and impermissible burden on Plaintiffs' Second and Fourteenth Amendment rights, Plaintiffs have suffered—and continue to suffer—from an unlawful deprivation of their fundamental constitutional right to keep and bear arms.

**ANSWER:** Defendants deny the allegations contained in paragraph 77.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, as follows:

a.    Declare that the Public Transportation Carry Ban consisting of 430 ILCS 66/65(a)(8), and all related laws, regulations, policies, and procedures, violates the right of Plaintiffs to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution;

**ANSWER:** Paragraph a. states a request for relief to which no answer is required. To the extent a response is deemed necessary, Defendants deny the allegations and deny that Plaintiffs are entitled to the relief requested.

b.    Enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing the Public Transportation Carry Ban, consisting of 430 ILCS 66/65(a)(8), and all related laws, regulations, policies, and procedures;

**ANSWER:** Paragraph b. states a request for relief to which no answer is required. To the extent a response is deemed necessary, Defendants deny the allegations and deny that Plaintiffs are entitled to the relief requested.

c.    Pursuant to 42 U.S.C. § 1988, award costs and attorney fees and expenses to the extent permitted; and

**ANSWER:** Paragraph c. states a request for relief to which no answer is required. To the extent a response is deemed necessary, Defendants deny the allegations and deny that Plaintiffs are entitled to the relief requested.

d.    Grant any and all other equitable and/or legal remedies this Court may see fit.

**ANSWER:** Paragraph d. states a request for relief to which no answer is required. To the extent a response is deemed necessary, Defendants deny the allegations and deny that Plaintiffs are entitled to the relief requested.

Defendants deny all headings, unnumbered paragraphs, and each and every allegation in Plaintiffs' Complaint not previously admitted or otherwise qualified.

## JURY DEMAND

Defendants demand a trial by jury in this matter for any and all claims that can be tried by jury.

## RELIEF REQUESTED

Defendants deny that Plaintiffs are entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Defendants, through their attorney, Illinois Attorney General Kwame Raoul, assert the following affirmative defenses to Plaintiffs' Complaint:

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs lack standing because they have not alleged that they suffered an injury in fact from any of Defendants' alleged acts, including allegations of any actual, impending, or threatened criminal enforcement actions against Plaintiffs. Because Plaintiffs lack standing, this Court lacks subject matter jurisdiction under Article III of the United States Constitution.

### SECOND AFFIRMATIVE DEFENSE

The Eleventh Amendment prohibits Plaintiffs from recovering any money judgment against Defendants for actions undertaken in their official capacity. Because all acts or omissions allegedly attributable to Defendants in this case were undertaken in their official capacities as officers of the State of Illinois, Plaintiffs' claims, nominally brought against Defendants are, in

fact, a suit against the State of Illinois and could operate to control the State or subject it to liability in violation of the Eleventh Amendment.

## THIRD AFFIRMATIVE DEFENSE

To the extent that Plaintiffs allege that they have previously taken public transit, the Plaintiffs knowingly and voluntarily waived any Second Amendment right they may have had to carry firearms while taking public transit.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are not ripe for adjudication. Plaintiffs are not presently the subject of any prosecution by any Defendant for violation of 430 ILCS 66/65(a)(8), nor can they plead or prove that any such prosecution is sufficiently probable and imminent to challenge 430 ILCS 66/65(a)(8). Because Plaintiffs' challenge to 430 ILCS 66/65(a)(8) is not ripe for adjudication, this Court lacks subject matter jurisdiction under Article III of the United States Constitution.

Dated: December 13, 2022                   Respectfully submitted,

                                             KWAME RAOUL
                                             Illinois Attorney General

                                             RICK AMATO
                                           State's Attorney of DeKalb County, Illinois

                                             ROBERT BERLIN
                                           State's Attorney of DuPage County, Illinois

                                             ERIC RINEHART
                                           State's Attorney of Lake County, Illinois

                               By:    /s/ Aaron P. Wenzloff
                                             Aaron P. Wenzloff, #6329093
                                           Senior Assistant Attorney General
                                           100 W. Randolph St., 11th Floor
                                           Chicago, Illinois 60601
                                           (312) 814-3000
                                           aaron.wenzloff@ilag.gov
                                           *Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I, Aaron P. Wenzloff, an attorney, certify that on December 13, 2022, I caused the foregoing

Defendants' Answer and Affirmative Defenses to be electronically filed via the Court's CM/ECF

system and thereby served on all counsel of record.

/s/ Aaron P. Wenzloff _____
Senior Assistant Attorney General