Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                   EASTERN DIVISION
 3
     BENJAMIN SCHOENTHAL,               )
 4                                      )
                    Plaintiff,          )
 5                                      )
     vs.                                ) 3:22 cv 50326
 6                                      )
     KWAME RAOUL, Attorney General      )
 7   of the State of Illinois, et       )
     al.,                               )
 8                   Defendants.        )
 9
10              The remote deposition of BENJAMIN
11   SCHOENTHAL, called by the Defendants for
12   examination, pursuant to Notice and pursuant to the
13   Federal Rules of Civil Procedure for the United
14   States District Courts, taken before Victoria D.
15   Rocks, CSR, and Notary Public in and for the County
16   of Cook, State of Illinois, commencing at 9:30
17   o'clock a.m., on the 8th day of September 2023, A.D.
18
19
20
21
22
23
24
```

Page 54
1  A.  No, because the idea is that deescalation
2  is always the first path, but there's a list of
3  things you do.  Deadly force is considered the last
4  to my understanding.
5       So because if someone were to -- we do
6  active shooter trainings.  If someone comes in with
7  a gun, deescalation may not be an option.  So being
8  prepared for that is a way to respond would be what
9  I consider would be a reasonable response.
10  Q.  Setting aside training, work at the range
11  and target practice that sort of thing, have you
12  ever held a gun in your day-to-day life unholstered
13  it, and brandished it for any reason?
14  A.  Brandished it, no.  I have held a gun to
15  unload, reholster it and put away, et cetera.
16  Q.  And I will characterize that as basic
17  maintenance tasks or movement.  Again, training and
18  basic movement and tests aside, you have never
19  brandished or unholstered it in any sense?
20  A.  Correct.
21  Q.  Have you ever wanted to?
22  A.  No.
23  Q.  Have you ever felt the need to?
24  A.  No.

Page 55
1  Q.  Have you ever been in a circumstance where
2  it would be called for?
3  A.  No.
4  Q.  Have you ever carried a firearm on public
5  transportation?
6  A.  No, because that would be a violation of
7  the law.
8  Q.  Have you ever carried a firearm in an
9  Uber?
10  A.  No.
11  Q.  Have you ever carried a firearm in a Lyft?
12  A.  No.
13  Q.  Have you ever carried a firearm in someone
14  else's car?
15  A.  Clarifying, are you excluding family
16  members?
17  Q.  No.
18  A.  Then yes.
19  Q.  Who are they?
20  A.  My wife.  My friends.
21  Q.  Setting those folks aside for a moment,
22  have you ever carried a firearm in a vehicle owned
23  by someone else, again, setting aside family and
24  friends?

Page 56
1  A.  No, to my knowledge.
2  Q.  I'm going to share my screen one more
3  time.  Let me know when you're able to see it if
4  that's okay.
5       Are you able to see the document I'm
6  sharing?
7  A.  Yes.
8  Q.  At the beginning of our conversation you
9  said that you reviewed a declaration.  Is this the
10  declaration you recall reviewing ahead of this
11  conversation?
12  A.  I believe that is, yes.
13  Q.  I will scroll down so you could see it as
14  well.
15  A.  All right.
16  Q.  That seems to be the document you
17  reviewed?
18  A.  That seems to be the document, yes.
19  Q.  Everything here is accurate still to this
20  day?  I know you filed it in December.  So if you
21  could take a look at it and let me know if anything
22  has changed.  Let me know if you would like me to
23  scroll.
24  A.  No, that looks accurate.

Page 57
1  Q.  I am going to keep scrolling.  I think
2  there's a few extra lines.  Are you able to see?
3  Does that look accurate as well?
4  A.  Yes.
5  Q.  I'm going to pull down my screen.  Let me
6  know when it disappears.
7  A.  Okay.
8  Q.  How did you come to get involved in this
9  lawsuit?
10  A.  When I had a Twitter account I saw a
11  message from the Firearms Policy Coalition asking
12  for residents in Illinois who would like to be able
13  to ride public transportation with their concealed
14  firearm, and I reached out.
15  Q.  How did you reach out?  Did you send a
16  letter, message or e-mail?
17  A.  I think it was an e-mail.
18  Q.  Do you recall who you sent that email to?
19  A.  I think it's their action list e-mail.  I
20  think it's a generic response e-mail that you click
21  on.
22  Q.  What is your Twitter handle or Twitter
23  name or was it when you had the Twitter account?
24  A.  I don't remember.  I think it might be