**EXHIBIT 6**

Expert Report of James E. Yurgealitis

October 23, 2023

Schoenthal, et al. v. Raoul, et al.

I. SUMMARY:

This report contains findings, statistics and expert opinions regarding the Plaintiffs' allegations against the Cook County State's Attorney Kimberly M. Foxx, as stated in *Schoenthal, et al. v. Raoul, et al.*, Case No. 22 CV 50326.

II. BACKGROUND AND QUALIFICATIONS:

I am currently self employed as a consultant and technical advisor in the field of Firearms, Forensics and their practical application in criminal cases as well as their impact and application to local State, Federal Law & Public Policy. I have been so employed since January 2013. Prior to that date I have spent the majority of my career as a Federal Law Enforcement Officer with both the United States Department of State, Bureau of Diplomatic Security (DSS) and The United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I had been so employed as such since 1986. My resume and statement of qualifications, as submitted to the State's Attorney for Cook County in this matter, are included in this report as attachments "A" and "B" respectively.

III. SERVICES REQUESTED AND CONTRACTED:

I have been retained by Cook County, Illinois, State's Attorney, to render my expert opinion on the firearms related issues raised by the plaintiff(s) in this case. I am being compensated for my research, advice, preparation and testimony on their behalf at the rate of $400/hour.

IV. OPINIONS:

My opinion or opinions as stated in this report are the result of my training, knowledge, and experience, technical and statistical research, review of the materials described herein as well as the Plaintiffs' pleadings in this case as submitted. All opinions contained herein are made pursuant to a reasonable degree of professional certainty.

During the course of my work in this case as additional research, technical or statistical materials become available or relevant they will be reviewed. As such I reserve the right to amend my report, opinion or testimony to include consideration of those materials should their relevance warrant.

V. MATERIALS REVIEWED:

I have been provided with a copies of, and have reviewed, the following materials:

1. Plaintiffs' Complaint;

2. Firearm Concealed Carry Act, Section 66/65;

3. Transcripts of Plaintiff's depositions;

4. Subpeona responses from the Chicago Transit Authority, Metropolitan Rail, and Pace Suburban Bus.

As it is central to the plaintiffs' claims this report will address the inherent dangers of close quarter combat (CQC) situations against an armed opponent in a public transit environment and / or the discharge of a firearm in a public transit environment. As this concerns the restriction of Concealed Carry Weapons (CCW) the discussion and my opinions will concern handguns as opposed to shoulder weapons (rifles, shotguns etc.). Common handgun calibers utilized by CCW holders include 9mm, .38 caliber, .357 Magnum, and .45 ACP (Automatic Colt Pistol). Common muzzle velocities for these calibers range between 850-1100 feet per second.

The primary concern is the risk of collateral damage (i.e. unintended casualties). There are a number of causal factors which can contribute to an unintended outcome. Among these are:

1. Lack of familiarity and competency with your chosen firearm:

   Although many CCW holders have demonstrated basic safe handling and marksmanship aptitude with their concealed carry weapon the qualification standards are likely static. Individuals fire at a stationary target while they themselves are stationary.

   I have participated in dozens of dynamic shooting drills (shooting while 'on the move' during quarterly qualifications as Law Enforcement Officer (LEO) and it is a skill which requires constant repetition in order to maintain proficiency in movement and marksmanship.

   Dynamic shooting drills consist of shooting at both static and moving targets while moving through a simulated structure or other indoor or outdoor space. Static qualifications alone do not address the difficulty of firing at a moving target while you yourself are moving towards or away from the threat. It is a vastly different skillset than that required for the basic Illinois CCW qualification course which does not include any dynamic training or qualification component.

   For the purposes of use in a moving transit vehicle however (bus, train or subway) these training scenarios do not address the random movement of a transit vehicle and the resultant transmittal of that movement to the passengers. Anyone who has had to utilize the vertical poles or hanging straps in public transit can readily relate to this issue. Nor do the

    basic training standards address the unpredictable movements (random or intentional) of the assailant that the armed citizen may attempt to target.
Static training also fails to address maneuverability, and / or firing on the move in confined spaces such as a bus or rail car. For example the aisles in CTA elevated train cars are just 2.25 feet wide.

