IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BENJAMIN SCHOENTHAL, *et al.*, | 3:22-CV-50326 |
| Plaintiffs, | |
| v. | Hon. Iain D. Johnston |
| KWAME RAOUL, *et al.*, | |
| Defendants. | |

**STATE PARTIES' COMBINED RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL FACTS**

Defendants Illinois Attorney General Kwame Raoul, DeKalb County State's Attorney Rick Amato, DuPage County State's Attorney Robert Berlin, and Lake County State's Attorney Eric Rinehart (the "State Parties"), by and through Illinois Attorney General Kwame Raoul, respectfully submit pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1 the following combined response to Plaintiffs' statement of material facts, ECF 71, and statement of additional material facts, in support of their opposition to Plaintiffs' motion for summary judgment and their motion for summary judgment:

**I.      Response To Plaintiffs' Statement of Material Facts**

1.      Defendant Kwame Raoul is the Attorney General of Illinois and has statutory duties defined in 15 ILCS 205/4, including that he litigate to ensure state laws are followed and respected. Defs.' Answer ¶ 18, Doc. No. 25 (Dec. 13, 2022); About Us, OFF. OF THE ATT'Y GEN., https://bit.ly/3TfHsOB (last visited Jan. 22, 2024), Ex. A.

**Response**: The State Parties admit the fact in Paragraph 1.

2.      Defendant Raoul possesses "all the powers associated with [the Attorney General's] office at common law," which "include the initiation and prosecution of litigation on behalf of the People[,]" a power that "may be exercised concurrently with the power of the State's Attorney to initiate and prosecute all actions, suits, indictments and prosecutions in his county as conferred by statute." *People v. Buffalo Confectionary Co.*, 401 N.E.2d 546, 549 (Ill. 1980) (internal citation omitted).

1

**Response:** The State Parties admit the fact in Paragraph 2.

3. Defendant Rick Amato is the State's Attorney of DeKalb County, Illinois and has statutory duties defined in 55 ILCS 5/3-9005, which include prosecuting violations of the criminal laws of Illinois. Defs.' Answer ¶ 19; State's Attorney's Office, DEKALB CNTY., https://bit.ly/487owGx (last visited Jan. 22, 2024), Ex. B.

**Response:** The State Parties admit the fact in Paragraph 3.

4. Defendant Robert Berlin is the State's Attorney of DuPage County, Illinois and has statutory duties defined in 55 ILCS 5/3-9005, including prosecuting criminal cases. Defs.' Answer ¶ 20; History of the Office, DUPAGE CNTY., https://bit.ly/3TljvoV (last visited Jan. 22, 2024), Ex. C.

**Response:** The State Parties admit the fact in Paragraph 4.

5. Kimberly M. Foxx is the State's Attorney of Cook County, Illinois and has statutory duties defined in 55 ILCS 5/3-9005, including prosecuting violations of Illinois law. Def. Foxx Answer ¶ 21, ECF No. 26 (Dec. 13, 2022); About the Cook County State's Attorney's Office, COOK CNTY. STATE'S ATT'Y, https://bit.ly/47Xe9or (last visited Jan. 22, 2024), Ex. D.

**Response:** The State Parties admit the fact in Paragraph 5.

6. Eric Rinehart is the State's Attorney of Lake County, Illinois and has statutory duties defined in 55 ILCS 5/3-9005, which includes enforcing Illinois law. Defs.' Answer ¶ 22; Eric Rinehart, STATE'S ATT'Y OF LAKE CNTY., https://bit.ly/3t2OR9q (last visited Jan. 22, 2024), Ex. E.

**Response:** The State Parties admit the fact in Paragraph 6.

7. Plaintiff Schoenthal is a law-abiding resident of DeKalb County, Illinois. Decl. of Benjamin Schoenthal ¶¶ 2–3, Ex. F. 8.

**Response:** The State Parties admit the fact in Paragraph 7.

8. Plaintiff Schoenthal is not disqualified from possessing and acquiring firearms under federal or state law. Ex. F ¶ 4. 9.

**Response:** The State Parties admit the fact in Paragraph 8.

9. Plaintiff Schoenthal is licensed to carry a handgun under Illinois law. Ex. F ¶ 5.

**Response:** The State Parties admit the fact in Paragraph 9.

10. Plaintiff Schoenthal intends and desires to exercise his rights to keep and bear a handgun on public transportation in Illinois. Ex. F ¶ 7.

