IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BENJAMIN SCHOENTHAL, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> KWAME RAOUL, *et al.*, <br><br> Defendants. | No. 3:22-CV-50326 <br><br> Hon. Iain D. Johnston |

**DEFENDANT FOXX'S SUPPLEMENTAL EXPERT BRIEF**

Defendant, Kimberly M. Foxx in her official capacity as the State's Attorney of Cook County, through her assistants, pursuant to this court's orders at docket numbers 96 and 98, presents her Supplemental Expert Brief:

**INTRODUCTION**

This court need not reach the analysis articulated in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) to award Defendant Foxx summary judgment. Dkt. 68 at 3. However, even if this court applies a historical analysis to the Statute, Defendant Foxx is still entitled to summary judgment.

The sources Plaintiffs cite in their Historical Appendix (Dkt. 72) lend support to Defendant Foxx's arguments on Summary Judgment. Plaintiffs' historical sources elaborate on the transformation of American work and movement within metropolitan areas made possible by modern public transit systems, underscoring the need to analyze the statute under a nuanced approach. *Bruen*, 597 U.S. at 27-28. Plaintiffs' historical examples demonstrate that laws restricting carry to travelers far from home and away from the likelihood of aid were both representative and relatively widespread in the years following ratification of the Second Amendment. And Plaintiffs' reliance on 17th century 'mandatory carry' laws are inapt analogues

1

to the Statute because they responded to a different problem with a vastly different solution. Defendant Foxx is entitled to summary judgment.

**I.      Plaintiffs Produced No Evidence of Mass Public Transit at the Time of the Founding.**

Private transportation for hire in the 17th and 18th centuries is not synonymous with modern public transit systems. Supp. Dec. of Joshua Salzmann, Dkt. 99-1 at 2. Plaintiffs seemingly acknowledge this distinction. Dkt. 66-30 at 24:15-17 (Plaintiff Winston admitting that U.S. airlines are not examples of public transit.). Plaintiffs do not point to a historical tradition of publicly owned and operated mass transportation in founding-era America. *Id.* at 2. Rather, all that Plaintiffs demonstrate is that *private* transportation for hire existed at the time of the founding. *Id.* at 1. Founding era private individuals provided ferry and stagecoach services for hire. *Id.* at 2. Those providers may have been licensed or their fares regulated by the state, *Id.*, but they were private businesses operating to turn a profit. *Id.* Even where Plaintiffs claim actual evidence of public ferriage in early America, Dkt. 70 at 16, what they actually produced were vaguely drafted statutes which do not explicitly establish a publicly chartered but privately operated ferry service. For instance, Plaintiffs point to a 1791 Connecticut law which granted the towns of Milford and Stratford "license and authority… to use and keep a ferry." Dkt. 99-1 at 2. Contrary to Plaintiffs' claims, ferriage along the Stratford Ferry was provided by private individuals. *Id.* at 2-3. Plaintiffs also produced a 1783 Georgia law which authorized a group of commissioners in Augusta to oversee the establishment of a ferry. *Id.* at 3. Plaintiffs produced no evidence showing the ferry was built and operated by a public agency, nor does the Georgia law prevent the commissioners from licensing a private individual to own and operate the ferry, consistent with prevailing practices at the time. *Id.* at 3.

Plaintiffs' founding era historical statutes make for poor analogues to modern public transit because they involved for-hire transportation operated by private companies. The Stratford Ferry

is no more an example of public transit than United Airlines. This court should give Plaintiffs' historical laws no weight in conducting its *Bruen* analysis and award Defendant Foxx summary judgment.

## II. This Court Should Use a Nuanced Approach to Historical Analysis.

Public transit gave rise to a class of American 'commuters' who for the first time in U.S. history engaged in large scale daily travel by transportation to and from work. Dkt. 99-1 at 4. Modern American public transit largely serves daily commuters and short distance travelers moving quickly within a metropolitan area. *Id.* at 3. The founding generation could not have projected the daily public transit commuter when the Second Amendment was ratified. The founding era United States was a pre-industrial society, R. 56.1 ⁋ 67-69, and the technology which made commuting necessary and possible did not exist until the 1840s. *Id.* at 4. Modern public transit systems, including the systems Plaintiffs attest to desire to ride, serve a societal function which was nonexistent at the time of the founding.

