IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BENJAMIN SCHOENTHAL, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> KWAME RAOUL, *et al.*, <br><br> Defendants. | No. 3:22-CV-50326 <br><br> Hon. Iain D. Johnston |

### THE STATE PARTIES' SUPPLEMENTAL BRIEFING RELATING TO DEFENDANTS' SUPPLEMENTAL EXPERT REPORTS

Consistent with the Court's Minute entry dated May 15, 2024, ECF 98, Defendants Kwame Raoul, Rick Amato, Robert Berlin, and Eric Rinehart (the "State Parties") hereby submit the following supplemental brief relating to the material in the supplemental expert reports served on June 14, 2024. *See* Supplemental. Expert Report of Dr. Brennan Rivas ("Suppl. Rivas Report"), Ex. 1; Supplemental Expert Report of Professor Joshua Salzmann ("Suppl. Salzmann Report"), Ex. 2.

The State Parties have already shown that restrictions on concealed carry in public transit systems in the Firearm Concealed Carry Act's (the "Act") are constitutional under *Bruen* and *Heller*. *See* ECF 64, 65, 94. Defendants' supplemental expert reports further reinforce what the State Parties have also already demonstrated—that Plaintiffs' theory of this case lacks any basis in the history and tradition of firearm regulation in the United States, and that Plaintiffs do not and cannot defeat Defendants' motions for summary judgment. *See* ECF 83, 84.

*First*, the documents Plaintiffs present do not support their assertion that "public transportation undoubtedly existed at the Founding." Plaintiffs' Mem. in Supp. of their Mot. for Summary Judgment ("Plaintiffs' MSJ Mem."), ECF 70, at 15. While Plaintiffs' documents show

1

that various *modes of transportation* existed at the Founding, including stagecoaches, ferries, ships, and more, they also show that these modes of transportation were generally owned and operated by private individuals. *See* Suppl. Salzmann Report, Ex. 2, at 1–3. For example, Plaintiffs' Exhibit 4 describes a New York stagecoach line between Albany and New York City established in 1785, identifying the "[p]roprietors" as "Isaac Van Wyck, John Kinney and Talmage Hall, tavern-keepers…." ECF 72 at 24. Plaintiffs' Exhibit 10 contains a 1792 Virginia law that articulated the terms which private individuals designated as "ferry keepers" should operate. ECF 72 at Ex. 10. And Plaintiffs' Exhibit 12, a 1796 Act For Regulating Ferries, shows the State of Massachusetts offering a license to individuals willing and able to operate a ferry for a profit: "no person or persons whatever shall keep a Ferry within this Commonwealth, so as to demand or receive pay, without a special license…." ECF 72 at 55–57. These documents show that transportation was generally provided by *private* persons, even if governments issued charters authorizing private parties to establish and operate transportation services, regulated transportation services by setting prices, or mandated that private operates provide certain services in times of emergency. Because public transit systems did not exist prior to the Twentieth Century, *see* Suppl. Salzmann Report, Ex. 2, at 1, Plaintiffs cannot plausibly point to the lack of concealed carry regulations in public transit systems during the Colonial and Founding eras as evidence that such laws are unconstitutional today.

*Second,* Plaintiffs fail to acknowledge that the Colonial and Founding era transportation services they reference also served different economic and social roles than the public transit systems of today. The transportation services of the Colonial and Founding eras, including those referenced by Plaintiffs, were generally focused on long-distance travel and bulk trade. Suppl. Salzmann Report, Ex. 2, at 3–4. For example, Plaintiffs' Exhibit 10, ECF 72 at 44, contains a 1792

Virginia statute showing regulated ferry rates for the crossing of "a horse," a "hogshead of tobacco," a "head of neat cattle," "goat," and "lamb." Similarly, Exhibit 14, ECF 72 at 63, a 1732 New York statute, regulates rates for transporting commodities including: "a barrel of bread," "every dozen of pigeons," and "bale[s] of cotton." Suppl. Salzmann Report, Ex. 2, at 4. By contrast, modern public transit systems generally focus on "daily commuters and short-distance travelers moving within an urban agglomeration who live in a majority urban and suburban nation and move through space much more quickly, more frequently and without carrying animals and freight." *Id.* at 4. This distinction further supports Defendants' argument that *Bruen's* "nuanced" approach applies to this case. *See* State Parties' Mem. in Support of their Mot. for Summary Judgment ("State MSJ Mem."), ECF 65, at 14–16.

