**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| BENJAMIN SCHOENTHAL, *et al.*, | |
| *Plaintiffs*, | No. 3:22-cv-50326 |
| v. | |
| KWAME RAOUL, *et al.*, | Honorable Iain D. Johnston |
| *Defendants*. | |

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEFS REGARDING EXPERT REPORTS

Plaintiffs, Benjamin Schoenthal, Mark Wroblewski, Joseph Vesel, and Douglas Winston, by and though undersigned counsel, respectfully submit this Supplemental Response Brief pursuant to this Court's Order. *See* Dkt. 98. [1]

## INTRODUCTION

As already explained, Defendants have failed to ground their carry restrictions on public transportation in any national historical tradition of firearms regulation. Specifically, Defendants fail to offer *any* probative Founding-era evidence supporting their ban, preferring to rest on disanalogous laws from England in the 1300s and American laws from the late 19th century. *See* Pls.' Mot. for Summ. J. at 9–26, Dkt. 70 (Jan. 29, 2024) ("Pls.' MSJ"); Pls.' Opp'n to Defs.' MSJs at 31–40, Dkt. 87 (Mar. 25, 2024) ("Pls.' Opp'n"). This historical showing is insufficient,[2]

---

[1] The Court ordered Defendants to "submit one supplemental brief by 6/28/2024" of five pages or fewer (*see* Dkt. 98), but Defendants submitted a four and five page brief, respectively. Mindful of this Court's order not to "over litigate" this aspect of the case, *see id.*, Plaintiffs adhere as closely as possible to the five-page limit.

[2] Bolstering Plaintiffs' arguments about the Founding era being critical and 19th-century analogues being insufficient to form a relevant historical tradition, the Supreme Court recently rejected the argument that procedures employed by a few states "in the early 19th century" could

and summary judgment should be granted in Plaintiffs' favor.

## ARGUMENT

Defendants' supplemental briefing centers on the question of whether *Plaintiffs'* sources mean what they say—that early forms of public transportation existed at the Founding and that travelers were generally permitted to carry firearms. *See generally* Def. Foxx Suppl. Br., Dkt. 99 (June 27, 2024) ("Foxx Br."), State Suppl. Br., Dkt. 100 (June 28, 2024) ("State Br."). To be clear, Plaintiffs need not offer *any* historical evidence of their own to prevail at summary judgment. The burden to justify the challenged restrictions rests solely on Defendants. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 33–34 (2022); *United States v. Rahimi*, 602 U.S. ---, 2024 WL 3074728, at *6 (U.S. June 21, 2024).

Moreover, it is of little consequence how purported experts characterize the statutes that the parties offer. The Supreme Court has made clear that assessing historical analogues, a form of "[d]iscerning and developing the law[,]" is "a commonplace task for any lawyer or judge." *Rahimi*, 2024 WL 3074728, at *6 (quoting *Bruen*, 597 U.S. at 28). Thus, this Court need not consider any expert evidence to resolve this case. On the contrary, this Court should review and consider the plain text of the statutes that Defendants offer to assess whether they are constitutionally relevant analogues sufficient to form a tradition supporting the public transit carry ban. Regardless, Plaintiffs will address the arguments Defendants raise in their supplemental briefs about their supplemental expert reports.

---

inform the original meaning of the Fifth and Sixth Amendments. *Erlinger v. United States*, No. 23-370, 2024 WL 3074427, at *12 (U.S. June 21, 2024); *see also id.* at *13 (procedures "in less than a handful of states" is not "the kind of 'uniform postratification practice' that can sometimes 'shed light upon the meaning' of the Constitution.'"). Rather, the Court explained that procedures "followed by a few States hardly represents 'convincing' proof[.]" *Id.* at *12 (quoting *United States v. Gaudin*, 515 U.S. 506, 515 (1995)).

*First*, Defendants criticize Plaintiffs' sources by arguing that they show only that public transportation provided by *private* persons through government contracts or licenses existed in early America. *See* Foxx Br. at 2; State Br. at 2. But this misses the point. As just explained, Plaintiffs need not present any historical evidence of their own to prevail. Additionally, Plaintiffs offer these statutes to make the more general point that shared transportation open to the public existed at the Founding, and that there were no corresponding bans on carry on that transportation. Importantly, Defendants' own experts agree with the conclusion that shared transportation open to the public existed in early America, *see* Pls.' Opp'n at 23–24, though they quibble that such transportation was not as systematized or widespread as it is in urban centers today. Moreover, as Defendants note, various methods of transportation (such as PACE and Metra) that Plaintiffs have used, or would use but for the State's ban, are owned by the government but operated by private entities. *See* Def. Foxx Mot. for Summ. J., at 11–12, Dkt. 86 (Mar. 25, 2024). Thus, Defendants' objections to Plaintiffs' statutes ring even more hollow— public transportation is not defined solely (or even primarily) by who operates it.

