IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BENJAMIN SCHOENTHAL, *et al.*, | |
| Plaintiffs, | No. 3:22-CV-50326 |
| v. | Hon. Iain D. Johnston |
| KWAME RAOUL, *et al.*, | |
| Defendants. | |

**NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendant, Kimberly M. Foxx, State's Attorney of Cook County, through her Assistant State's Attorney Jessica M. Scheller, hereby submits as supplemental authority as follows:

1. Plaintiffs' Complaint asserts one count brought under 42 U.S.C. § 1983, setting forth alleged violations of the Second and Fourteenth Amendments. They assert that 430 ILCS 66/65(a)(8) ("the statute") violates the Plaintiffs' fundamental constitutional rights. Dkt. 1 at ¶ 7, 11-12.

2. The parties have filed cross-motions for summary judgment. The parties are in the process of supplemental expert briefing as a discovery sanction imposed on the Plaintiffs. On June 21, 2024, after summary judgment briefing was complete, the United States Supreme Court released its opinion in *U.S. v. Rahimi*, 219 L. Ed. 2d 351 (2024).

3. The Supreme Court clarified the test set forth in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S 1, (2022). The Court explained that, while courts look to history and tradition to determine whether a modern firearms regulation is consistent with the Second Amendment, the inquiry is not whether a "historical twin" regulation can be found. *Rahimi*, 219 L. Ed. at 363. Rather, courts must determine whether the challenged regulation is relevantly similar to historical laws that establish its consistency with the principles that underpin our regulatory tradition. *Id.* To

perform this analysis, courts examine whether the how and why the modern regulation burdens the right is relevantly similar to our regulatory tradition. *Id.* at **25.

  4.  The correct focus for a court's analysis is on historical regulatory principles, rather than a search for an ancient regulation updated for modern times. 219 L. Ed. At 363; *accord id.* at 395 (J. Barrett, concurring). Those principles need not be derived from laws specifically targeting firearms in particular, but rather from any law of general applicability that was considered applicable to firearms – the surety laws the Court considered analogous in *Rahimi*, for example, "could be invoked to prevent all forms of violence, including spousal abuse" involving no weapons at all, but "also targeted the misuse of firearms." *Id.* at 366. Indeed, the fit between the historical laws and the law being challenged need not be particularly close at all. As Justice Thomas pointed out in his dissent, without contradiction from the Court, *see id.* at 369, the surety laws the Court accepted as analogous did not prohibit possession of a firearm absent government action such as imprisonment, *id.* at 410 (Thomas, J., dissenting), and the affray laws the Court accepted as analogous "did not cover the very conduct [the domestic-violence law at issue in *Rahimi*] seeks to prevent—interpersonal violence in the home," *id.* at 414. In addition, Rahimi shows that traditional historic principles can be derived by consideration of common threads of principle running through multiple, "distinct legal regimes," *id.* at 365, when "[t]aken together," *id.* at 367, and the analysis need not focus on whether "a single historical law has both a comparable burden and justification," *id.* at 415-16 (Thomas, J., dissenting) (emphasis added). Applying historic principles it derived from surety and affray laws pursuant to this mode of analysis, the Court held that the challenged regulation was relevantly similar to several regulatory traditions, including the laws of affray and the surety laws. *Id.* at **365-367. Because the government had satisfied its

burden to show a relevantly similar historical tradition of firearms regulation, the Court upheld the constitutionality of the firearms regulation. *Id.* at 362.

5. The principles expounded upon by *Rahimi* confirm that summary judgment for the defendants is appropriate, in at least two respects. First, as the County explained in its motion for summary judgment, the Supreme Court and Seventh Circuit have long recognized that the government has essentially the same interest in regulating its own property – including government funds provided to other governmental or private entities – as a private individual, making regulations of that property constitutional unless so utterly unreasonable that they cannot survive rational-basis review. Doc. 68 at 3-6.[1] Under *Rahimi*, the general legal principle that regulations of government property and funds are susceptible only to rational-basis review controls at step two of the *Bruen* analysis, and confirms that the law at issue here is constitutional, since it is undisputed – indeed, undisputable – that the government can rationally conclude that public funds should not be expended by transit systems that allow loaded, operable firearms in the crowded confines of their buses and trains.

6. Second, *Rahimi*'s acceptance of the historic law of affray as an analogue also supports the regulation here. Under the law of affray accepted as an analogy in *Rahimi*, the focus was on whether the particular circumstances of one's possession of a gun would cause terror amongst members of the general public. *State v. Huntly*, 25 N.C. 418, 421 (1843) (cited with approval in *Rahimi*, 219 L.Ed. at 367). That certainly would be the natural tendency of witnessing a firearm being borne in a confined space like a train car or a bus, since a person observing another

---

[1] While there is an exception to this rule for coercive regulations actually unrelated to the government's interests in its property, Doc. 68 at 5 (citing *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 986 (7th Cir. 2012)), plaintiffs do not claim that this exception is applicable here, forfeiting it for purposes of summary judgment.

with such a firearm would be well aware that escape from a conflict with that gun's wielder would be an impossibility, or would itself risk severe harm from throwing oneself from a moving bus or train. Since it is well settled that the risk that riders will be made a captive audience to mere unwanted speech on public transit is sufficient ground to regulate or prohibit that speech, *Anderson v. Milwaukee*, 33 F.3d 975, 980 (7th Cir. 2006), it naturally follows that being a captive victim to gun violence on public transit is sufficient ground to regulate or prohibit the possession of those guns.

Dated: July 23, 2024

Respectfully Submitted,

KIMBERLY M. FOXX
State's Attorney of Cook County

By: /s/ Jessica M. Scheller
Jessica M. Scheller
Assistant State's Attorney
500 Richard J. Daley Center
50 West Washington Ave.
Chicago, IL 60602
(312) 603-6934
jessica.scheller@cookcountysao.org

**CERTIFICATE OF SERVICE**

I, Jessica M. Scheller, hereby certify that on July 23, 2024 I caused a true and correct copy of the Defendant Foxx's Notice of Supplemental Authority be sent via e-filing to all counsel of record in accordance with the rules regarding the electronic filing and service of documents.

*/s/ Jessica M. Scheller*
Jessica M. Scheller
Cook County Assistant State's Attorneys
50 W. Washington, 5th Floor
Chicago, Illinois 60602
(312) 603-6934
jessica.scheller@cookcountysao.org