**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| BENJAMIN SCHOENTHAL, *et al.*, | |
| Plaintiffs, | No. 3:22-CV-50326 |
| v. | |
| KWAME RAOUL, *et al.*, | Hon. Iain D. Johnston |
| Defendants. | |

**MOTION TO STAY JUDGMENT PENDING APPEAL**

On August 30, 2024, the Court rejected Plaintiffs' facial challenge[1] to 430 ILCS 66/65(a)(8), the portion of Illinois' Firearm Concealed Carry Act that prohibits a person who is licensed to carry a concealed handgun from carrying a firearm on or into any form of public transportation or parking facility paid with public funds (the "Challenged Provision") and declined to enter any injunction barring its enforcement. *See* Mem. Opinion and Order ("Order"), ECF 108, at 49 (ruling that Plaintiffs "haven't established their entitlement to an injunction."). Instead, the Court entered a declaration that the Challenged Provision violates the Second Amendment, as applied to Plaintiffs' carrying of concealed firearms for self-defense in four specific situations: Benjamin Schoenthal while "on Metra, and on Metra's real property to the extent necessary to ride Metra";[2] Mark Wroblewski while "on Metra, and on Metra's real property to the extent necessary to ride Metra"; Joseph Vesel while "on Metra and the CTA, and on Metra and the CTA's real property to the extent necessary to ride Metra and the CTA"; and Douglas Winston, while "on Metra and the

---

[1] Compl., ECF 1, at Prayer for Relief b (seeking injunction barring enforcement of the Challenged Provision in all circumstances); Order, ECF 108, at 24 n.26.

[2] The declaration as to Plaintiff Schoenthal applied to Kwame Raoul, Kim Foxx, and Robert Berlin, in their official capacities. The remaining three declarations applied only to Kwame Raoul and Kim Foxx, in their official capacities. *See* Order, ECF 108, at 49–50.

CTA's real property to the extent necessary to ride Metra and the CTA." *Id.* at 49–50.

Upon the expiration of the automatic stay of execution and enforcement pursuant to Rule 62 on September 30, the Court should stay its declaratory judgment until the conclusion of the forthcoming appeals by Attorney General Kwame Raoul and State's Attorney Berlin (the "State") and Cook County State's Attorney Kim Foxx because all the traditional stay factors weigh in favor of a stay.

*First*, the unsettled nature of Second Amendment law after *Bruen* and *Rahimi* creates a sufficient likelihood that the State will prevail on appeal.

*Second*, Plaintiffs will not be harmed by a stay because they admit they rarely use public transit, and because the Court did not enter an injunction requiring (or forbidding) any action.

*Third*, the State will be irreparably harmed absent a stay, because it will never be able to recoup the costs of defending the federal- and state-court enforcement actions that are the near-inevitable result of a declaratory judgment.

*Finally*, the public interest strongly favors a stay by minimizing public confusion, improving public safety, and allow for the orderly and efficient administration of justice while this critical issue is resolved on appeal by limiting duplicative enforcement litigation.

## LEGAL STANDARD

Unless a district court orders otherwise or an exception applies, "execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry." Fed. R. Civ. P. 62(a); *see also Trustees v. Actin, Inc.*, 2020 U.S. Dist. LEXIS 46341, at *1 (N.D. Ind. Mar. 17, 2020) (Ex. 1). Under the federal rules of appellate procedure, a party may "move … in the district court for … a stay of the judgment or order of a district court pending appeal." Fed. R. App. P. 8(a)(1)(A); *Rakovich v. Wade*, 834 F.2d 673, 674 (7th Cir. 1987) ("Rule 8(a) of the Federal Rules of Appellate Procedure requires that a motion for a stay pending appeal be presented initially in the district

court."); *see also* Fed. R. App. P. 1(a)(2) (Federal Rule of Appellate Procedure may "provide for filing a motion … in the district court."). In determining whether to grant a stay pending appeal, a court considers "the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). A stay pending appeal is intended "to minimize the costs of error" and can be "necessary to mitigate the damage that can be done during the interim period before a legal issue is finally resolved on its merits." *Id.* "As with a motion for a preliminary injunction, a 'sliding scale' approach applies; the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa." *Id.*

## ARGUMENT

### I.    The Court's judgment is already subject to the automatic 30-day stay on execution and enforcement.

Under Fed. R. Civ. P. 62, "execution" of and "proceedings to enforce" a final judgment are automatically stayed for 30 days from the date of its entry "unless the Court orders otherwise," or an exception to the automatic stay applies. In this case, this initial stay period extends to Monday, September 30. *See* Fed. R. Civ. P. 62(a) (providing for automatic 30-day stay); Fed. R. Civ. P. 6(a)(1)(C) (extending period counted in days to "the next day that is not a Saturday, Sunday, or legal holiday" if any period counted in days ends on a Sunday).

