IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BENJAMIN SCHOENTHAL, ) <br> MARK WROBLEWSKI, JOSEPH VESEL, ) <br> and DOUGLAS WINSTON, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> KWAME RAOUL, in his official capacity ) <br> as Attorney General of Illinois, ) <br> ) <br> RICK AMATO, in his official capacity ) <br> as State's Attorney of DeKalb County, ) <br> Illinois, ) <br> ) <br> ROBERT BERLIN, in his official capacity ) <br> as State's Attorney of DuPage County, ) <br> Illinois; ) <br> ) <br> KIMBERLY M. FOXX, in her official ) <br> Capacity as State's Attorney of Cook ) <br> County, Illinois, and ) <br> ) <br> ERIC RINEHART, in his official capacity ) <br> as State's Attorney of Lake County, Illinois, ) <br> ) <br> Defendants. ) | Case No. 3:22 CV 50326 <br><br> : |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY THE JUDGMENT PENDING APPEAL**

Plaintiffs, by and through undersigned counsel, and for their Response to the Defendants' *Motion to Stay the Judgment Pending Appeal*, asserts as follows:

1

**INTRODUCTION**

After determining that Plaintiffs' right to "carry[ ] concealed handguns on public transit for self-defense . . . falls within the presumptive ambit of the Second Amendment" and that "Defendants have failed to meet their burden" of showing that their ban on that conduct "falls within the historical tradition of firearm regulation in this country," this Court on August 30 entered an order and judgment declaring that Plaintiffs have the right to engage in that protected conduct "on Metra and the CTA, and on Metra and the CTA's real property to the extent necessary to ride Metra and the CTA." Mem. Op. & Order, Doc. 108 at 49, 50 (Aug. 30, 2024) ("Opinion"). Defendants now seek to stay that declaratory judgment pending appeal to the Seventh Circuit. They fail to shoulder their burden of showing that they are entitled to that extraordinary relief.

Defendants claim they are likely to succeed on appeal in showing that this Court's decision is contrary to the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), *New York State Rifle and Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 144 S. Ct. 1889 (2024), and that the challenged Public Transportation Carry Ban is a permissible regulation of so-called "sensitive places." But none of these arguments is likely to persuade the Seventh Circuit, including for the very reasons that this Court rejected them in reaching its judgment in the first place. Nor does the balance of equities favor a stay. The relief this Court entered is both narrow and precise: it covers only the named plaintiffs (four individuals), protects a specifically delimited course of conduct (carrying concealed firearms for self-defense), and applies only to precisely defined locations (the CTA and Metra's facilities). Defendants provide no reason to think that the four plaintiffs pose any risk to the State or the public's interest in peace and safety. But to these four individuals, the Court's relief matters

2

immensely, since it declares that Defendants must cease interference with their fundamental constitutional right to armed self-defense. The scales thus tip sharply against granting a stay, and Defendants' request should be denied.

## ARGUMENT

### I. Rule 62(a)'s Automatic Stay Does Not Apply to the Court's August 30, 2024, Nonmonetary Judgment.

Defendants first assert that Federal Rule of Civil Procedure 62(a)'s "30-day automatic stay of execution and enforcement of the Court's Judgment is in effect, and will remain in effect until Monday, September 30, 2024." Mot. to Stay, Doc. 110 at 4 (Sept. 4, 2024) ("Mot."). That is not so; text, structure, and precedent all show that Rule 62(a)'s automatic stay does not apply here. First, text. By its terms, Rule 62(a)'s automatic stay provision is subject to the exceptions "provided in Rule 62(c) and (d)." FED. R. CIV. P. 62(a). And Rule 62(c) provides that "an interlocutory or final judgment *in an action for an injunction*" is "not stayed after being entered." FED. R. CIV. P. 62(c)(1) (emphasis added). This is "an action for an injunction": Plaintiffs' complaint squarely prayed that the Court "[e]njoin Defendants . . . from enforcing the Public Transportation Carry Ban." Compl., Doc. 1 at 20–21 (Sept. 20, 2022). Rule 62(a)'s automatic stay thus does not apply.

To be sure, the Court's judgment in this case did not *grant* Plaintiffs' requested injunction, but that cannot alter the character of the suit. And the character of the suit is an action for injunctive relief. Rule 62(a)'s other exception, Rule 62(d), confirms this. That section instructs that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, *refuses*, dissolves, or refuses to dissolve or modify an injunction," a stay may be obtained "on terms for bond or other terms that secure the opposing party's rights." FED. R. CIV. P. 62(d) (emphasis added). Rule 62(d) is structurally parallel to Rule 62(c), and its

language thus clarifies and elaborates the set of "action[s] for an injunction" carved out by Rule 62(c)—establishing that they include not only actions where the court's judgment "grants . . . an injunction," but also those where it "continues, modifies, refuses, dissolves, or refuses to dissolve or modify" one. *Id.* And again, that set of actions squarely encompasses this case.