2. Risk of overpenetration:

    Popular CCW handgun calibers such as 9mm or .40 S&W have muzzle velocities of 900-1000 feet per second (FPS). As such they can easily penetrate glass vehicle windows and sheet aluminum, plastic seats and seat cushioning / foam (common public transit vehicle component materials) with ease. Obviously overpenetration due to a missed shot poses an imminent danger to individuals outside the vehicle whether in motion or at a stop. Penetration of a 9mm caliber bullet through automotive windshield glass as illustrated in an online video here:

    https://www.youtube.com/watch?v=zTqsrZp40T0&t=159s

    I have personally fired a myriad of different caliber handguns into automobiles during the trajectory and shooting reconstruction modules of the ATF National Firearms Examiner Academy (a training program for which I was responsible from 2003-2012). I have witnessed firsthand the ease with which 9mm and larger caliber handgun bullets can penetrate steel automobile panels (which would be considerably more difficult to penetrate than flat sheet aluminum).

3. Unintended casualties:

    Exchanges of gunfire in confined spaces are inherently problematic when they involve simply the assailant and an armed citizen. There is significant added risk to innocent bystanders / passengers due to ridership volume during peak commuter traffic times (i.e. 'Rush Hour") due to the points raised previously.  Not only is there a possibility that fellow passengers may be hit due to the unpredictability of movement by the assailant and the vehicle itself, but the passengers also have little or no space in which to avoid gunfire. Additionally, the operator of the vehicle may be incapacitated by an errant shot with potential consequences to uninvolved individuals (in adjacent vehicles, pedestrians etc.) due to loss of vehicle control and collision.

4. Brandishing a firearm defensively may provoke a gunfight:

    It takes between 1-3 seconds for an individual to draw their firearm from a holster and bring it to bear towards a target. Presumably an armed citizen is doing so in order to address an armed threat. However, the armed criminal has already presented that threat by drawing their firearm so they have the proverbial "drop" on the armed citizen. Potential defensive action initiated by the armed citizen may cause the assailant to fire where they would have hesitated to do so absent defensive action.

Pursuant to 28 USC §1746, I declare under penalty of perjury that the foregoing is true and correct.

    Executed on October 23, 2023

_____
James E. Yurgealitis

# James E. Yurgealitis

5004 Roller Rd., Manchester, Maryland 21102
24 Hour Mobile: (443) 452-7248
Email: jyurgealitis@gmail.com

___

SUMMARY:

Self employed as a Legal and Public Policy Consultant providing Technical Firearms and Forensic Consulting, Testing and Policy Research / Training Services to Corporations, Legal Counsel and the Public Sector

EDUCATION:

B.A., Political Science and Psychology, St. John Fisher University, Rochester, New York – May 1985

PROFESSIONAL EXPERIENCE:

December 2012 to Present: Independent Legal and Policy Consultant / Subject Matter Expert

Currently provide independent consulting services to Corporations, Legal Counsel and Governmental entities in regard to Public Policy and Technical matters relating to Firearms, Firearms Policy, Forensics and Law Enforcement. Current and former clients include the Office of the District Attorney for Cook County Illinois, The City of Sunnyvale, California, The City of Highland Park, Illinois, The Office of the Attorney General for the Commonwealth of Massachusetts and the Center for American Progress, Washington D.C. I have provided sound policy and technical assistance for my clients to include expert testimony which successfully endured the opposition's legal appeals to the U.S. Circuit Court of Appeals and the U.S. Supreme Court.

December 2003 to December 2012: Senior Special Agent / Program Manager for Forensic Services ATF National Laboratory Center (NLC), Beltsville, Maryland. U. S Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

Directed the administration and management of ATF's Forensic Training Programs to include the National Firearms Examiner Academy (NFEA) a 12-month training program for State and Local Forensic Firearm Examiner Trainees. Also managed two additional forensic training programs. Administered a $1M + budget in accordance with strict ATF and National Institute of Justice (NIJ) guidelines and reporting requirements. Responsible for oversight of all Forensic Firearms related research at the NLC. Supervised a full and part time cadre of fifty-two (52) instructors and administrative personnel. Maintained liaison with commercial firearms and ammunition manufacturers and subject matter experts and ensure that lesson plans and curriculum reflected the latest technical developments in firearms manufacture, forensics and their application to federal and state law. Applied for, received and managed in excess of $2M in external grants to facilitate uninterrupted delivery of training during internal budget shortfalls. Detailed to the Department of Homeland Security Command Center in 2005 with overall responsibility to coordinate and direct Federal, State and Local Law Enforcement assets during and following Hurricanes "Irene" and "Katrina" and again in 2010 for "Andrew" and "Danielle".