**Response:** The State Parties admit that Plaintiff Schoenthal believes he has a right to keep and bear a handgun on public transportation in Illinois, and has indicated he would exercise that purported right if possible. The State Parties dispute that Constitution provides for "rights to keep and bear a handgun on public transportation." *See* Ex. 1, ECF 65.

11. Plaintiff Schoenthal rides public transportation for running personal errands, to visit Chicago, and occasionally for work. Ex. F ¶ 7.

**Response:** The State Parties admit the fact in Paragraph 11.

12. Plaintiff Schoenthal would use public transportation more frequently if permitted to carry a handgun for self-defense. Ex. F ¶ 7.

**Response:** The State Parties admit the fact in Paragraph 12.

13. Plaintiff Schoenthal has only abstained from carrying a handgun for self-defense on public transportation for fear of exposing himself to arrest and prosecution. Ex. F ¶ 8.

**Response:** The State Parties admit the fact in Paragraph 13.

14. Without a handgun while on public transportation, Plaintiff Schoenthal cannot meaningfully defend himself in case of confrontation. Ex. F ¶ 9.

**Response**: The State Parties dispute that Plaintiff Schoenthal "cannot meaningfully defend himself" "without a handgun," as he has no physical conditions which would prevent him from defending himself using other means. *See* Ex. 2, Schoenthal Dep., at *passim*.

15. Plaintiff Wroblewski is a law-abiding resident of DuPage County, Illinois. Decl. of Mark Wroblewski ¶¶ 2–3, Ex. G.

**Response:** The State Parties admit that Plaintiff Wroblewski is a resident of DuPage County, Illinois. The State Parties dispute that Plaintiff Wroblewski is "law-abiding," as he has admitted to operating a motor vehicle within an hour of consuming alcohol on multiple occasions. *See* Wroblewski Dep., Ex. 3, at 20:1–21:10.

16. Plaintiff Wroblewski is not disqualified from possessing and acquiring firearms under federal or state law. Ex. G ¶ 4.

**Response:** The State Parties admit the fact in Paragraph 16.

17. Plaintiff Wroblewski is licensed to carry a handgun under Illinois law. Ex. G ¶ 5.

**Response:** The State Parties admit the fact in Paragraph 17.

18. Plaintiff Wroblewski intends and desires to exercise his rights to keep and bear a handgun on public transportation in Illinois. Ex. G ¶ 7.

**Response:** The State Parties admit that Plaintiff Wroblewski believes he has a right to keep and bear a handgun on public transportation in Illinois, and has indicated he would exercise that purported right if possible. The State Parties dispute that Constitution provides for "rights to keep and bear a handgun on public transportation." *See* Ex. 1, ECF 65.

19. Plaintiff Wroblewski rides public transportation for recreational purposes, including visiting Chicago. Ex. G ¶ 7.

**Response:** The State Parties admit the fact in Paragraph 19.

20. Plaintiff Wroblewski would use public transportation more frequently if permitted to carry a handgun for self-defense because it is a more convenient way to visit Chicago. Ex. G ¶ 7.

**Response:** The State Parties admit the fact in Paragraph 20.

21. Plaintiff Wroblewski has only abstained from carrying a handgun for self-defense on public transportation for fear of exposing himself to arrest and prosecution. Ex. G ¶ 8.

**Response:** The State Parties admit the fact in Paragraph 21.

22. Without a handgun while on public transportation, Plaintiff Wroblewski cannot meaningfully defend himself in case of confrontation. Ex. G ¶ 9.

**Response:** The State Parties dispute that Plaintiff Wrobleski "cannot meaningfully defend himself" "without a handgun," as he has no physical conditions which would prevent him from defending himself using other means. See Ex. 3, Wroblewksi Dep., at *passim*.