The laws produced by Plaintiffs demonstrate how colonial and founding era transportation served a small number of travelers moving slowly through an agricultural country, or long-distance travelers and freight, Dkt. 99-1 at 3, not the large numbers of daily and short distance travelers served by the CTA and Metra.. In fact, the laws Plaintiffs rely upon do not establish that firearms were routinely permitted for private carry aboard founding era transportation. Rather, these statutes show either that the guns on board were held by the military, by a contracted security force to protect against attacks by indigenous tribes, or as freight. *Id.*; Supp. Dec. of Dr. Brennan Rivas, Dkt. 99-2 at 2-3. Individual self-defense is the core right secured by the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 630 (2008). None of Plaintiffs' historical laws invoke that core right. As a result, this court should find that they are inapplicable and grant Defendant Foxx summary judgment.

3

### III. Laws Regulating Firearm Carry With Travel Exceptions Are Representative And Analogous Limitations on Carry.

Defendant Foxx has offered multiple examples of early nineteenth century statutes which restricted carry within a municipal area, and only permitted firearm carry to long distance travelers who ventured outside of their community spheres. Dkt. 66 at ₽ 88-97. Specifically, Defendant put forth laws from the states of Tennessee, Louisiana, Arkansas, and Texas. Dkt. 66 at ₽ 90-93. Plaintiffs helpfully identify further examples, noting that both Kentucky (1812) and Indiana (1819) adopted laws restricting carry within one's community-sphere, with an exception for travelers. Dkt. 99-2, at 1. Plainly, community restrictions on carry were well-established by representative laws on the books in multiple states in the decades immediately following the adoption of the Second Amendment. These laws existed to protect travelers who were "separated… from the protections of the law that went hand-in-hand with organized society…." Dkt. 99-2 at 2. The Statute similarly and analogously restricts carry for people moving within the Chicago metropolitan area on transit without leaving the security of organized society. *Id.* That is sufficient for this court to hold that they are apt analogues for the Statute, and to award Defendant Foxx summary judgment.

### IV. Plaintiffs' "Mandatory Carry" Laws Are Historically Irrelevant to the Second Amendment.

The Supreme Court instructs us to consider both how and why a statute burdens the rights secured by the Second Amendment. *Bruen*, 597 U.S. at 30. Plaintiffs propose this court analogize the Statute to various mandatory carry statutes they claim applied to short distance travelers, Dkt. 87 at 34-35 (Exh. 51-56), but fail to explain how and why they are analogous. Examining the how and the why reveals these statutes to be inapposite.

4

First, rather than reflecting the core principle of individual self-defense, these statutes evince an organized state of war between British colonists and the indigenous tribes with whom they came into conflict. Dkt. 99-2 at 3-5. These laws should be viewed as anachronisms of aggressive colonization, enacted to protect against "specific, immediate threats" to the safety and security of the colonists. *Id.* at 3-5. Plaintiffs do not contend that such a conflict is ongoing, or that they need to carry their guns on transit to defend against specific and immediate threats. See generally Dkt. 1. In other words, the "why" of these colonial era laws is unrelated to the reasons for regulating firearms carry on public transit in Illinois.

The "how" some colonial governments elected to prosecute a war against indigenous tribes highlights how poorly Plaintiffs' laws line up with a regulation on the carry of firearms on public transit. Defendant Foxx is unaware of any state or territorial law in existence from the passage of the Bill of Rights through to the present day which required civilians to carry firearms, and Plaintiffs have not identified any. The founders plainly did not understand the Second Amendment compelled the arming of every American, and as the threat subsided the laws themselves changed. Dkt. 99-2 at 5.

Plaintiffs offer pre-independence era statutes stripped of historical context. These laws required colonial civilians to carry guns, something the United States of America has never done. And their purpose was to fight and win a race-war over the native tribes, a state of warfare that has no bearing on modern American public transit. Plaintiffs mandatory carry laws are irrelevant and this court should ignore them. Instead, Defendant Foxx should be granted summary judgment.

## CONCLUSION

For each of the foregoing reasons, Defendant Foxx respectfully requests that this Honorable Court grant judgment in her favor and against the Plaintiffs.

Dated June 27, 2024

KIMBERLY M. FOXX
*Cook County State's Attorney*
*Counsel for Defendant*

By *s/ Jessica M. Scheller*
JESSICA M. SCHELLER
Deputy Chief; Civil Actions Bureau
PRATHIMA YEDDANAPUDI,
Supervisor; Advice, Transactions &
Complex Litigation Section
JONATHON BYRER
Supervisor, Appeals & Special Projects
SILVIA MERCADO MASTERS
EDWARD M. BRENER
MEGAN HONINGFORD
Assistant State's Attorneys
Jessica.Scheller@cookcountysao.org
Prathima.Yeddanapudi@cookcountysao.org