*Third*, Plaintiffs assert that the Act is unconstitutional because "some [laws] expressly permitted carry" of weapons on certain modes of transportation during the Colonial and Founding eras. *See* Plaintiffs' MSJ Mem., ECF 70, at 14. But the laws Plaintiffs cite do not support the proposition that public carry was generally allowed on transportation during earlier eras. Rather, the laws Plaintiffs cite were "enacted at a time of severe tension with nearby Indigenous groups," and "during periods of extreme vulnerability to Indian attack." Suppl. Rivas Report, Ex. 1, at 3–5. For example, Plaintiffs' Exhibit 11, ECF 72, mandates that ferry operators transport armed men free of charge during times of emergency. Suppl. Rivas Report, Ex. 1, at 2. As another example, Plaintiffs' Exhibit 18 describes a Virginia law authorizing (but not requiring) local authorities to "arrange and pay for the carriage of armed militiamen across intra-county creeks and streams on muster days." *Id.* at 3. Other laws were passed for the purpose of allowing "the community to address specific, immediate threats," and to fight (and win) localized wars. *Id.* at 5. In sum, the "regulatory challenges posed by firearms today are not always the same as those that preoccupied"

3

the communities that passed these laws, requiring "a more nuanced approach" to the *Bruen* analysis. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 27 (2022).

*Fourth*, Plaintiffs' reliance on examples of a type of nineteenth century law that permitted certain travelers to travel while armed, often called the "travelers' exception," is misplaced. These laws do not demonstrate that there was a right to go armed at all times outside the home, or that history and tradition support the proposition that the Second Amendment protects concealed carry during any kind of travel. Rather, the travel exception was narrowly defined by state appellate courts to refer to "a type of travel that separated a person, small group, or family from the protections of the law that went hand-in-hand with organized society and were a fundamental feature of community life—courts, magistrates, constables, and the security of being among one's neighbors." Suppl. Rivas Report, Ex. 1, at 2. In other words, the kind of "travel" to which the "traveler's exception" might have applied was not the kind of travel associated with modern public transportation systems—commuting, and everyday movement through settled areas, public spaces, and commercial districts.

## CONCLUSION

For these reasons, and for the reasons stated in Defendants' summary judgment briefing, the State Parties respectfully request that the Court grant Defendants' motions for summary judgment, deny Plaintiffs' motion for summary judgment, and enter final judgment in favor of Defendants.

| | |
|---|---|
| June 28, 2024 | Respectfully submitted, |
| | |
| Isaac Freilich Jones | Defendants KWAME RAOUL, RICK AMATO, |
| Christopher G. Wells | ROBERT BERLIN, and ERIC RINEHART |
| Darren Kinkead | |
| Gretchen Elizabeth Helfrich | By: KWAME RAOUL, |
| Office of the Illinois Attorney General | Illinois Attorney General |
| 100 West Randolph Street, 11th Floor | |
| Chicago, Illinois 60601 | */s/ Isaac Freilich Jones* |
| isaac.freilichjones@ilag.gov | *One of the Attorneys for Defendants Kwame* |
| christopher.wells@ilag.gov | *Raoul, Rick Amato, Robert Berlin, and Eric* |
| Darren.kinkead@ilag.gov | *Rinehart* |
| gretchen.helfrich@ilag.gov | |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on June 28, 2024 they caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to counsel of record:

             */s/ Isaac Freilich Jones*
             Assistant Attorney General