In focusing myopically on who operates modes of transportation, Defendants split hairs and ignore the Supreme Court's instruction that something can be analogous even if it is not a "dead ringer for historical precursors" or a "historical twin." *Bruen*, 597 U.S. at 30; *Rahimi*, 2024 WL 3074728, at *6. What matters is "whether the challenged regulation is consistent with the principles that underpin the Nation's regulatory tradition." *Rahimi*, 2024 WL 3074728, at *6. Here, the parties have offered two overarching principles: carry on modes of transportation and carry while traveling. But Defendants have not provided *any* relevant evidence of a tradition of carry restrictions for either category. On the contrary, all parties' evidence reveals a tradition— stretching to early America—that carry was permitted, and sometimes required, while on early

modes of transportation and while traveling. *See, e.g.*, Pls.' MSJ at 25–26; Pls.' Opp'n at 34–36; Foxx MSJ at 15. And, as Plaintiffs have explained, carry can only generally be banned for members of the public in locations where the government provides comprehensive security—for example, TSA security checkpoints before boarding a plane. *See, e.g.*, Pls.' MSJ at 20–23.

*Second*, Defendants contend that the early modes of transportation that Plaintiffs discuss "served different economic and social roles" than today's public transportation because they transported goods and involved long-distance travel. State Br. at 2–3; *see also* Foxx Br. at 3 (different societal function of daily commuting). This argument concedes that at least some early forms of public transportation exist. Simply because they transported goods in addition to people does not render them inappropriate analogues. Again, Plaintiffs do not bear the burden to identify "historical twin" locations to those challenged here. *Bruen*, 597 U.S. at 30 (emphasis omitted). Indeed, *Bruen* itself did not apply a different analogical test even though downtown Manhattan today (and other parts of New York State) have undergone great technological and societal change since the Founding era. On the contrary, *Bruen* stated that the historical analogies "here and in *Heller* are relatively simple to draw," distinguishing those cases from others "implicating unprecedented societal concerns or dramatic technological changes." 597 U.S. at 27. The same should hold true for public transportation.

*Third*, Defendants argue that Plaintiffs' statutes permitting (and sometimes requiring) carry in places of public assembly existed during a state of war between British colonists and indigenous tribes. Foxx Br. at 5; State Br. at 3–4. Once again, Defendants miss the forest for the trees. The permissive and mandatory carry laws that Plaintiffs cite, *see, e.g.*, Pls.' MSJ at 25–26; Pls.' Opp'n at 26, reveal that to the extent the government is not securing a place, common practice was to permit or require carry around vulnerable individuals, not ban it. The nature or source of the threat

4

makes no difference to that underlying principle. Additionally, Defendants correctly recognize that the statutes permitting carry in churches and places of public assembly were enacted "to protect against 'specific, immediate threats'" to individual safety and security. Foxx Br. at 5; State Br. at 3. Specific, immediate threats are precisely what Plaintiffs want to be able to counter when they are traveling on public transportation in Illinois, and these statutes undercut Defendants' contention that carry can be banned in locations simply because they are crowded. Pls.' Opp'n at 25–26.

*Fourth*, Defendants again misrepresent various statutes as "only permitt[ing] firearm carry [by] long distance travelers." Foxx Br. at 4; State Br. at 4. On the contrary, these statutes accord with Plaintiffs' sources and support Plaintiffs' argument that that travelers during the Colonial era were sometimes *required* to carry arms when traveling even short distances from their homes. *See* Pls.' MSJ at 25; Pls.' Opp'n at 34–35. As during summary judgment briefing, Defendants offer no valid historical evidence for the contention that travelers going on long-distance journeys—however that may be defined—were the *only* individuals allowed to carry firearms. Indeed, the Colonial-era laws Plaintiffs discuss required carry when individuals were traveling one to two miles from their homes. *See, e.g.*, Pls.' Opp'n at 35–36. And Defendants' contention that these laws existed to protect travelers "who were 'separated . . . from the protections of the law that went hand-in-hand with organized society," Foxx Br. at 4; State Br. at 4, stems only from a purported expert's say-so, not from the plain text of any law, which is the best evidence of a law's purpose. In any event, this argument supports Plaintiffs' claims because public transportation in Illinois is not comprehensively secured and is thus not subject to protection by law enforcement. *See* Pls.' Opp'n at 42–44.

It is not enough, as *Bruen* itself recognized, to cite a general police presence in a crowded location to decree a location sensitive. *See* 597 U.S. at 31 ("Put simply, there is no historical

basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department.").

## CONCLUSION

For these reasons, and for the reasons stated in Plaintiffs' summary judgment briefing, Plaintiffs respectfully request that the Court grant their motion for summary judgment, deny Defendants' motion for summary judgment, and enter final judgment in favor of Plaintiffs.


Dated:  July 12, 2024                              Respectfully submitted,


                                                   /s/ David G. Sigale          
                                                   *Attorney for Plaintiffs*


                                                   David G. Sigale (Atty. ID # 6238103)
                                                   LAW FIRM OF DAVID G. SIGALE, P.C.
                                                   55 West 22nd Street, Suite 230
                                                   Lombard, IL 60148
                                                   630.452.4547
                                                   dsigale@sigalelaw.com
                                                   *Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ David G. Sigale_____

*Attorney for Plaintiffs*

David G. Sigale (Atty. ID # 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com
*Attorney for Plaintiffs*