The Rule 62 stay applies here. By its terms, Rule 62(a) applies to all attempts to execute or enforce a "judgment." The only exceptions to this default rule are "Injunction[s], Receivership[s], or Patent Accounting Order[s]," as well as any "injunction[s] pending appeal" that may be entered. *See* Fed. R. Civ. P. 62(c) and (d). None of these exceptions apply here. *See* Order, ECF 108, at 49 (ruling that Plaintiffs "haven't established their entitlement to an injunction."). Nor has the Court

entered any order disturbing the Rule 62(a) automatic stay. *Id.* Consequently, the 30-day automatic stay of execution and enforcement of the Court's Judgment is in effect, and will remain in effect until Monday, September 30, 2024.

**II.    The Court should enter an order further staying its judgment pending appeal.**

The Court should stay its judgment until the exhaustion or conclusion of the State's forthcoming appeal because (i) the State has a sufficiently high likelihood of success on the merits to justify a stay, (ii) Plaintiffs will not be harmed if a stay is granted, (iii) Defendants will be irreparably harmed absent a stay, and (iv) the public interest favors a stay.

**A.    The State's high likelihood of success on the merits favors a stay.**

To obtain a stay pending appeal, the "movant need not demonstrate that that it will probably win on appeal; rather, the movant must only show that it has a substantial case on the merits." *Lewis v. City of Chi.*, 2007 U.S. Dist. LEXIS 41882, at *5–6 (N.D. Ill. June 7, 2007) (Ex. 2); *see also Harrington v. Heavey*, 2007 U.S. Dist. LEXIS 5423, at *3 (N.D. Ill. Jan. 23, 2007) (Ex. 3). Courts have regularly entered stays pending appeal after entering final judgments in areas of the law that were particularly unclear. *See, e.g.*, *Andrews v. Chevy Chase Bank, FSB*, 474 F. Supp. 2d 1006, 1010 (E.D. Wis. 2007) (granting stay pending appeal after trial court "recognized that the Seventh Circuit may disagree with me"); *Lewis*, 2007 U.S. Dist. LEXIS 41882 at *5–6 ("The court believes, of course, that its decision on the statute of limitations was correct, but the issue was not clear-cut then and time has made it only less clear.").

Here, this factor weighs in favor of a stay because the State has more than a "substantial" case on the merits. In its forthcoming appeal, the State will argue that this Court did not correctly apply *Bruen* to the facts of this case for the reasons addressed in the State's briefing on the recently resolved cross-motions for summary judgment. *See generally* Order, ECF 108, at 1–2 (describing cross-motions for summary judgment filed by the parties). In particular, the State will demonstrate

that the Court failed to properly apply *District of Columbia v. Heller*,[3] *McDonald v. City of Chicago*,[4] *N.Y. State Rifle & Pistol Ass'n v. Bruen*,[5] and *United States v. Rahimi*,[6] and imposed the very "regulatory straightjacket" repeatedly rejected by the Supreme Court. *Rahimi*, 144 S. Ct. at 1925 (quoting *Bruen*, 597 U.S. at 3). The State will also show that the Challenged Provision is consistent with the history and tradition of firearm regulation in the United States, and that public transportation facilities and infrastructure are "sensitive places" in which firearms may be regulated.

The unclear state of Second Amendment law also weighs in favor of a stay. While the Court did not ultimately accept the State's arguments for the purposes of the recently resolved cross-motions for summary judgment, it did recognize that *Bruen*'s "new and fundamentally different" standard has interjected substantial uncertainty into this area of the law. Order, ECF 108, at 6. The Court described the *Bruen* standard as "murky," *id.* at 49, and as exemplifying the "phrase 'easier said than done,'" *id.* at 21. Observing that *Bruen* "left open a plethora of procedural questions about how to conduct the historical inquiry," the Court noted a "lack of clear guidance as to how to treat the historical evidence required by *Bruen*'s framework." *Id.* at 21–22. The Court pointed out that the Supreme Court's recent decision in *Rahimi* illustrates just how "complicated" the *Bruen* analysis can be, noting:

> (1) four justices thought it was important to author concurring opinions in *Rahimi*, with a fifth justice joining one of those concurrences; (2) Justice Thomas—the author of *Bruen*—dissented in *Rahimi*; and (3) eight justices reversed the Fifth Circuit's unanimous decision and had "no trouble," reaching the opposite conclusion of the judges on the Fifth Circuit under the same framework.