Precedent confirms this reading of Rule 62's text and structure. The Seventh Circuit has held that Rule 62's stay provisions draw a line between "an order to do" and "an order to pay," providing for an automatic stay only of the latter type of judgment. *Donovan v. Fall River Foundry Co.*, 696 F.2d 524, 526 (7th Cir. 1982); *accord Illinois Bell Tel. Co. v. WorldCom Techs., Inc.*, 157 F.3d 500, 502 (7th Cir. 1998). The Seventh Circuit explained in *Donovan* that Rule 62's use of the term "injunction" should be read to include other "injunctive type remedies," and that Rule 62(d)'s provisions governing the grant of a stay pending appeal are limited "to cases where the judgment being appealed from was a 'money judgment.' " *Donovan*, 696 F.2d at 526 (quoting *Dewey v. Reynolds Metals Co.*, 304 F. Supp. 1116, 1118 (W.D. Mich. 1969)); *accord Gallo v. Mayo Clinic Health Sys.-Franciscan Med. Ctr., Inc.*, 2017 WL 1380620, at *1 (W.D. Wis. Apr. 17, 2017). Moreover, and importantly, in cases such as this one where the court's judgment is only declaratory, courts "have relied on a deeper inquiry into the nature of the judgment" to determine whether it is "a monetary judgment or its equivalent, or an injunction or its equivalent." *Tri Cnty. Wholesale Distribs., Inc. v. Labatt USA Operating Co., LLC*, 311 F.R.D. 166, 173 (S.D. Ohio 2015); *accord Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992). While this line of cases concerns Rule 62(d)'s stay pending appeal rather than 62(a)'s 30-day stay, the structure of the Rule—and Rule 62(a)'s own reference to 62(d)—show that both stay provisions must be interpreted as drawing the same distinction. And since the Court's

4

August 30 declaratory judgment is plainly non-monetary in nature, no 30-day automatic stay applies.

## II. The Court Should Decline to Enter A Stay.

The Court should also reject Defendants' request for a discretionary stay pending appeal. To obtain such a stay, a party must demonstrate "that: 1) it has a reasonable likelihood of success on the merits; 2) no adequate remedy at law exists; 3) it will suffer irreparable harm if it is denied; 4) the irreparable harm the party will suffer without relief is greater than the harm the opposing party will suffer if the stay is granted; and 5) the stay will be in the public interest." *Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir. 2006). All of these factors weigh against staying the Court's declaratory judgment.

### A. Defendants Are Not Likely to Succeed on the Merits.

Defendants' merits arguments are not likely to succeed. That is why this Court has already rejected them. Defendants say that they "need not demonstrate that that [they] will *probably* win on appeal" to obtain a stay, Mot. at 4 (emphasis added), but neither does it suffice for them to show a *possibility* of success. Rather, as the Seventh Circuit has held, a party seeking a stay pending appeal "must show that it has a significant probability of success on the merits." *Hinrichs*, 440 F.3d at 396. Defendants can demonstrate no such probability.

This Court definitively held that Defendants' Public Transportation Carry Ban violates the Second Amendment. It rejected Defendant Foxx's argument that "government's powers over public property are equivalent to those of private owners of property" as "untenable," and held that her "attempt to apply intermediate scrutiny" likewise "cannot succeed." Opinion at 14, 20. Moving to "[t]he [m]ain [e]vent," the Court had no difficulty determining that the plain text of the Second Amendment encompasses "Plaintiffs' proposed course of conduct": "the licensed concealed carrying of handguns for self-defense on public transportation and associated

facilities." *Id.* at 21, 24. It then held that "Defendants have failed to meet their burden" of identifying a historical analogue that justifies the challenged ban and that this "failure is dispositive." *Id.* at 28. Indeed, it reached that determination *even after concluding* that the Defendants were right about several aspects of the *Bruen* analysis, including (1) that the absence of any Founding-Era regulation of public transportation "isn't a silver bullet," (2) that evidence far removed in time from the Founding may be considered, and (3) that "sensitive places" are not limited to areas where the government provides comprehensive security. *Id.* at 28, 30, 34, 48. The fact that Defendants failed to muster any relevant historical analogue for the challenged ban *even granting* them these premises illustrates that they have no significant probability of prevailing on appeal.