June 1997 - December 2003:  Special Agent / Violent Crime Coordinator, ATF Baltimore Field Division, Baltimore, Maryland

Responsible for management of ATF's "Project Disarm", a joint law enforcement initiative between ATF, The United States Attorney's office for the District of Maryland (USAO), the Baltimore City Police Department, the Baltimore City States Attorney's Office and the Maryland State Police. Duties included reviewing over 400 state and local firearms related arrests annually for subsequent referral to the USAO and Federal Prosecution. Managed a caseload of 75 – 100 criminal cases annually. Responsible for selection, referral, follow - up investigation and subsequent indictment and prosecution of armed career criminals. Testified in front of Federal Grand Juries in excess of 75 times annually. Was recognized, and testified, as an expert witness in the Identification, Operability and origin of Firearms and Ammunition in three Federal Judicial Districts. Toured over 25 firearms and ammunition manufacturing facilities in Europe and the United States. Temporarily assigned in 2001 for three months to the 9-11 Task Force investigation in conjunction with FBI Assets. Temporarily assigned to the D.C. Sniper Task Force Intelligence Group in 2002 for two months.

June 1990 – June 1997:
Special Agent, ATF Baltimore Field Division, Baltimore, Maryland

Served in various capacities as a street-level Special Agent. Acted as Group Supervisor and Assistant Special Agent in Charge on numerous occasions. Served on the Washington – Baltimore High Intensity Drug Trafficking Area (HIDTA) task force from 1995 – 1999. Investigated armed narcotics trafficking organizations, seized assets, authored and executed Federal and state search and arrest warrants, conducted surveillance, interviews / interrogations, testified in Federal and state courts as a fact witness, purchased firearms, explosives and narcotics while in an undercover capacity, investigated fatal bombings and arsons, firearms trafficking, alcohol and tobacco trafficking, homicide, fraud and gun store burglaries. Also while detailed for 8 months as the Public Information Officer authored press releases, provided interviews to local and national print and television media outlets and made presentations to local and national public and special interest groups and associations.

April 1989 – June 1990 and July 1986 – March 1987: Special Agent, United States Department of State, Diplomatic Security Service (DSS), Washington Field Office, Rossyln, VA

Conducted investigations of violations of Federal Law under the department's purview to include Passport and Visa Fraud, Illegal trafficking of restricted firearms and war materials to prohibited countries, human trafficking, seized assets, authored and executed State, local and Federal Arrest and Search Warrants, testified in Federal Court as a fact witness, detailed on an as needed basis to the Dignitary Protection Division as Agent in Charge of multiple protective details for visiting and resident foreign dignitaries, temporarily assigned to support Physical and Personal Protective Security in various U.S. Embassies overseas on an as needed basis, detailed to the Secretary of State Protective Division on an as needed basis to supervise agents assigned to augment the permanent protective detail.

March 1987-February 1989: Special Agent, DSS, Secretary of State Protective Division, Washington, DC

Served in various capacities as Acting Agent in Charge, Acting Shift Leader, Lead Advance Agent and Shift Agent. Responsibilities included close personal protection of the Secretary of State both domestically and overseas, extensive foreign travel to facilitate and prepare security arrangements for overseas visits to include Presidential Summit meetings, liaison with foreign host government officials to plan and solicit assistance with security arrangements, supervision of agents temporarily assigned to augment the detail, liaison with U.S Government Intelligence Agencies and other Federal, State and Local Law Enforcement Agencies to identify and protect against potential threats to the Secretary of State.

<u>CLEARANCES:</u>  Top Secret March 1986 valid through February 2015. Numerous prior SCI Clearances.