23. Plaintiff Vesel is a law-abiding resident of Cook County, Illinois. Decl. of Joseph Vesel ¶¶ 2–3, Ex. H.

**Response**: The State Parties admit the fact in Paragraph 23.

4

24. Plaintiff Vesel is not disqualified from possessing and acquiring firearms under federal or state law. Ex. H ¶ 4.

**Response:** The State Parties admit the fact in Paragraph 24.

25. Plaintiff Vesel is licensed to carry a handgun under Illinois law. Ex. H ¶ 5.

**Response:** The State Parties admit the fact in Paragraph 25.

26. Plaintiff Vesel intends and desires to exercise his rights to keep and bear a handgun on public transportation in Illinois. Ex. H ¶¶ 10–11.

**Response:** The State Parties admit that Plaintiff Vesel believes he has a right to keep and bear a handgun on public transportation in Illinois, and has indicated he would exercise that purported right if possible. The State Parties dispute that Constitution provides for "rights to keep and bear a handgun on public transportation." *See* Ex. 1, ECF 65.

27. Plaintiff Vesel lives close to public transportation and would otherwise choose to take it but for the Transportation Carry Ban. Ex. H ¶¶ 8, 10–11.

**Response:** The State Parties admit the fact in Paragraph 27.

28. Plaintiff Vesel has been forced to travel by car, where he would otherwise take public transportation, due to the Transportation Carry Ban. Ex. H ¶ 10.

**Response:** The State Parties dispute the fact in Paragraph 28. Plaintiff Vesel has chosen to travel by car due to the public transportation bam, but was not forced to travel by car. *See* Ex. 4, Declaration of Joseph Vesel, ¶ 10.

29. Plaintiff Vesel has reason to fear for his personal safety due to his prior affiliation with the CIA. Ex. H ¶¶ 12–13.

**Response:** The State Parties dispute the fact in Paragraph 29. If Plaintiff had reason to fear for his safety due to his prior affiliation with the CIA, he would not have publicized that affiliation in a publicly available court filing without seeking to seal the record. *See* Ex. 4, Declaration of Joseph Vesel, ¶¶ 12–13.

30. Without a handgun while on public transportation, Plaintiff Vesel cannot meaningfully defend himself in case of confrontation. Ex. H ¶ 14.

**Response:** The State Parties dispute the fact in Paragraph 30. As a former CIA official, Plaintiff Vesel has the ability to meaningfully defend himself fin case of confrontation without a handgun. *See* Ex. 4, Declaration of Joseph Vesel, ¶¶ 12–13.

31. Plaintiff Douglas Winston is a law-abiding resident of Lake County, Illinois. Decl. of Douglas Winston ¶¶ 2–3, Ex. I.

**Response:** The State Parties admit fact in Paragraph 31.

32. Plaintiff Winston is not disqualified from possessing and acquiring firearms under federal or state law. Ex. I ¶ 4.

**Response:** The State Parties admit fact in Paragraph 32.

33. Plaintiff Winston, a full-time paramedic and firefighter, is licensed to carry a handgun under Illinois law. Ex. I ¶¶ 5, 6.

**Response:** The State Parties admit fact in Paragraph 33.

34. Plaintiff Winston is also a certified Basic Arson Investigator, and his training included 40 hours of firearms instruction. Ex. I ¶ 6.

**Response:** The State Parties admit fact in Paragraph 34.

35. Plaintiff Winston also works part-time as a concealed carry weapon instructor. Ex. I ¶ 6.

**Response:** The State Parties admit fact in Paragraph 35.

36. Plaintiff Winston was previously classified as a Peace Office under Illinois law, and he completed the same use of force and firearms qualifications course as police officers. Ex. I ¶ 6.

**Response:** The State Parties admit fact in Paragraph 36.

37. Plaintiff Winston intends and desires to exercise his rights to keep and bear a handgun on public transportation in Illinois. Ex. I ¶¶ 7–9.

**Response:** The State Parties admit that Plaintiff Winston believes he has a right to keep and bear a handgun on public transportation in Illinois, and has indicated he would exercise that

purported right if possible. The State Parties dispute that Constitution provides for "rights to keep and bear a handgun on public transportation." *See* Ex. 1, ECF 65.

38. Plaintiff Winston would otherwise choose to take public transportation on trips to Chicago but for the Transportation Carry Ban. Ex. I ¶¶ 8, 10.

**Response:** The State Parties admit fact in Paragraph 38.

39. Plaintiff Winston has only abstained from carrying a handgun for self-defense on public transportation for fear of exposing himself to arrest and prosecution. Ex. I ¶ 11.