---

[3] 554 U.S. 570 (2008).

[4] 561 U.S. 742 (2010).

[5] 597 U.S. 1, 21 (2022).

[6] 144 S. Ct. 1889 (2024).

*Id.* (cleaned up). Beyond these issues, the state of the law interpreting the Second Amendment after *Bruen* and *Rahimi* is particularly unclear with respect to the issue of sensitive-place regulations. *See* Order, ECF 108, at 40 (collecting cases). Indeed, the Seventh Circuit has never addressed the question of what constitutes a "sensitive place" under *Bruen*, and courts in other jurisdictions have failed to reach any consensus. *Id.*

Given the State's arguments, and the uncertain and unsettled state of Second Amendment law after *Bruen* and *Rahimi*, the likelihood of success on the merits analysis weighs strongly in favor of a stay. As addressed above, trial courts have regularly stayed their own judgments pending appeal after entering final rulings in areas of the law that were particularly unclear. *See*, *e.g.*, *Andrews*, 474 F. Supp. 2d at 1010; *Lewis*, 2007 U.S. Dist. LEXIS 41882 at *5–6. Finally, the fact that the Challenged Provision has "been in force for years" also favors a stay, which would therefore "preserve the status quo pending appellate resolution." *Whole Woman's Health All. v. Rokita*, 13 F.4th 595, 597 (7th Cir. 2021). The same result should apply here.

**B.      The balance of harms and public interest favor a stay pending appeal.**

The three remaining stay factors—harm to non-movants, harm to movants, and public interests—also favor a stay pending appeal.

Plaintiffs will not be harmed by a stay pending appeal. The Court did not enter any injunction against the Challenged Provision, or require Defendants to take, or not to take, any action. *See* Order, ECF 108, at 49. Moreover, the declaratory judgment entered by the Court does not and cannot bind Metra and CTA (or any other transportation provider), none of which were parties to this case, and none of which have any connection with any Defendant. *See*, *e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) ("one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of

process."). Consequently, the Court's ruling, standing alone, does not require that Plaintiffs be allowed to ride any form of transportation while carrying any concealed firearms. *Id.* Moreover, Plaintiffs in this case asserted only occasional use of the Metra and CTA. *See* Order, ECF 108, at 4–5. This undisputed record shows that Plaintiffs are unlikely to use Metra and CTA more than a handful of times, if at all, while an appeal is pending, further reducing the potential harm of any stay. *Id.*

Defendants, however, *will* be irreparably harmed absent a stay. Harm is generally considered to be reparable if a later monetary recovery can make a party whole. *See*, *e.g.*, *In re A & F Enters., Inc. II*, 742 F.3d at 768. Here, the harm to the State would not be reparable if a stay is denied and the Court's order is reversed by the Seventh Circuit, for at least two reasons. *First*, the State will be irreparably harmed because its ability to enact and enforce its laws will have been called into question during the pendency of the appeal. *Second*, the State will be unable to recoup the resources that will almost certainly be expended defending near-inevitable enforcement litigation, potentially in multiple federal and Illinois courts, disputing the implications, applicability, and impact of the Court's declaratory judgment ruling. *See Camelot Banquet Rooms, Inc. v. United States SBA*, 14 F.4th 624, 633-34 (7th Cir. 2021) (ability of government to recoup funds expended because of a ruling is relevant to the irreparable harm analysis); *see also Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003) ("a declaratory judgment is *normally* a prelude to a request for other relief, whether injunctive or monetary."). The expense of this satellite enforcement litigation would also be unnecessary, because the legal issues at stake in this litigation will ultimately be resolved by the Seventh Circuit and/or the Supreme Court. *See*, *e.g.*, Transcript dated March 17, 2023, ECF 42, at 13:21–22.