The Court also squarely rejected the very arguments Defendants say they wish to present on appeal. They claim that this Court's decision "failed to properly apply" *Heller* and *Rahimi* by "impos[ing] the very 'regulatory straightjacket' " rejected by the Supreme Court. Mot. at 4–5. But the Court *agreed* with Defendants that this case calls for a more " 'nuanced' historical approach," that the government did not need to produce "a historical twin," and that "resolving the permissibility of Illinois' law requires some degree of analogical reasoning." Opinion at 6, 28 & n.30. Similarly, while Defendants continue to insist "that public transportation facilities and infrastructure are 'sensitive places' in which firearms may be regulated," Mot. at 5, this Court specifically explained why this is not so: "none" of Defendants' "various theories as to what makes a place 'sensitive' " is "convincing," since they "would seem to justify almost any gun restriction," Opinion at 41, 43. The fact that these very arguments failed to persuade the Court on summary judgment almost by definition means they are not significantly likely to succeed on appeal. After all, "logic dictates that a court will seldom issue an order or judgment and then turn

6

around and grant a stay pending appeal, finding, in part, that the party seeking the stay is likely to prevail on appeal, *i.e.* that it is likely that the court erred in issuing the underlying order or judgment." *Millennium Pipeline Co. v. Certain Permanent & Temp. Easements*, 812 F. Supp. 2d 273, 275 (W.D.N.Y. 2011) (cleaned up).

Nor can Defendants demonstrate a probability of success by pointing to the supposed "unclear state of Second Amendment law" generally. Mot. at 5. Yes, the Court noted that *Bruen*'s analysis was "new and fundamentally different" than the "two-step means-end approach" previously applied by the lower courts, that the *Bruen* analysis could be "complicated," and that "*Bruen* 'left open a plethora of procedural questions about how to conduct the historical inquiry.' " *Id.* (quoting Opinion at 6, 21–22). But none of this remotely calls into question the clarity of the Court's bottom-line ruling. While *Bruen*'s historical inquiry may be "complicated"—as illustrated by the length of the Court's opinion addressing "the parties' many arguments relating to historical analogues," Opinion at 28—the result yielded by that inquiry in this case is nonetheless clear and unambiguous: Defendants failed to produce a historical analogue justifying their ban. And there is no indication in the Court's opinion that any of the "procedural questions" left open by *Bruen*—such as whether "to treat the historical evidence required by *Bruen*'s framework" as "adjudicative fact[s] [or] legislative fact[s]," *id.* at 22—in any way affected the ultimate conclusion.

Defendants' insistence that "the state of the law interpreting the Second Amendment after *Bruen* and *Rahimi* is particularly unclear with respect to the issue of sensitive-place regulations" does not get them any closer to a likelihood of success. Mot. at 6. For whether "childcare facilities" or "buffer zone[s] around a school zone" count as sensitive places is completely irrelevant in this case. Opinion at 40–41. Defendants' sensitive places argument failed not

7

because of any ambiguity over how these inapposite locations should be treated but because they completely failed to come forward with any theory "as to what makes a place 'sensitive' " that would not "eviscerate the general right to publicly carry arms for self-defense." *Id.* at 42 (quoting *Bruen*, 597 U.S. at 31).

The short of it is this: Defendants' merits arguments all failed to persuade this Court, and they are no more likely to persuade the Seventh Circuit.

### B. The Remaining Factors Militate Against a Stay.

The balance of harms and the public interest also weigh against granting a stay. Defendants' assertion that "the State will be irreparably harmed absent a stay," Mot. at 2, is belied by the narrowness of the relief granted by the Court. The declaration entered by the Court is precisely tailored: it extends only to the four named plaintiffs, entitles them to carry only concealed firearms for self-defense, and is limited to the specific public transportation facilities they use. Opinion at 50. Defendants have never disputed that these named plaintiffs are law-abiding citizens or asserted that they pose any particular risk of violent crime. Indeed, they are all licensed to carry firearms by the State of Illinois. The suggestion that the Court's narrow declaratory judgment has "safety implications" or heightens the risk of a "mass shooting," Mot. at 8, is risible.