<u>TEACHING EXPERIENCE:</u>

- Instructed at the Federal Law Enforcement Training Center (FLETC), for ATF and other Federal Law Enforcement Agencies
- Instructed at the International Law Enforcement Academy (ILEA) in Budapest, Hungary
- Instructed for numerous State, local and / or regional law enforcement agencies both in the United States, Canada and Central America

<u>LINKEDIN PROFILE AND ENDORSEMENTS:</u>

https://www.linkedin.com/in/james-jim-yurgealitis-68618464?trk=nav_responsive_tab_profile_pic

<u>REFERENCES:</u>

Available upon request

..

Case: 3:22-cv-50326 Document #: 66-6 Filed: 01/29/24 Page 9 of 14 PageID #:1307    EXHIBIT B

Case: 3:22-cv-50326 Document #: 66-6 Filed: 01/29/24 Page 9 of 14 PageID #:1307   EXHIBIT B

**Professional Qualifications of James E. Yurgealitis**
**Independent Legal, Public Policy and Forensic Consultant**

I, James E. Yurgealitis, being duly sworn, depose and state:

1.) That I was previously employed as a Senior Special Agent / Program Manager with the Bureau of Alcohol, Tobacco Firearms & Explosives, (ATF) United States Department of Justice, and had been so employed since 1990. Prior to 1990 I was employed as a Special Agent with the Bureau of Diplomatic Security, (DSS) United States Department of State and had been so employed since 1986.

2.) I have a Bachelor of Arts Degree in Political Science and Psychology from St. John Fisher College, Rochester, New York.

3.) I am a graduate of the Federal Law Enforcement Training Center, Glynco, Georgia, the Criminal Investigator Training Program, Bureau of Diplomatic Security New Agent Training, and the Bureau of ATF New Agent Training Program.

4.) I have completed the Firearms Interstate Nexus Training Program conducted by the Firearms Technology Branch, ATF Headquarters, Washington, D.C.

5.) I have completed both Advanced Interstate and European Nexus Training conducted by ATF in conjunction with several domestic and European firearm manufacturers.

6.) I have testified in excess of 200 times before Federal Grand Juries regarding the classification, operability, and commerce of firearms and / or ammunition.

7.) I have previously qualified as an expert witness regarding the origin, operability / classification and interstate movement of firearms and ammunition in U.S. District Court for the District of Maryland, U.S. District Court for the District of Delaware and the Circuit Court For Baltimore City, Maryland.

8.) I have conducted regular training for local, state and federal law enforcement agencies both domestically and overseas regarding firearms classification, operability and firearms statutes.

9.) I maintain a personal library of books, printed material and documents that relate to the field of firearms, ammunition, and firearms classification, attend local and national trade shows and professional association meetings, and regularly review periodicals relating to firearms and ammunition.

10.) I attend trade shows, maintain contact with, and regularly consult with other persons, to include published authors and recognized experts in the origin, identification and classification of firearms and ammunition.

11.) I have, during my tenure with ATF, personally examined in excess of five thousand

Qualifications Of James E. Yurgealitis contd.

firearms to determine their origin and classification and operability, and to facilitate the tracing of those firearms.

I have toured production facilities for numerous firearms and ammunition manufacturers. The tours were conducted by corporate historians, corporate officers, or production engineering personnel.

Domestic Firearm Manufacturers:
Bushmaster Firearms, Ilion, NY, USA
Colt, New Haven CT, USA (4x)
H&R 1871 Inc., Chicopee, MA, USA (2x)
Marlin, North Haven CT, USA (4x)
O.F. Mossberg & Sons, North Haven, CT, USA (4x)
Remington Firearms, Ilion, NY, USA
Savage Arms Inc., Westfield, MA, USA (4x)
Sig-Sauer / SIGARMS Inc., Exeter, NH, USA (3x)
Smith and Wesson, Springfield, MA, USA (4x)
Sturm Ruger, Newport, NH, USA (4x)
Yankee Hill Machining, Florence, MA, USA

Foreign Firearm Manufacturers:
Carl Walther GmbH, Ulm, Germany
Ceska Zbrojovka (CZ), Uhersky Brod, Czech Republic
Fegarmy (FEG), Budapest, Hungary
F.N Herstal S.A., Herstal, Belgium
Glock GmbH, Deutsch-Wagram, Austria
Heckler & Koch GmbH, Oberndorf au Neckar, Germany
J.P. Sauer & Sohn GmbH, Eckernforde, Germany