**Response:** The State Parties admit fact in Paragraph 39.

40. Without a handgun while on public transportation, Plaintiff Winston cannot meaningfully defend himself in case of confrontation. Ex. I ¶ 12.

**Response:** The State Parties admit that Plaintiff Winston stated that feels he cannot defend "meaningfully defend" himself "without carrying a handgun." The State Parties dispute that Plaintiff Winston is actually unable to meaningfully defend himself without a handgun while on public transportation based on his career, qualifications, and experience as a Peace Officer. *See* Ex. 5, Declaration of Douglas Winston, ¶¶ 6–7 (stating Plaintiff Winston is a "full time paramedic and firefighter" who was previously classified as a "Peace Officer under Illinois law," and "completed the same regular use of force . . . qualifications as police officers.").

41. In Illinois, violent criminals have perpetrated attacks on public transportation or in public transportation facilities. *See*, *e.g.*, Arrest made in shooting of 16-year-old on CTA Red Line train near Chinatown, CBS CHI. (Jan 5., 2023), https://cbsn.ws/3XB8qyu, Ex. J; Man, 60, dies after Chatham shooting on CTA Red Line train: Chicago police, ABC7 CHI. (Oct. 17, 2022), https://abc7.ws/3fBnv3a, Ex. K; John O'Connor, More police promised for Chicago trains after fatal shooting, AP (Aug. 6, 2022), https://bit.ly/3DCMvPN ("The Chicago Sun-Times reported that as of mid-July [2022], CTA has reported 488 violent crimes this year, higher than at any point since the same period in 2011."), Ex. L; Dane Placko, CTA union president says violence on Chicago trains, buses is out of control, FOX32 CHI. (Apr. 10, 2022), https://bit.ly/3hbsCYz, Ex. M; Robert McCoppin & Tony Briscoe, Police: Homicide Suspect's Actions Forced Confrontation in Deadly Metra Train Shootout, CHI. TRIBUNE (last updated Jan. 10, 2017), https://bit.ly/3NmtkPS, N; Tim Hecke, 30 Years for the Man Who Shot a CTA Bus Driver in Downtown Chicago, CWB CHI. (Dec. 9, 2023), https://bit.ly/3RCexTD, Ex. O.

**Response**: The State Parties object to the relevance of the fact in Paragraph 41. Subject to and without waiving that objection, the State Parties admit the fact in Paragraph 41.

## II. State Parties' Statement of Additional Material Facts.

42. Numerous schools of all types and levels operated throughout the colonies before and during the Founding era. *See* Ex. 6, EDWIN GRANT DEXTER, PH.D., A HISTORY OF EDUCATION IN THE UNITED STATES 38–39, 94 (1906).

43. Multiple institutions of higher education were founded in what would become the United States during the Colonial period. *Id.* at 48, 64, 73.

44. Conflict between European settlers and Native nations was a persistent issue in frontier zones in the 17th century. *See* Ex. 7, J. Frederick Fausz, Fighting "Fire" With Firearms: The Anglo-Powhatan Arms Race in Early Virginia, American Indian Culture and Research Journal 3:4 33, 33 (1979).

45. During early eras in American history travel "involved . . . exposing oneself to predatory animals." Additionally, "conflicts with neighboring Indian groups posed a serious threat to colonists." Ex. 8, Rivas Report, at 34–35.

46. Laws requiring certain person to be armed while travelling, or while attending certain events or gatherings, were driven by the disorder, insecurity, and conflict with Native nations that existed during the earliest days of European settlement, or the need to guard against slave insurrection. *See* Ex. 8, Rivas Report, at 37 ("Guns were mandated in church because slaveholders and neighboring whites feared that the large Sunday gathering might become a target for a revolt or uprising on the part of enslaved people."); Ex. 53 to ECF 72 (providing that "every dwelling house shall be pallizaded [sic] in for defence against the Indians," and that "there be dew watch kept by night."; *see also* Ex. 55 to ECF 72 (establishing day of thanksgiving "in

8

commemoration of our deliverance from the Indians"); Ex. 54 to ECF 72 (requiring travel with arms while outside town, and memorializing plan to seek permission from King of England to settle a new colony of Rhode Island); Ex. 7, FREDERICK FAUSZ, *Fighting "Fire" With Firearms: The Anglo-Powhatan Arms Race in Early Virginia*, American Indian Culture and Research Journal 3:4 33, 33 (1979). Today, a person travelling via bus or train through a public transit system faces no danger from either "hostile Native American tribes" or "wildlife." *See* Rivas Report, ECF 64-11, at 35 ("To travel then was altogether different from boarding a CTA bus or train in Chicago today.").