*Finally*, the public interest overwhelmingly favors a stay. The Supreme Court and the

Seventh Circuit have both made clear that stays pending appeal are appropriate where lower courts have questioned the constitutionality of firearm regulations. *See Garland v. Vanderstok*, 144 S. Ct. 44 (2023) ("The [order and judgment] … insofar as they vacate the final rule of the Bureau of Alcohol, Tobacco, Firearms and Explosives … are stayed pending the disposition of the appeal."); *Bevis v. City of Naperville*, 85 F.4th 1175, 1187 (7th Cir. 2023) (stay entered as to trial court ruling that firearm regulation was likely not constitutional). This is particularly true here, where there is already significant confusion regarding the Court's order. For example. while the Court entered purely declaratory relief limited to four individuals and two public transit systems, at least one news publication is now reporting that the Court's ruling allows all concealed carry license holders to carry concealed firearms in any train or bus in Illinois.[7] Moreover, the potential safety implications of the Court's order are highlighted by a recent mass shooting on the CTAs Blue Line, in which four people were murdered with firearms three days after the Court's order was entered.[8]

Additionally, the Supreme Court has long acknowledged that declaratory judgments can create "complicated problems for coordinate courts," and encouraged "wise judicial administration" that minimizes the potential for duplicative enforcement litigation. *See Kerotest*

---

[7] An article published on September 3, 2024 reported that "any permit holders" may now "bring their guns onto buses and trains across the state" after the entry of this Court's final judgment. *See* Nathaniel Langley, *Federal Ruling in Rockford Shakes Up Illinois' Concealed Carry Law*, WIFR, September 3, 2024 (available at https://www.wifr.com/2024/09/04/federal-ruling-rockford-shakes-up-illinois-concealed-carry-law/). In contrast, the Chicago Tribune reports Plaintiffs' attorney as saying that the "technical impact [of the Court's final judgment order] is unclear." "Sigale still recommended that 'until the judgment is final and the broader applicability is made clear,' CCL holders should continue to follow the law as written so they don't have any trouble with authorities." *See* Jeremy Gorner, *Federal Judge Rules on Section of Illinois' Concealed Carry Law*, CHICAGO TRIBUNE, September 3, 2024 (*available at* https://www.chicagotribune.com/2024/09/03/federal-judge-rules-section-of-illinois-concealed-carry-law-unconstitutional/)

[8] Mohammad Samra and Mary Norkol, *Suspect in killing of 4 Blue Line passengers in custody*, CHICAGO SUN-TIMES, September 3, 2024 (*available at* https://chicago.suntimes.com/crime/2024/09/02/cta-shooting-blue-line-train-forest-park-public-transit-crime-violence).

*Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952) (affirming lower court ruling that "all interests will be best served by prosecution of the single suit in Illinois"); *see also Nat'l R. Passenger Corp. v. Providence & W. R. Co.*, 798 F.2d 8, 12 (1st Cir. 1986) ("it makes little judicial sense for parallel litigation to proceed in federal and state courts when one set of proceedings is capable of resolving the parties' disputes."). Staying the Court's judgment during the pendency of the appeal will preserve scarce judicial resources, and assist with the "just, speedy, and inexpensive" determination of the important legal issues raised by this case. Fed. R. Civ. P. 1.

## CONCLUSION

For the foregoing reasons, the State Parties respectfully request that the Court enter an order staying the Court's judgment during the pendency of the State Parties' appeal.

September 4, 2024                          Respectfully submitted,

Christopher G. Wells                       Defendants in their official capacities KWAME
Gretchen Elizabeth Helfrich                RAOUL and ROBERT BERLIN
Isaac Freilich Jones
Office of the Illinois Attorney General    By: KWAME RAOUL,
100 West Randolph Street, 11th Floor           Illinois Attorney General
Chicago, Illinois 60601
Tel. 312-814-3000                          */s/ Isaac Freilich Jones*
christopher.wells@ilag.gov                 *One of the Attorneys for Defendants in their*
gretchen.helfrich@ilag.gov                 *official capacities Kwame Raoul and Robert*
isaac.freilichjones@ilag.gov               *Berlin*


                                           KIMBERLY M. FOXX
                                           *Cook County State's Attorney*


                                           *s/ Jessica M. Scheller*
                                           Jessica M. Scheller
                                           Deputy Chief; Civil Actions Bureau

Jessica M. Scheller
Prathima Yeddanapudi
Assistant State's Attorneys
500 Richard J. Daley Center

Chicago, Illinois 60602
(312) 603-6934/5463
Jessica.Scheller@cookcountysao.org
Prathima.Yeddanapudi@cookcountysao.org