Switching gears, the State claims it will suffer irreparable injury absent a stay because it "will be unable to recoup the resources that will almost certainly be expended defending near-inevitable enforcement litigation . . . disputing the implications, applicability, and impact of the Court's declaratory judgment ruling." *Id.* at 7. There is nothing to this. The Court's declaration of rights is extraordinarily precise and clear: it spells out in unambiguous detail who it covers, what rights they can exercise, and where they can exercise them. There can thus be no realistic likelihood of litigation over the *meaning* of the declaration, and the only thing that could cause

the parties to engage in "enforcement litigation" would be a failure of the State to abide by the declaration. A declaratory judgment is a binding judicial decree by a federal court, and presumably Defendants will comply with it in good faith. Should they fail to do so, the "inevitable enforcement litigation" that would result would be due to that breach—it would not constitute some form of "irreparable harm" attributable to the declaratory judgment itself. To be sure, *third parties* may engage in independent litigation over Defendants' Public Transportation Carry Ban, they may cite this Court's decision as persuasive authority in such litigation, and the State may, as a matter of comity, decide not to enforce its ban as to those third parties. But those are not "harms" that flow from this Court's judgment, which does not bind the State as to any third parties at all. Rather, they are precisely the type of "remote and speculative" harms that do not constitute irreparable injury. *Acierno v. New Caste Cnty.*, 40 F.3d 645, 655 (3d Cir. 1994).

The State's claim that it is "irreparably harmed because its ability to enact and enforce its laws will have been called into question during the pendency of the appeal," Mot. at 7, is equally unavailing. The limits on the State's "ability to enact and enforce its laws" at issue in this case, *id.*, do not flow from this Court's opinion; they flow *from the Second Amendment*. And "there can be no irreparable harm to a [government] when it is prevented from enforcing an unconstitutional statute." *Joelner v. Vill. of Washington Park, Ill.*, 378 F.3d 613, 620 (7th Cir. 2004). For the same reason, the public interest factor—which merges with the inquiry into irreparable harm when the movant is the State, *Nken v. Holder*, 556 U.S. 418, 435 (2009)—militates against a stay. "Surely, upholding constitutional rights serves the public interest." *Joelner*, 378 F.3d at 620 (quoting *Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003)).

Defendants' insistence that "Plaintiffs will not be harmed by a stay," Mot. at 6, is incorrect largely for reasons already canvassed. The fact that the Court granted declaratory rather than injunctive relief, and thus did not coercively "require Defendants to take, or not to take, any action," *id.*, is relevant only if Defendants intend to disregard the Court's declaration of rights. As discussed, Defendants have given no reason to think they will flout a binding judicial decree. And this Court has already rejected Defendants' argument that a judgment against the State does nothing to redress the violation of Plaintiffs' Second Amendment rights because it "cannot bind Metra and CT." *Id.* As the Court explained, "Plaintiffs' injuries trace back to the threat of enforcement from some of the defendants, so either an injunction or a declaration would redress that injury, regardless of potential injuries inflicted by nonparties." Opinion at 11. It necessarily follows that a stay of the declaration "redress[ing] that injury" would inflict harm on the Plaintiffs. *Id.*

Defendants also argue that Plaintiffs "asserted only occasional use of the Metra and CTA," Mot. at 7, but they do not mention *the reason* for this merely occasional use: *Defendants' enforcement of the challenged ban.* As the very portion of the Court's opinion that Defendants cite for this point explains, the named plaintiffs testified that they "wishe[d] to take the CTA and Metra more frequently" and "don't use public transportation as much as they would like because of the statute's threat of criminal prosecution for carrying a concealed firearm on public transportation." Opinion at 4–5. Relying on the fact the Plaintiffs "only occasional[ly] use" public transportation *because of the challenged ban* as a reason to justify the ban's continued enforcement is hopelessly circular. Mot. at 7.

Finally, the State argues that it is entitled to a stay because the declaration disturbs "the status quo" and has purportedly caused "significant confusion." *Id.* at 6, 8. But again, any

10

disruption purportedly caused by the Court's decision is close to nil: it merely declares that four individuals have a Second Amendment right to carry firearms. And if sloppy reporting by a "news publication" was reason for a stay, *id.* at 8, scarcely a single judicial opinion in the Nation could be enforced. All told, the four named plaintiffs covered by the Court's declaration have a strong interest in the enjoyment of their constitutional rights, while the State and the public have little to no interest in preventing it, so the balance of harms strongly favors the immediate enforcement of the Court's judgment.

## CONCLUSION

In light of the above, Plaintiffs respectfully request that this Honorable Court deny Defendants' motion to stay the judgment pending appeal. Plaintiffs also request any and all such further relief as this Court deems just and proper.

Dated: September 12, 2024

Respectfully submitted,

/s/ David G. Sigale

David G. Sigale (Atty. ID # 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com
*Attorney for Plaintiffs*

**CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING**

The undersigned certifies that:

1. On September 12, 2024, the foregoing document was electronically filed with the District Court Clerk via CM/ECF filing system;

2. Pursuant to F.R. Civ. P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

          /s/ David G. Sigale
          Attorney for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com