Domestic Ammunition Manufacturers:
Fiocchi Ammunition, Ozark, MO, USA
PMC, Boulder City, NV, USA
Remington, Lonoke, AR, USA (4x)
Sierra, Sedalia, MO, USA
Starline Brass, Sedalia, MO, USA

European Proof Houses
Beschussamt Ulm, (Ulm Proofhouse) Ulm, Germany
Beschusstelle Eckernforde, (Eckernforde Proofhouse) Eckernforde, Germany
Czech Republic Proofhouse, Uhersky Brod, Czech Republic
Liege Proofhouse, Liege, Belgium

<u>Qualifications Of James E. Yurgealitis contd.</u>

<u>I have been allowed regular access to the following reference collections:</u>
Bureau of Alcohol, Tobacco Firearms and Explosives Reference Collection, Martinsburg, West Virginia, USA consisting of 5,000+ firearms

Liege Proofhouse, Liege, Belgium consisting of 1,000+ ammunition cartridges

Springfield Armory National Historic Site Firearms Collection, Springfield, MA, USA consisting of 10,000+ Firearms

Smithsonian Institution (Museum of American History) Firearms Reference Collection Washington, DC, USA, consisting of 4000+ firearms

Wertechnische Studiensammlung des BWB, (Federal Defense Procurement Bureau Museum) Koblenz, Germany consisting of 10,000+ Firearms

<u>I have toured the following museums:</u>
Heeresgeschichtliches Museum, (Museum of Military History), Vienna, Austria
Hungarian Military Museum, Budapest, Hungary
Springfield Armory National Historic Site, Springfield, MA, USA
United States Air Force Museum, Dayton, OH, USA
United States Army Ordnance Museum, Aberdeen Proving Ground, Aberdeen, MD, USA
United States Military Academy Museum, West Point, NY, USA
United States Naval Academy Museum, Annapolis, MD, USA
Wertechnische Studiensammlung des BWB, (Federal Defense Procurement Bureau Museum) Koblenz, Germany

<u>Membership in Professional Organizations:</u>

Member, International Ammunition Association (IAA)
Technical Advisor (pending approval), Association of Firearm and Toolmark Examiners (AFTE)
Member, Federal Law Enforcement Officers Association (FLEOA)

James E. Yurgealitis: Consulting Engagements 2013 – 2023

(D) – Engaged by Defendant's Counsel

(P) – Engaged by Plaintiff's Counsel

(O) – Engaged by other entity

1. State of Maryland v. Smith, Linwood T, Circuit Court for Baltimore County, Maryland, Case No. 03-K-12-004002 (D) – Defendant's Private Counsel. Case review and consultation.

2. Freidman v. City of Highland Park, Illinois, United States District Court for the District of Illinois, Case No. 1:13-cv-9073 (D) – Defendant's Private Counsel acting as City Attorney. Report & Deposition.

3. Wilson v. Cook County, Illinois, Illinois Supreme Court, Case No. 2012 IL 112026 (D) – Office of the State's Attorney for Cook County, IL. Report & Deposition.

4. Fyock v. The City of Sunnyvale, California, United States District Court for the Northern District of California, Case No. 13-cv-05807 RMW (D) – City Solicitor. Declaration.

5. Wrenn v. District of Columbia, United States District Court for the District of Columbia, Civil Action Case No. 15-162 CKK (D) – U.S. Attorney's Office for the District of Columbia. Report & Deposition.

6. Mosaic Research Management, New York, New York, (O) – Private consulting firm. Confidential business assessment and projection.

7. Worman v. Healey, United States District Court for the District of Massachusetts, Case No. 1:17-cv-10107 (D) – Office of the Attorney General for the Commonwealth of Massachusetts. Report & Deposition.

8. Buckeye Firearms v. City of Cincinnati, Hamilton County, Ohio Court of Common Pleas, Case No. A1803098 (D) – Office of the City Attorney. Report & Deposition.

9. Powell v. The State of Illinois, United States District Court for the Northern District of Illinois, Case No. 18-cv-6675 (D) – Plaintiff's Private Counsel. Consultation.

10. Fletcher v. Century Arms, Circuit Court of the 15th Judicial District, in and for Palm Beach County, Florida, Case No. 502018CA009715 (P) – Plaintiff's Private Counsel. Case Review, Consultation & Deposition.