47. Prior to the first half of the 20th century, transportation services were generally provided exclusively by private entities that usually received a charter or license to operate from a state or local government. *See* Ex. 9, Salzmann Report, at 3; *see also* Ex. 8, Rivas Report, ECF 64-11, at 24 ("Until the twentieth century, transportation services were typically operated by private companies vested with the authority to fashion their own rules and regulations for customers.").

48. During the Colonial and Founding eras ferries were established by "[p]rivate entrepreneurs," with the "the sanction of local governing bodies." Ex. 9, Salzmann Report, at 13.

49. The permission to establish a ferry often came with various stipulations from government authorities including fees, assurances the operator would provide consistent service, and an agreement about the toll travelers had to pay. These agreements go back to early days of British colonization. *Id.*

50. Even though subject to regulation, these private entities "were private corporations endowed with robust property rights. This included the right to refuse service and the right to establish safety policies." Ex. 8, Rivas Report, at 38.

9

51. The so-called "travel exception" was narrowly defined by state appellate courts. The kind of "travel" which it described was not the everyday movement through public spaces like town squares and commercial districts, or the kind of travel associated with modern public transportation. Instead, it encompassed a type of travel that separated a person, small group, or family from the protections of the law that went hand-in-hand with organized society and were a fundamental feature of community life—courts, magistrates, constables, and the security of being among one's neighbors. *See* Ex. 8, Rivas Report, at 21–22.

52. Tennessee law, for example, narrowly defined the travel exception, rejecting the proposition that "a 'journey' meeting the standards of a travel exception 'should embrace a mere ramble in one's own neighborhood across the lines of contiguous counties.'" Ex. 8, Rivas Report, at 22; *see also id.* at 23–24.

53. Scholars have only been able to trace the history of formal security measures in public schools back to the 1950s. Ex. 11, Larry Burgan and Robert Rubel, *Public school security, yesterday, today, and tomorrow*, Contemporary Education 52:1 (fall) p. 13–17.

54. Only about 6% of public schools are secured by metal detectors. Ex. 12 at p.13, Wang, K., Kemp, J., and Burr, R. (2022). *Crime, Violence, Discipline, and Safety in U.S. Public Schools in 2019–20: Findings From the School Survey on Crime and Safety* (NCES 2022-029). U.S. Department of Education. Washington, DC: National Center for Education Statistics. Retrieved Feb. 14, 2024 from http://nces.ed.gov/pubsearch/pubsinfo.asp?pubid=2022029.

55. Less than a third of public schools have a full-time "school resource officer" responsible for security. *Id.* at 18.

56. The O'Hare Airport Transit System, which provides local transportation at between O'Hare Airport Airport's multiple terminals, parking areas, and the O'Hare multi-modal facility,

10

is outside of the O'Hare Airport security perimeter. *See* Ex. 10, *Airport Transit System*, O'Hare International Airport (March 22, 2024), https://www.flychicago.com/ohare/ServicesAmenities/services/Pages/transitupdate.aspx.

| | |
|---|---|
| March 25, 2024 | Respectfully submitted, |
| Isaac Freilich Jones<br>Christopher G. Wells<br>Gretchen Elizabeth Helfrich<br>Office of the Illinois Attorney General<br>115 S. LaSalle St., 20th Floor Chicago, Illinois 60603<br>Tel. 312-814-3000<br>isaac.freilichjones@ilag.gov<br>christopher.wells@ilag.gov<br>gretchen.helfrich@ilag.gov | Defendants KWAME RAOUL, RICK AMATO, ROBERT BERLIN, and ERIC RINEHART<br><br>KWAME RAOUL,<br>Illinois Attorney General<br><br>By: */s/ Isaac Freilich Jones*<br>*One of the Attorneys for the State Defendants* |

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that on March 25, 2024 they caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to counsel of record.

                                                */s/ Isaac Freilich Jones*
                                                Assistant Attorney General