11. Pullman Arms v. Healey, United States District Court for the District of Massachusetts, Case No. 4:16-40136-TSH (D) - Office of the Attorney General for the Commonwealth of Massachusetts. Report.

Yurgealitis Consulting Engagements 2013 – 2023 contd.

12. United States v. Richard Cooke, United States District Court for the Western District of New York, Case No. 17-CR-0038 (D) – Office of the Federal Public Defender for the Western District of New York. Case review & consultation.

13. Long v. GAMO Outdoor U.S.A. Inc., District Court, Clark County Nevada, Case No. A-16-748401-C (P) – Plaintiff's Private Counsel. Test firing & consultation.

14. Viramontes v. Cook County, IL, United States District Court for the Northern District of Illinois, Case No. 1:21-CV-04595 (D) – Office of the State's Attorney for Cook County, Illinois. Report & Deposition.

15. Arnold, Joseph et al., v. Kate Brown et al - Harney County, OR Circuit Court, Case No. 22CV41008 (D) – State of Oregon. Case review & Court Testimony.

16. Oregon Firearms Federation et al., v. Kotek et al., United States Court for the District of Oregon, Pendleton Division, Case No. 2:22-cv-01815-IM (lead case), 3:22-cv-01859-IM (trailing case), 3:22-cv-01862-IM (trailing case), 3:22-cv-01869-IM (trailing case) (D) – State of Oregon. Case review, declaration, deposition & Court Testimony.

17. National Assn. for Gun Rights & Capen v. Campbell, United States Court for the District of Massachusetts, Case No. 1:22-cv-11431-FDS (D) – Office of the Attorney General for the Commonwealth of Massachusetts. Declaration.

18. Delaware State Sportman's Assn. et. al. v. Delaware, United States District Court for the District of Delaware, Case No.  No. 1:22-cv-00951-RGA (Consolidated), (D) – Office of the Attorney General for the State of Delaware. Declaration & consultation.

19. National Assn. for Gun Rights v. Lopez, United States District Court for the District of Hawai'i, Case No. 1:22-cv-404-DKW-RT (D) – Office of the Attorney General for the State of Hawai'i. Declaration.

20. Harrel et.al. v. Raoul, United States District Court for the Southern District of Illinois, Case No. 23-141-SPM (D) – Office of the Attorney General for the State of Illinois. Declaration, Rebuttal Declaration

21. Herrera v. Raoul et.al., United States District Court for the Northern District of Illinois, Case No. 1:23-cv-00532 (D) – Office of the District Attorney for Cook County, Illinois. Declaration

Yurgealitis Consulting Engagements 2013 – 2023 contd.

22. Gates et.al. v. Polis, United States District Court for the District of Colorado, Case No. 1:22-cv-01866 (D) – Office of the Attorney General for the State of Colorado. Expert Report, Rebuttal Report

23. Herrera v. Raoul et.al., United States District Court for the Northern District of Illinois, Case No. 1:23-cv-00532 (D) – Department of Law, City of Chicago, IL. Declaration

24. National Association for Gun Rights v. The City of Highland Park, Illinois, United States District Court for the Northern District of Illinois, Case No. 22-cv-4774 (D) – City of Highland Park, IL. Declaration.

25. Rocky Mountain Gun Owners et.al. v. The Town of Superior, Colorado (additional defendants The City and County of Boulder & City of Louisville, CO). United States District Court for the District of Colorado, Case No. 22-cv-1685-RM-NRN (D) – Town of Superior, CO. Expert Report & Rebuttal Report

26. Association Of New Jersey Rifle & Pistol Clubs, Inc. et al. v. Platkin et al., Cheeseman et al. v. Platkin et al., Ellman et al. v. Platkin et al., United States District Court for the District of New Jersey, Case No's. 3:18-cv-10507; 1:22-cv-04360; 3:22-cv-04397, (D) - Office of the Attorney General for the State of New Jersey, (D) - Expert Report

27. Guardian Arms, LLC et al. v. Jay Inslee, et al., No. 23-2-01761-34, Thurston County, Washington Superior Court, (D), Hartford v. Ferguson, No. 3:23-cv-05364-RJB, United States District Court for the Western District if Washington – Pacifica Law Group (Counsel for Intervenor Defendant, Alliance for Gun Safety) - Declaration